# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JUANA DOE I et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | C.A. No. 17-1494-JFB-SRF |
| vs. | § | |
| | § | **Motion for Preliminary Approval** |
| INTERNATIONAL FINANCE | § | **of Proposed Class Settlement** |
| CORPORATION, and IFC ASSET | § | |
| MANAGEMENT COMPANY, LLC, | § | |
| | § | |
| Defendants. | § | |

Misty A. Seemans, DE Bar # 5975
O.P.D. (Pro Bono; cooperating attorney
with EarthRights International)
820 North French Street
Third Floor
Wilmington, DE 19801
Tel: (302) 255-0133
Email: misty@earthrights.org

Dated: December 5, 2023

Marco Simons
Richard Herz
Marissa Vahlsing
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC, 20006
Tel: (202) 466-5188

Jonathan Kaufman
LAW OFFICE OF JONATHAN
KAUFMAN
341 W. 24th St. Apt. 21C, New York,
NY 10011
T: (212) 620-4171

Judith Brown Chomsky
LAW OFFICES OF JUDITH
BROWN CHOMSKY
Post Office Box 29726, Elkins Park,
PA 19027
Tel: 215-782-8367

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ........................................................................................................ 3

I.   Factual Background ................................................................................... 3

II.  Procedural History .................................................................................... 4

TERMS OF THE PROPOSED SETTLEMENT ......................................................... 5

ARGUMENT .............................................................................................................. 7

I.   The standard for preliminary approval of class settlements ..................... 8

II.  The Court will likely be able to approve the Proposed Settlement because
     it is fair, reasonable, and adequate. ......................................................... 9

     A.   The class representatives and class counsel have adequately represented
          the Classes. ...................................................................................... 10

     B.   The settlement was negotiated at arm's length. .............................. 13

     C.   The settlement is adequate given the substantial benefits for the Classes
          and the risks of further litigation. ................................................... 13

          "(i) [T]he costs, risks, and delay of trial and appeal." ................... 14

          "(ii) [T]he effectiveness of any proposed method of distributing relief to
               the class, including the method of processing class-member claims." ..... 16

          "(iii) [T]he terms of any proposed award of attorney's fees, including
                timing of payment." .......................................................... 19

          "(iv) [A]ny agreement required to be identified under Rule 23(e)(3)." ......... 21

     D.   The proposal treats class members equitably relative to each other, the
          other Class, and the Individual Plaintiffs. ..................................... 21

III. The Court will likely be able to certify the Classes for settlement
     purposes. ................................................................................................ 24

     A.   Class definitions. .............................................................................. 25

     B.   Both classes satisfy the Rule 23(a) prerequisites. ........................... 26

     C.   The Panamá Class satisfies Rule 23(b)(3). ..................................... 33

     D.   The Farmers' Cooperative Class satisfies Rule 23(b). .................... 37

          1. The class may be certified under Rule 23(b)(1)(B). ..................... 37

          2. Alternatively, Rule 23(b)(3)'s requirements are met. .................. 39

IV.  The proposed notice plan should be approved because it complies with
     Rule 23 and Due Process. ...................................................................... 40

V.   The Court should maintain the Individual Plaintiffs, class representatives
and class members' pseudonymity given the continued risk to their lives...... 43

CONCLUSION............................................................................................................ 43

# TABLE OF AUTHORITIES

**CASES**                                                    **Page(s)**

*Alves v. Main*,
No. 01-789, 2012 U.S. Dist. LEXIS 171773 (D.N.J. Dec. 4, 2012) .................. 11, 13

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997) ........................ *passim*

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2004 U.S. Dist. LEXIS 29163 (E.D. Pa. May 11, 2004) .............. 13

*In re Baby Products Antitrust Litigation*, 708 F.3d 163 (3d Cir. 2013) .................... 17

*Balderas-Guevara v. Mity Mole, Inc.*, No. 2:08-cv-862-FtM-29SPC,
2010 U.S. Dist. LEXIS 20074 (M.D. Fla. Feb. 5, 2010) .......................................... 42

*Blum v. Stenson*, 465 U.S. 886 (1984) ........................................................................ 20

*Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27 (E.D.Pa. 1985) .................................... 31

*In re Budeprion XL Mktg. & Sales Litig.*, MDL No. 2107,
2012 U.S. Dist. LEXIS 91176 (E.D.Pa. July 2, 2012) .............................................. 35

*Byrd v. Aaron's Inc.*, 784 F.3d 154 (3d Cir. 2015) .......................................... 33, 37, 40

*Carijano v. Occidental Petroleum Corp.*, No. CV 07-5068,
2019 U.S. Dist. LEXIS 220774 (C.D. Cal. June 20, 2019) .............................. 12, 19

*In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291 (D. Del. 2003)........................ 32

*Doe v. Int'l Fin. Corp.*, 1:17-c-00363-CRC (D.D.C, Mar. 9, 2017) ............................ 4

*Doe I v. Unocal Corp.*, 403 F.3d 708 (9th Cir. 2005).................................................. 12

*Du v. Blackford*,
No. 17-cv-194, 2018 U.S. Dist. LEXIS 211796 (D. Del. Dec. 18, 2018) .................. 9

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ........................................ 7

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
137 F.R.D. 240 (S.D. Ohio 1991) ...................................................................... 16, 21

*Frederick v. Range Res. - Appalachia, LLC*, No. 1:08-cv-288,
2022 U.S. Dist. LEXIS 60710 (W.D. Pa. March 31, 2022) ...................................... 10

*Gates v. Rohm & Haas Co.*, 248 F.R.D. 434 (E.D. Pa. 2008).........................9

*Girsh v. Jepson,* 521 F.2d 153 (3d Cir. 1975)............................................9, 10

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995) ......................................................20

*Godshall v. Franklin Mint Co.*, No. 01-CV-6539,
    2004 U.S. Dist. LEXIS 23976 (E.D. Pa. Dec. 1, 2004).......................23, 31

*In re: Google Inc. Cookie Placement Consumer Privacy Litig.*,
    934 F.3d 316 (3rd Cir. 2019) .........................................17, 18, 19

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) ......................20

*Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) ............................34

*In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92 (D.N.J. 2012) ...................30

*Jam v. Int'l Fin. Corp. ("Jam I")*, 860 F.3d 703 (D.C. Cir. 2017) ............4, 10, 16

*Jam v. Int'l Fin. Corp. ("Jam II")*, 139 S. Ct. 759 (2019) ...........................4

*Jam v. Int'l Fin. Corp.*, 3 F.4th 405 (D.C. Cir. 2021)...............................16

*Jones v. Commerce Bancorp, Inc.*, No. 05-5600,
    2007 U.S. Dist. LEXIS 52144 (D.N.J. July 16, 2007)................................9

*Kelly v. Realpage Inc.*, 47 F.4th 202 (3rd Cir. 2022)................................33

*In re Linerboard Antitrust Litig.*, MDL No. 1261,
    2004 U.S. Dist. LEXIS 10532 (E.D.Pa. June 2, 2004)...............................23

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012)..........................27

*Marshall v. NFL*, 787 F.3d 502 (8th Cir. 2015) ...........................16-17, 20, 24

*Martinez v. Wells Fargo Bank, N.A.*, 307 F.R.D. 630 (S.D. Fla. 2015) ..................27

*In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002 (N.D. Ill. 2000)..............42

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) .....................40

*Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261 (9th Cir. 2010) ........................23

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F.3d 154 (3d Cir. 2001) ..................................................................... 28

*In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998) .......................... 27

*Reyes v. Netdeposit, LLC*, 802 F.3d 469 (3d Cir. 2015) ............................................. 33

*Rosas v. Sarbanand Farms, LLC*, No. C18-0112,
    2019 U.S. Dist. LEXIS 28556 (W.D. Wash. Feb. 22, 2019) ..................................... 42

*Sanchez-Knutson v. Ford Motor Corp.*, 310 F.R.D. 529 (S.D. Fla. 2015) ................... 32

*Schuler v. Meds. Co.*, No. 14-1149,
    2016 U.S. Dist. LEXIS 82344 (D.N.J. June 23, 2016) ............................................ 11

*Shipley v. First Fed. Sav. & Loan Ass'n of Delaware*,
    619 F. Supp. 421 (D. Del. 1985) .............................................................. 40

*Smith v. Prof'l Billing & Mgmt. Servs.*, No. 06-4453
    2007 U.S. Dist. LEXIS 86189 (D.N.J. Nov. 21, 2007) ............................................ 31

*Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337 (D.N.J. 2020) .................... 31

*Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-0784,
    2021 U.S. Dist. LEXIS 218071 (E.D. Pa. Nov. 9, 2021) ......................................... 13

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ................................................ 26, 29

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)................................... 33, 34, 35

*Velez v. Novartis Pharms. Corp.*, 04 Civ. 09194 (CM),
    2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010).............................. 23, 24, 32

*In re Vicuron Pharm. Inc. Sec. Litig.*, 233 F.R.D. 421 (E.D. Pa. 2006)...................... 27

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .................................................. 27

*Walter Fuller Aircraft Sales, Inc. v. Republic of Phillipines*,
    965 F.2d 1375 (5th Cir. 1992) .............................................................. 15

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004) ......................... 7

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)............................. 32

Winoff Indus. v. Stone Container Corp., 305 F.3d 145 (3d Cir. 2002)...................... 33

*Wiwa v. Royal Dutch Petroleum Co.,*
   No. 96-cv-08386 (S.D.N.Y., filed June 8, 2009) ...................................................... 12


**RULES**                                                          **Page(s)**

Fed. R. Civ. P. 23 ................................................................................................. *passim*


**OTHER SOURCES**                                                  **Page(s)**

Restatement (Third) Restitution and Unjust Enrichment, § 49................................ 39

**INTRODUCTION**

Plaintiffs under pseudonym Juan Doe XIII, individually and on behalf of all other similarly situated current and former residents of the community of Panamá, Honduras as further defined below (the "Panamá Class"); Juan Doe XVII, individually and on behalf of all other similarly situated members of farmers' cooperatives in the Bajo Aguán valley of Honduras as further defined below (the "Farmers' Cooperative Class"); as well as Juana Doe I individually and as representative of her deceased husband, Juan Doe I; Juana Doe II individually and as representative of her deceased husband, Juan Doe II; Juana Doe III individually and as representative of her deceased husband, Juan Doe III; Juana Doe IV individually and as representative of her deceased husband, Juan Doe IV; Juana Doe V individually and as representative of her deceased husband, Juan Doe V; Juan Doe VI; Juana Doe VI; Juan Doe VII in his individual capacity and as representative of his deceased father, Juan Doe XVIII; Juan Doe VIII; Juan Doe IX, individually and on behalf of his minor daughter, Juana Doe VII; Juan Doe X; Juan Doe XII; and Juan Doe XVI, individually and as representative of his deceased father, Juan Doe XV (collectively, "Plaintiffs") and Defendant International Finance Corporation (IFC), on its own behalf and as successor to Defendant IFC Asset Management Co. (AMC), have entered into a Joint Stipulation of Class Action Settlement and Release. Declaration of Marissa Vahlsing ("Vahlsing Decl.") Ex. 1. Because the settlement involves two putative classes, the Parties need this Court's approval. Plaintiffs initiate this process under Federal Rule 23(e)(1) by seeking

1

preliminary approval, *i.e.* permission to notify the Classes of the proposed settlement.

This is not a garden variety case. First, the conditions in Honduras bring enormous challenges, as the violence in the Bajo Aguán region – which includes the assassination of lawyers – persists. Few if any attorneys other than counsel in this case would or could represent these Plaintiffs and Classes. Second, the central legal issues are complex and novel. Indeed, since immediate appellate review will be available on just the threshold question of immunity, regardless of who prevails on it before this Court, it will likely be years before Plaintiffs and the Classes could even hope to see relief. Finally, both the Plaintiffs and the Classes – many of whom are elderly – do not have years to wait, and need relief now. Against this backdrop, and after almost four years of arm's-length negotiation and two mediation sessions before Magistrate Judge Jennifer L. Hall, the Parties have agreed to settle.

The Court should preliminarily approve the Proposed Settlement, because both requirements in Rule 23(e)(1)(B) are met. First, the Court will likely be able to approve the Proposed Settlement because it is fair, reasonable, adequate, and was negotiated at arm's length. The Proposed Settlement would provide the Classes with substantial benefits through community interventions and programs to improve health, nutrition, education, livelihood and/or infrastructure. Plaintiffs' counsel – with decades of human rights litigation experience – believe this is the best deal they could secure, and it avoids the risks and costs of protracted litigation.

Second, the Court will likely be able to certify the Classes for settlement

purposes because they meet all of Rule 23's requirements. The Classes, each with around a thousand members, are sufficiently numerous. There are questions of law and fact common to the Classes. The class representatives' claims are typical of their respective classes', since they challenge the same unlawful conduct. The representatives will fairly and adequately protect the Classes' interests. And the common questions of law and fact predominate, since Defendants' conduct was common as to all class members.

Accordingly, the Court should permit Plaintiffs to notify the Classes by implementing the proposed notice plan. Class members may then object or potentially opt out (depending on the type of settlement class certified), and the Court will conduct a formal fairness and final approval hearing.

**BACKGROUND**

## I.    Factual Background

The International Finance Corporation is the arm of the World Bank Group that lends to private parties. AMC was a wholly-owned subsidiary of IFC that managed funds from IFC and other institutional co-investors.

Plaintiffs allege that Defendants' decision to fund Dinant, a Honduran palm oil company, contributed to alleged violence by Dinant, including murder, intimidation, torture, and theft of land from local farmers. The Named Plaintiffs (or their decedents) and the class members are alleged victims of these abuses.

The fifteen Named Plaintiffs include: thirteen individuals, excluding the class representatives, suing on their own behalf or on behalf of decedents or minors, for specific alleged acts of physical violence by Dinant security forces ("Individual

Plaintiffs"); a representative of a proposed class of approximately 1,100 residents of Panamá Community ("Panamá Class"), suing for alleged violence and psychological abuse carried out by Dinant through repeated incursions and intimidation leaving lasting trauma; and a representative of a proposed class of approximately 950 members of rural cooperatives suing because Defendants were allegedly unjustly enriched by Dinant's lawless, fraudulent, and violent acquisition of the cooperatives' lands ("Farmers' Cooperative Class"). Vahlsing Decl. ¶¶ 5-26.

Further factual background is detailed in the First Amended Class Action Complaint D.I. 38 ("Complaint").

## II.    Procedural History

Plaintiffs initially filed suit in March 2017 in the District of Columbia. *Doe v. Int'l Fin. Corp.*, 1:17-c-00363-CRC (D.D.C, Mar. 9, 2017) (D.C. Action). Shortly thereafter, Plaintiffs voluntarily dismissed the D.C. Action, D.I. 18, and filed this action against AMC. AMC moved to dismiss, D.I. 34, and Plaintiffs amended their complaint to add IFC and additional facts. D.I. 38, 47.

In June 2018, the Court stayed this case, D.I. 49, after the Supreme Court granted *certiorari* in *Jam v. Int'l Fin. Corp. ("Jam I")*, 860 F.3d 703 (D.C. Cir. 2017), to consider the scope of IFC's immunity under the International Organizations Immunities Act, 22 U.S.C. § 288a(b). In February 2019, the Supreme Court overturned *Jam I*, rejecting absolute immunity and holding that IFC may be sued for claims based upon its commercial acts. *Jam v. Int'l Fin. Corp. ("Jam II")*, 139 S. Ct. 759 (2019). The stay was lifted, D.I. 52, and Defendants moved to dismiss. D.I. 54. After the motion was briefed, the parties in May 2019 began to negotiate a

settlement. The case was once again stayed, D.I. 72, while the parties engaged in mediation sessions and direct negotiations.

Settlement negotiations were conducted at arm's length. Negotiations occurred over the course of four years and included periodic in-person meetings, exchanges of position by letter, and two full-day mediation sessions with Judge Hall. Vahlsing Decl. ¶ 36. After the second mediation session, the parties continued negotiations directly. *Id.* Shortly after the second session, the Court *sua sponte* lifted the stay, ordered supplemental briefing, and heard oral argument on the motion to dismiss. D.I. 101, 102. The parties continued to negotiate, reaching a settlement in principle on August 24, 2022 and a final settlement agreement on November 29, 2023. Vahlsing Decl. ¶ 36.

## TERMS OF THE PROPOSED SETTLEMENT

The settlement will consist of a $5,000,000 payment and in addition, Defendants will pay up to $200,000 to implement the notice plan. Vahlsing Decl. Ex. 1, ¶¶ 68-69 [hereinafter Settlement Agreement]. In consideration, Plaintiffs and the Classes will release their claims against Defendants regarding the conduct underlying this suit. *Id.* ¶¶ 1, 100-03.

The settlement contemplates that $745,000 of the $5,000,000 will be paid into an Individual Plaintiffs Escrow Account and divided among the Individual Plaintiffs in recognition of their role in facilitating this litigation and settlement, and the significant personal risks that Plaintiffs believe they have undertaken due to their

participation in this litigation. *Id.* ¶¶ 73(a), Ex. A ¶ 2; Vahlsing Decl. ¶¶ 31-35.[1]

The remaining $4,255,000 will be paid into a Social Benefit Escrow Account that will cover Qualified Community Support programs providing the Classes with much needed social services, as well as recognition awards for the class representatives, and attorneys' fees and costs associated with the administration of the Settlement. Settlement Agreement ¶¶ 73(b), 88, 90-91, Ex. A ¶¶ 4-7. The fund will be used for social projects to primarily benefit "members of the Settlement Classes." *Id.* ¶¶ 36, 87-88. Pursuant to the Individual Plaintiffs' wishes in settling their claims, the Individual Plaintiffs and a limited number of "other individuals in and/or from the Bajo Aguán region as directed by the Individual Plaintiffs" will also be able to participate in the programs "to the same degree" as other beneficiaries and without directing "any disproportionate benefits to [Individual Plaintiffs] or their family members." *Id.* ¶¶ 36, 89.[2] The Agreement provides an exhaustive list of categories of community programs. *Id.* ¶ 90. Community Support programs will be selected by the fund's Administrator following an extensive consultation process with the Individual Plaintiffs, class representatives, and members of the Settlement

---

[1] Each of the thirteen Individual Plaintiffs will receive $50,000. A fourteenth individual plaintiff has elected to voluntarily dismiss his claims (with prejudice). This fund will also cover these Plaintiffs' attorneys' fees of $95,000. Thus, the individual plaintiffs fund is proposed to be $50,000 for each of 13 plaintiffs, for a total of $650,000, plus $95,000 in fees, for an overall total of $745,000. The fees are 12.75% of the total. These awards and fees are not part of a class settlement.

[2] Eligibility for non-class members will be determined by the administrator of the fund in consultation with the Individual Plaintiffs and advisors from the region.

Classes. *Id.* Ex. B ¶¶ 7-19.[3] All beneficiaries – including all members of the Settlement Classes – will have an equal right to benefit from the fund. *Id.* ¶ 91, Ex. B ¶ 5.

Negotiations over attorneys' fees did not occur until after the total settlement value was negotiated, and they were limited to setting a cap at 12.45% of the total settlement. Vahlsing Decl. ¶ 37. In the [Proposed] Distribution Plan for the Named Plaintiffs' Escrow Account and the Social Benefit Escrow Account, attached as Exhibit A to the Settlement Agreement, Plaintiffs' counsel seeks Court approval for attorneys' fees, upon application by class counsel, or requests that the Court set a fair and reasonable attorneys' fee award as it deems appropriate.

## ARGUMENT

Settlements avoid the zero-sum game of litigation, and save parties and courts time, effort, and uncertainty – particularly in class actions. "There is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). *Accord Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594-95 (3d Cir. 2010) (noting strong presumption in favor of voluntary settlement is especially strong in class actions).

There are particularly strong reasons for class settlement here, including the

---

[3] The recognition awards for the two class representatives are proposed to be $50,000 each, just as for the Individual Plaintiffs. The attorney fees for the classes are proposed to be $527,500 or 12.4% of the amount of the fund, pending the Court's approval upon application by class counsel.

age and poverty of many plaintiffs and class members. Vahlsing Decl. ¶ 45. In addition, litigation would delay any relief for years, and has risks, including of a court finding IFC is immune.[4] Moreover, there are unlikely to be lawyers willing, and with the expertise, to represent many (if any) class members individually, as such representation requires travel to a dangerous area of Honduras, Spanish fluency, contacts with and trust from local leaders, and experience in transnational human rights litigation. *Id.* ¶¶ 28-29. Thus, in the absence of a certified class, most class members will be unable to press their claims.

Here, the Settlement satisfies the requirements for preliminary approval; the Court will likely be able both to approve the Proposed Settlement because it is fair and reasonable and provides substantial benefits to the Classes, and to certify the Classes.  Accordingly, Plaintiffs respectfully request that the Court take the first step in the approval process and preliminarily approve the Settlement, permitting the Classes to be notified of the Settlement.

## I.    The standard for preliminary approval of class settlements.

A proposed class settlement must obtain court approval. Fed. R. Civ. P. 23(e). This involves two-steps: "preliminary" approval, which permits notice to the class, and final approval. *Id.* Here at the "preliminary" step, Plaintiffs need only show that the Court will likely be able to (i) approve the proposal as fair, reasonable, and adequate, and (ii) certify the class for purposes of judgment on the proposal; if they do, the court must direct notice to class members who would be bound by the

---

[4] As set forth in briefing before this Court, Plaintiffs would strenuously disagree with such a finding.

proposal. Fed. R. Civ. P. 23(e)(1)(B).

At the second, final approval step, class members may object, and the Court conducts a formal fairness and final approval hearing. Fed. R. Civ. P. 23(e)(2, 5). A court's review for preliminary approval is less stringent than for final approval. Preliminary approval "is not a commitment [to] approve the final settlement," and "is granted unless a proposed settlement is obviously deficient." *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 438 (E.D. Pa. 2008); *accord Jones v. Commerce Bancorp, Inc.*, No. 05-5600, 2007 U.S. Dist. LEXIS 52144, at *4 (D.N.J. July 16, 2007).

## II.   The Court will likely be able to approve the Proposed Settlement because it is fair, reasonable, and adequate.

The Court may approve a proposal that would bind class members "only on finding that it is fair, reasonable, and adequate," considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate . . .; and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court will likely be able to find the settlement is fair, reasonable, and adequate, since all the considerations are met.[5]

---

[5] The Third Circuit has a nine-factor test to "help district courts structure their *final* decisions to approve settlements as fair, reasonable, and adequate." *Gates*, 248 F.R.D. 434, 444 n.7 (E.D. Pa. 2008) (citing *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975)) (emphasis added). "At the preliminary approval stage, however, the Court need not address these factors, as the standard for preliminary approval is far less demanding." *Id*. Nonetheless, the Rule 23(e)(2) factors "are in many respects a codification of [the *Girsh*] factors." *Du v. Blackford*, No. 17-cv-194 2018, U.S. Dist. LEXIS 211796, at *14 (D. Del. Dec. 18, 2018) (citing *Girsh*, 521 F.2d at 156). Six

### A.    The class representatives and class counsel have adequately represented the Classes.

This factor is about the procedural fairness of the litigation and settlement process; it looks to the conduct of the litigation and of the negotiations leading to the proposed settlement, and focuses on class counsel's performance. *Frederick v. Range Res. - Appalachia, LLC*, No. 1:08-cv-288, 2022 U.S. Dist. LEXIS 60710 *65 (W.D. Pa. March 31, 2022) (citing Fed. R. Civ. P. 23, Advisory Committee Notes to 2018 Amendments).[6]

Class counsel deeply appreciated the case's strengths and weaknesses and the risks of litigation before reaching the Proposed Settlement. They extensively investigated the facts in Honduras, reviewed publicly available information, consulted with community leaders, and assessed the facts in light of their extensive legal research. Vahlsing Decl. ¶¶ 28-29. Plaintiffs also vociferously opposed Defendants' motions to dismiss. Moreover, in another case, the same Plaintiffs' counsel litigated the primary issue, IFC's immunity, all the way to the U.S. Supreme Court and then, on remand, back to the D.C. Circuit. *See Jam*. The parties have been negotiating a potential settlement since May 2019, and engaged in mediation with Judge Hall from August 2021 until April 2022. Vahlsing Decl. ¶ 36.

---

*Girsh* factors (1, 4-6 and 8-9) are about litigation risks, which are discussed below. Factor 2, the class's reaction, cannot be considered before notice. Factor 3, the stage of the proceedings and the amount of discovery, is addressed in section A. As to factor 7, Defendants could withstand a greater judgment. Thus, except for factors 2 (which is neutral) and 7, all factors favor approval.

[6] Section D below demonstrates that there is no conflict between the class representatives, class counsel and the Classes that would preclude class settlement.

Plaintiffs' counsel has consulted with outside class action, settlement, and ethics experts, as well as with experts on this region of Honduras. *Id.* ¶¶ 39-40.

All of this provided sufficient basis for Plaintiffs and their counsel to conclude that the settlement offered by Defendants is in Plaintiffs' and the Classes' best interests and that a more beneficial settlement could not be achieved under the circumstances, given Defendants' limits and conditions. *Id.* ¶¶ 38-45; s*ee, e.g.*, *Schuler v. Meds. Co.*, No. 14-1149, 2016 U.S. Dist. LEXIS 82344, at *18-19 (D.N.J. June 23, 2016) (noting that "[a]lthough there has been no formal discovery, Lead Counsel had ample information to evaluate the prospects for the Class and to assess the fairness of the Settlement" given that counsel had reviewed publicly-available information, conducted an extensive investigation, drafted the initial complaint, briefed and argued an opposition to defendants' motion to dismiss, and engaged in mediation).

"[C]ourts in this Circuit traditionally attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class." *Alves v. Main*, No. 01-789, 2012 U.S. Dist. LEXIS 171773, at *72 (D.N.J. Dec. 4, 2012), *aff'd*, 559 Fed.App'x 151 (3d Cir. 2014) (quotation marks omitted) (collecting authorities). Here, Counsel EarthRights International has decades of experience litigating complex transnational human rights cases,[7] and for over eight years has been

---

[7] Richard Herz has litigated transnational human rights cases for over 25 years; Marco Simons for over 22 years, Marissa Vahlsing and Benjamin Hoffman for over 11 years, and Sean Powers for ten years. EarthRights has multiple Spanish-speaking U.S. lawyers, including Ms. Vahlsing and Mr. Hoffman.

working on this case in partnership with human rights experts and community leaders in Honduras. Counsel have successfully settled landmark human rights cases, often after many years of litigation and on the eve of trial.[8] Moreover, counsel has consulted with an outside class action specialist, and negotiated this settlement with the assistance of another experienced human rights attorney, who also serves as a professional mediator. Vahlsing Decl. ¶¶ 39-40. Counsel is plainly adequate.

Counsel are thus well-positioned to determine that the settlement offered by Defendants is in the Settlement Classes' best interests. Counsel's conclusion is predicated on counsel's knowledge of the strengths and weaknesses of the Settlement Classes' claims based on their analysis of Defendants' arguments and the risk that the Court, the Third Circuit or a jury may rule in Defendants' favor, leaving the Settlement Classes no recovery. Counsel is also of the opinion, after four years of settlement talks, that a better settlement could not be achieved under the circumstances. Counsel's opinion should therefore be afforded considerable weight. This factor supports preliminary approval.

---

[8] *See, e.g.,* **Doe v. Unocal:** *Doe I v. Unocal Corp.*, 403 F.3d 708 (9th Cir. 2005); Press Release, EarthRights International, Final Settlement Reached in *Doe v. UNOCAL* (Mar. 21, 2005), *available at*: https://web.archive.org/web/20050524151344/http://earthrights.org/news/unocalsettl efinal.shtml; **Wiwa v. Shell:** Settlement Agreement, *Wiwa v. Royal Dutch Petroleum Co.,* No. 96-cv-08386 (S.D.N.Y., filed June 8, 2009); Jad Mouawad, *Shell to Pay $15.5 Million to Settle Nigerian Case*, NY TIMES (June 8, 2009), https://www.nytimes.com/2009/06/09/business/global/09shell.html; ***Carijano v. Oxy:*** *Carijano v. Occidental Petroleum Corp.*, No. CV 07-5068, 2019 U.S. Dist. LEXIS 220774 (C.D. Cal. June 20, 2019); REUTERS, Peru indigenous groups settle U.S. court claims with Occidental (Mar. 5, 2015), https://www.reuters.com/article/us-peru-occidental/peru-indigenous-groups-settle-u-s-court-claims-with-occidental-idUSKBN0M12BN20150305.

**B.      The settlement was negotiated at arm's length.**

Settlements negotiated from arm's length by experienced counsel are entitled to deference. *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 U.S. Dist. LEXIS 29163, at *6-7 (E.D. Pa. May 11, 2004). This reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

The settlement here is the result of an arm's length negotiation: an extensive, adversarial, four-year negotiation with the participation of an independent mediator – Judge Hall – who led two full days of mediation. The mere participation of a mediator weighs in favor of finding adequacy. *Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-0784, 2021 U.S. Dist. LEXIS 218071, at *15 (E.D. Pa. Nov. 9, 2021). In fact, it "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties," and "provides a great deal of comfort at the threshold of our fairness consideration." *Alves v. Main*, 2012 U.S. Dist. LEXIS 171773, *73-74 (quotation marks omitted). The parties here negotiated at arm's length and reached a final agreement free of collusion.

**C.      The settlement is adequate given the substantial benefits for the Classes and the risks of further litigation.**

Rule 23(e)(2)(C) orders courts to determine whether class relief is adequate. Here, the relief is substantial, and it is clearly adequate.

Many class members are elderly or destitute. Vahlsing Decl. ¶ 45. The settlement provides $4,255,000 million (less attorneys' fees not to exceed 12.45%, recognition payments and administration costs), for the implementation of

Community Support programs for the primary benefit of the Classes. Settlement Agreement, ¶¶ 73(b), 76-77, Ex. A ¶¶ 4-7. This undifferentiated fund will provide substantial social benefits, equitably distributed to members of both Classes. The fund will enable the provision of benefits that may include health services; nutrition programs for single mothers, orphans, and the elderly; educational scholarships; infrastructure improvements; and economic livelihood projects to help generate regular and sustainable income. *Id.* ¶ 90. (The final selection of benefits will depend on consultation with the Classes, as set forth in the [Proposed] Consultation and Implementation Plan for Qualified Community Support, *Id.* Ex. B.) Since these are indigent communities grossly lacking in much needed social services, Vahlsing Decl. ¶ 45, these benefits will make a substantial difference to class members' lives and communities. And while the settlement will mitigate some of their suffering now, litigation would take many years and is risky; the class members could walk away with nothing.

These benefits are adequate under Rule 23(e)(2)(C) in light of the four factors the Rule sets forth. Each factor is addressed in turn, in headings quoting the Rule.

### **"(i) [T]he costs, risks, and delay of trial and appeal."**

While Plaintiffs and their counsel believe strongly in the factual and legal merits of their claims, further litigation presents significant risks to the Classes, including pending and likely future dispositive motions, possible pitfalls at trial, uncertainties on appeal, and risks associated with the continued delay of a case that has been pending for six years. The Settlement eliminates these risks, which

14

supports granting preliminary approval.

It would take many years to litigate this case to trial and a final judgment. Plaintiffs began this litigation in 2017, and it is still at the motion to dismiss stage. Because the Defendants have asserted sovereign immunity, any ruling on the motion to dismiss, including a decision *denying* the motion, would be subject to immediate appeal. *See, e.g. Walter Fuller Aircraft Sales, Inc. v. Republic of Phillipines*, 965 F.2d 1375, 1379 n.4 (5th Cir. 1992) ("Immediate appeal, under the collateral order doctrine, is permitted from an order denying sovereign immunity under the FSIA."). If Plaintiffs prevail on immunity on appeal, they would still need to complete discovery and then likely face motions for summary judgment, trial, and potentially another appeal. Plaintiffs and Class Counsel recognize the expense and length of the continued proceedings necessary to litigate this case. Indeed, Class Counsel have litigated other transnational human rights cases to the trial stage over the course of many years, and well understand the time required.

Plaintiffs and Class Counsel have also considered litigation risk. Plaintiffs face obstacles that could leave them with nothing. Defendants' pending motion to dismiss argues that this case should be dismissed on six independent grounds: sovereign immunity, improper venue, failure to join an indispensable party, lack of personal jurisdiction (over IFC), failure to state a claim, and statutes of limitations. D.I. 54. Plaintiffs strongly disagree with all of these arguments, but Class Counsel would not be adequately representing their clients if they disregarded the risk that one or more of them might succeed. Indeed, the D.C. Circuit has held that IFC is

15

immune in a similar case. *See Jam v. Int'l Fin. Corp.,* 3 F.4th 405 (D.C. Cir. 2021). While Plaintiffs disagree with this decision, as set forth in briefing before this Court, Plaintiffs cannot be certain they will run the table and survive the motion to dismiss. Even if they do, they will still face the subsequent risks of summary judgment and trial.

In contrast, the Settlement will promptly provide members of Settlement Classes with significant benefits. Due to the substantial risks and the uncertainty of prevailing on the merits, this factor favors preliminary approval of the Settlement Agreement.

### "(ii) [T]he effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

The settlement provides that relief will be distributed to the Classes by providing "Qualified Community Support," *i.e.* community interventions and programs that benefit the Panamá Class members and the Farmers' Cooperative Class members. This will effectively provide much needed social services to the class members.

It is not necessary that the exact amount of benefits any class member will receive be ascertainable; it is enough that the benefits are "substantial." *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 246 (S.D. Ohio 1991) (approving settlement despite disagreement as to magnitude of future benefits and fact that such benefits are necessarily to some extent speculative).

While the settlement does not contemplate *cash* payments to class members, it is enough that it provides class members direct benefits. *Marshall v. NFL*, 787

16

F.3d 502, 509-10 (8th Cir. 2015). Thus, the Eighth Circuit approved a class settlement that created and funded an entity that would disburse the money to charities for class members' benefit. *Id*. at 507, 509-10. So too here.

Because the fund provides benefits to class members, rather than being given to nonparties unrelated to the litigation, it is *not* a *cy pres* remedy, *i.e.* a remedy that benefits a third party. *Id*. at 522-23 (Smith, J., concurring). Accordingly, the considerations that apply to *cy pres* awards are inapposite.

In any event, even "a *cy pres*-only settlement may be proper." *In re: Google Inc. Cookie Placement Consumer Privacy Litig*., 934 F.3d 316, 326 (3rd Cir. 2019). Courts "assess the fairness, reasonableness, and adequacy of a *cy pres* award under Rule 23(e)(2) using the same framework developed for assessing other aspects of class action settlements." *Id*. at 329 (quotation marks omitted).

"[C]*y pres* awards should generally represent a small percentage of total settlement funds" unless there is "sufficient justification." *Id*. But a district court's role "is not to determine whether the settlement is the fairest possible resolution." *In re Baby Products Antitrust Litigation*, 708 F.3d 163, 173-74 (3d Cir. 2013). Instead, courts "determine whether the compromises reflected in the settlement — including those terms relating to the allocation of settlement funds — are fair, reasonable, and adequate when considered from the perspective of the class as a whole." *Id*. at 174.

Here, there is sufficient justification for this settlement, and it is fair, reasonable and adequate under the ordinary analysis. A settlement in this form was

the only one available; the case was not going to settle otherwise. The choice was this type of settlement or litigation with all of its risks. And this Settlement provides real, tangible benefits that could better the class members' lives. Section II(C).

Moreover, there are none of the conflicts of interest that gave the *Google* court pause. That court expressed concern that a *cy pres* only award would benefit defendants, class counsel, and the named representatives "while any benefit to other class members is indirect and inconsequential." 934 F.3d at 327. But here, there is no concern that Class Counsel and the named representatives are settling for an inferior *cy pres* award to benefit themselves, because there was no possibility of another type of settlement, the attorney's fees are capped at well under what counsel are ordinarily entitled to, Section II(C)(iii), *infra*, and as has just been noted, the class benefits here are both direct and quite consequential.

Indeed, *Google* upheld the district court's finding that a *cy pres* award was fair, reasonable and adequate, even though the benefits to those class members were far less direct and substantial than here. In *Google,* a *cy pres* award for using tracking cookies funded organizations that would promote public awareness or support research and initiatives related to Internet browser security or privacy. *Id*. at 322. The Third Circuit found that the district court was within its discretion to conclude that the "*cy pres* awards were fair because these uses were directly and substantially related to the class's interests," *id*. at 330, even though no class member would receive a direct, tangible benefit. Here, the award will help the

18

communities rebuild lives harmed by the alleged abuses at issue by providing class members with direct, tangible benefits – needed social services – that the *Google* and other *cy pres* remedies do not. This settlement is far superior to what *Google* found fair.[9]

Class Counsel have experience with providing community benefits similar to those here. In a previous settlement counsel procured in *Carijano v. Occidental Petroleum Corp.*, No. CV 07-5068, 2019 U.S. Dist. LEXIS 220774 (C.D. Cal. June 20, 2019), counsel worked with five Indigenous communities in a remote region of the Peruvian Amazon to implement a $16 million dollar settlement for community health, education, and development projects. Vahlsing Decl. ¶ 41. This involved working with Peruvian legal experts, government authorities, and foreign trustees. *Id*. Moreover, three class counsel have served on the board of an organization that funds community development projects in an underserved area of rural Myanmar. *Id*.

### "(iii) [T]he terms of any proposed award of attorney's fees, including timing of payment."

This Court has the authority to "award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. Proc. 23(h). In calculating attorneys' fees "under the 'common fund doctrine,' . .

---

[9] *Google* noted that even where, unlike here, "the only benefit to class members is a *cy pres* award, parties may also want to involve class members or a neutral participant in the selection of recipients to ward off any appearance of impropriety." 934 F.3d at 331. Here the Community Support programs will be selected following consultation with the Individual Plaintiffs, class representatives, and members of the Settlement Classes. *See* Settlement Agreement, Ex. B, Consultation and Implementation Plan for Qualified Community Support.

. a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16, (1984); *see also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995) (courts use percentage of recovery method because class would be unjustly enriched if it did not compensate counsel responsible for generating the fund bestowed on the class).

The attorneys' fees and costs sought here are reasonable. First, the parties only negotiated this provision after agreeing on the total settlement value, and the class attorneys' fees and costs are capped at 12.45% of the total settlement amount, to avoid any concern for collusion. *See*, *e.g.*, *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 447 (3d Cir. 2016) (approving methodology where fees were "not discussed until after the principal terms of the settlement were agreed to").

Second, the 12.22% of the class award proposed for fees and costs is reasonable and fair. The Third Circuit has identified a variety of potentially relevant factors – including "the skill and efficiency of the attorneys involved," "the complexity and duration of the litigation," "the amount of time devoted to the case by plaintiffs' counsel," and "the awards in similar cases" – and "also suggested that district courts cross-check the percentage award at which they arrive against the 'lodestar' award method." *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citations omitted). Here, few teams of attorneys possess the skills and expertise needed to bring a case of this complexity, involving alleged abuses in a remote and dangerous region of a foreign nation, where the victims do not speak English. And the proposed fee amount is considerably lower than both the awards

generally approved[10] and the lodestar value of Plaintiffs' Counsel's investment in this litigation, especially after deducting expenses to date. *See* Vahlsing Decl. ¶ 30.

> **"(iv) [A]ny agreement required to be identified under Rule 23(e)(3)."**

Rule 23(e)(3) requires Plaintiffs to "identify[] any agreement made in connection with the proposal." The proposed settlement agreement, with exhibits integral to the agreement, is attached to the Vahlsing Declaration as Exhibit 1.

### D.   The proposal treats class members equitably relative to each other, the other Class, and the Individual Plaintiffs.

The settlement adequately accounts for interests of the two Classes and the fifteen Named Plaintiffs. Thirteen of the Named Plaintiffs are "Individual Plaintiffs" in that they bring individual claims that are not pled by a class and are not class representatives. Juan Doe XIII, the Panamá Class representative, has both individual claims outside the Class and claims within the Class. Juan Doe XVII, the class representative of the Farmers' Cooperative Class, has no claims independent of the Class.

The Settlement treats the Classes and individuals equitably as to each other; the payments to the Panamá and Farmers' Cooperative Classes, the Individual Plaintiffs, and the class representatives, are reasonable and fair.

The benefits provided to the thirteen Individual Plaintiffs are reasonable and

---

[10] *See, e.g.* Theodore Eisenberg & Geoffrey P. Miller, Attorneys' Fees and Expenses in Class Action Settlements: 1993-2008, 7 J. Empirical Legal Stud. 248, 260 (2010) (noting a mean and median fee to recovery ratio of 26% in Third Circuit); *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (collecting cases approving attorneys' fees of 18-33% of common fund).

fair to them and the Classes. These individuals agreed to settle their own claims in exchange for two things. First, all would receive "recognition" payments for the time, effort and risks they and their families each have endured in litigating this case. Settlement Agreement, Ex. A ¶ 2; Vahlsing Decl. ¶¶ 31-35. Second, the Individual Plaintiffs who are not class members would also receive benefits from the social services fund, and pursuant to their wishes, a limited number of other similarly situated individuals in the Aguán would too. Settlement Agreement, ¶¶ 36, 89, Ex. B ¶¶ 3-4.

This is fair. The Individual Plaintiffs have been litigating for six years. They have repeatedly taken days off work or farming and traveled over eight hours to meet with counsel in secure locations; repeatedly relived traumatic experiences in assisting with the preparation of case filings; participated in the mediation; and most importantly, risked potential reprisal over at least six years. Vahlsing Decl. ¶¶ 31-35. The proposed settlement fairly accounts for all of these interests.

In addition, the thirteen Individual Plaintiffs are settling claims for violence or murder allegedly committed by Dinant against them or their decedent, and in one case against their minor daughter as well. While the Parties agree the payments are not *compensation* for these allegations, they are consideration for the Plaintiffs releasing what they believe are valuable claims.[11]

---

[11] These include claims for, for example, wrongful death, assault, battery and/or false imprisonment. Such claims are brought by: Juana Doe I, Juana Doe II, Juana Doe III, Juana Doe IV, Juana Doe V, Juan Doe VI, Juana Doe VI, Juan Doe VII, Juan Doe VIII, Juan Doe IX, Juan Doe X, Juan Doe XII, Juan Doe XVI, and Juan Doe XIII. *See* Complaint ¶¶ 587-612, 625-31.

The two class representatives' payments are also fair as recognition awards traditionally paid to class representatives.[12] Class representatives are entitled to sufficient awards for their efforts in conferring benefits on all other class members. *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 *56-57 (E.D.Pa. June 2, 2004) (collecting cases). Here, the class representatives, to the same degree as the other Named Plaintiffs, spent substantial time, and incurred serious risk, to move this litigation forward. Vahlsing Decl. ¶¶ 31-35.

The proposed payment is a fair recognition award. In assessing such awards, courts consider such factors as "the risk to the plaintiff in commencing suit," the "personal difficulties encountered by the representative plaintiff," "the extent of the plaintiff's personal involvement in the suit," "the duration of the litigation," and "the plaintiff's personal benefit (or lack thereof) purely in his capacity as a member of the class." *Godshall v. Franklin Mint Co.*, No. 01-CV-6539, 2004 U.S. Dist. LEXIS 23976, at *20 (E.D. Pa. Dec. 1, 2004). *See generally Velez v. Novartis Pharms. Corp.*, 04 Civ. 09194 (CM), 2010 U.S. Dist. LEXIS 125945 *68-69 (S.D.N.Y. Nov. 30, 2010) (collecting cases with awards ranging from $50,000 to $300,000); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 U.S. Dist. LEXIS 10532 *57 (E.D.Pa. June 2, 2004) (collecting cases with awards ranging from $20,000 to $90,000). The payments here fairly reflect the effort and risk the class representatives undertook.

---

[12] Since Juan Doe XIII, the Panamá Class representative, has individual claims in addition to his class claims, he is also on the same footing as the other Individual Plaintiffs. *See Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1264 (9th Cir. 2010) (class representative can settle individual claims and continue to represent the class).

The $4,255,000 social benefit fund is fair to the Classes. The fund will provide much needed social services to members of both Classes, many of whom are elderly, destitute or both. Most of the settlement is devoted to these purposes.[13]

The Settlement also treats the members of each of the Classes equitably. All class members will have an equal right to benefit from the social programs. Settlement Agreement, ¶ 91, Ex. B ¶ 5. To be sure, not every class member's claim is "worth" the same amount. But this is "an inherent feature of the class-action device" and does not require individualized benefits to class members. *Marshall*, 787 F.3d at 520.

\* \* \*

For all of these reasons, the settlement will likely be found adequate. Moreover, "perhaps the most significant factor" is the Classes' reaction; the lack of objections may show the settlement's fairness. *Velez*, 2010 U.S. Dist. LEXIS 125945, \*36. That cannot be weighed until the Classes are notified.

## III.   The Court will likely be able to certify the Classes for settlement purposes.

To preliminarily approve a class settlement, the parties must show that the court will likely be able to certify the class for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B)(ii). To be certified, a putative class must meet Rule 23(a)'s four prerequisites and fall within *one* of Rule 23(b)(1)-(3). The proposed settlement may be considered when evaluating these requirements; thus, the Court need not

---

[13] As noted above, the Individual Plaintiffs and a limited number of similarly situated persons will also be able to benefit from the Community Support programs, but the overwhelming majority of the benefits will go to class members.

inquire whether the case, if tried, would present intractable management problems. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997).

Both Classes satisfy Rule 23(a). The Panamá Class seeks class certification under Rule 23(b)(3), because questions of law or fact common to class members predominate and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The Farmers' Cooperative Class seeks certification under Rule 23(b)(1)(B), because there is a limited fund available to satisfy the class members' claims, and alternatively under Rule 23(b)(3). Thus, both proposed Settlement Classes likely satisfy the requirements for class certification.

### A.    Class definitions.

**The Panamá Class** is defined for the purposes of this Settlement as "All individuals who resided in the Community of Panamá located in the Bajo Aguán from November 5, 2009, through October 24, 2017." Settlement Agreement, ¶ 63.

During the class period, Dinant effectively occupied the village of Panamá and terrorized all its inhabitants. Vahlsing Decl. ¶¶ 8-9. It subjected Panamá – and its roughly 1100 residents – to the same pattern of psychological and physical violence, based on a plan to terrorize the community that was common to all. *Id.* Dinant did not target only specific individuals, but the entire community, intending to force its members to cease efforts to obtain justice for assassinated community leaders and reclaim stolen lands. *Id.*

The Panamá Class is represented by Juan Doe XIII, who, like the entire community of Panamá, has faced Dinant's campaign of terror. *Id.* ¶¶ 11-13. Plaintiffs likely meet the requirements to certify this Class.

25

**The Farmers' Cooperative Class**, for the purposes of this Settlement, is defined as:

> All individual persons residing in the Bajo Aguán who were members of farmers' cooperatives in Honduras, from 1992 to the present, and whose land was at any point acquired or used for economic activity by Dinant, including but not limited to the palm oil plantations of 9 de Agosto, Concepción, Isla 1, Isla 2, Marañones, Lempira, Occidental, Paso Aguán, Laureles, San Isidro, Aurora, Confianza, Camarones, Chile, Tranvio, Brisas del Aguán, Panamá, Plantel, and Tumbador; to include members of cooperatives who have since re-acquired this land after its acquisition or use by Dinant.

Settlement Agreement, ¶ 64.

This class is represented by Juan Doe XVII, who like the other members of this class, was a member of a farmers' cooperative in the 1990s in the Bajo Aguán when he was deprived of his ownership of land by Dinant's then-owner, Miguel Facussé, through fraud and coercion. *See* Complaint, ¶¶ 541-51. Dinant continues to unjustly profit from that land, and used the profits from it to pay its loans to Defendants. Plaintiffs likely meet the requirements to certify this Class as well.

## B.   Both classes satisfy the Rule 23(a) prerequisites.

Both the Panamá Class and the Farmers' Cooperative Class easily meet all four requirements of Rule 23(a).

*First*, both Classes are "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Numerosity is generally met if "the potential number of plaintiffs exceeds 40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Here, the proposed Panamá Class includes approximately 1,100 people. Vahlsing Decl. ¶ 10. The Farmers' Cooperative Class has approximately 950 class members. *Id.* ¶ 17.

*Second*, "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a). "Commonality" exists where plaintiffs' claims "depend upon a common contention" that is "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "Even a single common question will do." *Id.* at 359 (quotation marks omitted). Commonality "does not require identical claims or facts among class member[s]." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 597 (3d Cir. 2012) (quotation marks omitted). Fact differences among claims do not defeat certification. *In re Prudential Ins. Co. Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998). Commonality typically exists where class members were injured by a common course of conduct. *Martinez v. Wells Fargo Bank, N.A.*, 307 F.R.D. 630, 640 (S.D. Fla. 2015); *In re Vicuron Pharm. Inc. Sec. Litig.*, 233 F.R.D. 421, 426 (E.D. Pa. 2006).

Here, many fact questions are common to both Classes. *See* Complaint ¶¶ 3-4, 9, 11-25, 536, 553 (alleging that Defendants engaged in a common course of direct and indirect funding of Dinant, among other things). Moreover, there are common legal issues that bear on *all* claims in this case, most notably, Defendants' arguments that they are immune from suit and that they generally cannot be held liable based on financing abuses.

There are additional common factual and legal issues within each Class. As for Panamá, Dinant engaged in a single course of conduct: targeting Panamá as a

community. *Id.* ¶¶ 314-28 528-34. And as the motion to dismiss briefing shows, the following issues would be the focus of further litigation, and are common to all class members: (1) the liability standards applicable to Defendants' alleged conduct; (2) Defendants' alleged knowledge and alleged lack of due diligence; (3) the substantiality of Defendants' assistance, in terms of whether Defendants' direct financing and other alleged support for Dinant caused, abetted, or otherwise contributed to, the alleged abuses; and 4) whether Defendants' alleged conduct was negligent or constituted aiding or abetting. The law and evidence regarding all of these issues will focus on Defendants' alleged conduct and that of alleged third-party tortfeasors, rather than on the individual circumstances of any particular class member. These issues are, therefore, common to the Class.

There are also issues common to the Farmers' Cooperatives Class. These include whether Dinant acquired class members' land unjustly, and whether Defendants unjustly profited from interest arising from loans to Dinant, as well as loans to another entity that allegedly also providing financing to Dinant.

*Third*, the representatives' claims or defenses "are typical of the claims or defenses of the class." Rule 23(a). There is "a low threshold for satisfying [this] requirement[]." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182-83 (3d Cir. 2001) (internal quotation marks omitted). Where the named plaintiffs challenge the same unlawful conduct as the putative class, this usually satisfies the typicality requirement. *Id.* Factual differences are immaterial if the named plaintiffs' claims arise from the same course of conduct and legal theory as

the absent class members'. *Stewart*, 275 F.3d at 227-28.

Here, the claims of Juan Doe XIII, the Panamá Class representative, are typical of the Class's because they arise from the same alleged course of conduct by Defendants, the representative and the Class were all allegedly injured by the same alleged campaign by Dinant,[14] and they all allegedly suffered the same sorts of injuries. Since the representative and the Class all seek relief from Defendants for precisely the same alleged conduct, under the same law, and Defendants' alleged conduct was not differentiated with respect to individual class members, the representative's claims are typical. *See* Vahlsing Decl. ¶¶ 11-16; *see also* Complaint, ¶ 521. Juan Doe XIII suffered the same emotional distress and trauma as the class as a whole. Vahlsing Decl. ¶¶ 15.[15]

Likewise, the claims or defenses of the Farmers' Cooperative Class representative, Juan Doe XVII, are typical of those of the Class. He is a member of a rural cooperative whose land was allegedly stolen. Complaint ¶ 524; Vahlsing Decl. ¶ 24. His experiences giving rise to the claims are thus typical of – indeed, identical to – those of other rural cooperative members, whose land was also allegedly stolen by the same course of conduct by Dinant, and allegedly contributed to by the same

---

[14] Juan Doe XIII alleges that he was chased and shot at by Dinant's security personnel while peacefully protesting Dinant's campaign against Panamá.

[15] Juan Doe XIII also suffered additional, distinct injuries. Complaint, ¶¶ 521, 625-31; Vahlsing Decl. ¶ 13. But that too is typical of class members; while the class itself only covers the generalized trauma common to all class members, numerous members of the Panamá community also suffered distinct harms on top of their class injuries. Vahlsing Decl. ¶ 16. Juan Doe XIII's interests are not in any way distinct from that of the other Panamá Class members.

financing by Defendants. Complaint ¶¶ 524, 543-51; Vahlsing Decl. ¶ 25.

*Fourth*, the representative "will fairly and adequately protect the [class's] interests." Rule 23(a). As detailed above, the class representative and Class Counsel have adequately represented the Class. Section II.A, *supra*.

The adequacy inquiry "uncover[s] conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem Prods.*, 521 U.S. at 625-26 (quotation marks and citation omitted). The inquiry "tends to merge" with commonality and typicality, which are "guideposts" for assessing "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected." *Id.* at 626 n.20. To find an impermissible "antagonism" between the named plaintiffs' objectives and the class's, there must be "a legally cognizable conflict of interest" that is "apparent, imminent, and on an issue at the very heart of the suit." *In re Ins. Brokerage Antitrust Litig.*, 282 F.R.D. 92, 107 (D.N.J. 2012) (quotation marks omitted).

Both Juan Doe XIII and Juan Doe XVII are adequate class representatives for their respective classes. Since both bring claims based on the same alleged course of conduct as their Class's claims, there is no real concern over conflicts of interests that would render them inadequate. Each representative's incentive to win his own claims thus ensures adequate prosecution of the class claims. He has the proper incentive to protect the interests of absent class members and their

interests do not diverge.

Plaintiffs have shown that the recognition payments to the class representatives are fair. Section II.D, *supra*. Courts in this Circuit typically assess the propriety of recognition payments by asking whether the payment is fair compensation in light of the named plaintiffs' services and risks, *not* under the rubric of whether there is a potential conflict between the class and the named plaintiff that would render the representation inadequate. *See e.g. Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 353-54 (D.N.J. 2020); *Godshall*, 2004 U.S. Dist. LEXIS 23976 *9, 19-21 (assessing whether recognition award was fair in light of efforts expended and noting, for adequacy of representation purposes "no apparent conflict between the interests of the named plaintiffs and the claims asserted on behalf of the class"); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D.Pa. 1985); *In re Linerboard Antitrust Litig.*, 2004 U.S. Dist. LEXIS 10532 *57.

Indeed, courts do so and approve recognition awards where the awards far exceed what the class members receive. *E.g. Somogyi*, 495 F. Supp. 3d at 353-54 (approving $5,000 award where each class member would receive $75); *Smith v. Prof'l Billing & Mgmt. Servs.*, No. 06-4453 (JEI), 2007 U.S. Dist. LEXIS 86189 (D.N.J. Nov. 21, 2007) (finding no issues raised that the named plaintiff's interests are antagonistic to the class's and preliminarily approving $2,500 payment to named plaintiff, where total class payment was under $16,000 and each class member would receive $6.50). Whatever the rubric, because the payments are fair,

there is no conflict.[16]

Adequate representation also requires that the "plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation." *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 299 (D. Del. 2003) (citing *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975)). Absent specific proof to the contrary, the adequacy of counsel is presumed. *Sanchez-Knutson v. Ford Motor Corp.*, 310 F.R.D. 529, 540 (S.D. Fla. 2015). Here, the presumption is unnecessary, since Counsel is well qualified to conduct this litigation. Section II.A, *supra*.

Furthermore, Plaintiffs' counsel have invested considerable time and resources into this action, over years. Vahlsing Decl. ¶¶ 27-30. This enabled counsel to negotiate this Settlement over four years of negotiation and as a result of an intensive, multi-day mediation. *Id.* ¶ 36. In any event, it is unlikely any other counsel would represent these Classes, or have the experience necessary to adequately represent these Classes against these Defendants. And like the class representatives, Counsel has no interests antagonistic to those of the Settlement Classes. Thus, the adequacy requirement is satisfied.

Moreover, the Court may assess whether settlement class members were adequately represented by looking to the settlement itself. *Amchem Prods.*, 521 U.S.

---

[16] Moreover, as noted above, Juan Doe XIII, the Panamá Class representative, is also settling individual claims beyond the claims of the Panamá Class. *See Velez*, 04 Civ. 2010 U.S. Dist. LEXIS 125945 *73-74 (approving $175,000 to $425,000 award to class representatives in part because amounts encompassed not just "service fee" but also an amount in compromise of named plaintiff's claim that had not been adjudicated for class members).

at 619-20. The fact that this settlement is adequate, and may be the class members'
only hope for any relief, Section II.C, *supra*, further supports that the class
members have been adequately represented.

### C. The Panamá Class satisfies Rule 23(b)(3).

To certify a Rule 23(b)(3) class, plaintiffs must show that common questions
of law or fact "predominate over any questions affecting only individual members,
and that a class action is superior to other methods for fairly adjudicating the
controversy." Fed. R. Civ. P. 23(b)(3). Plaintiffs also must show that the class is
ascertainable. *Byrd v. Aaron's Inc.*, 784 F.3d 154, 161-62 (3d Cir. 2015). The
Panamá Class is likely to meet these requirements.

**Predominance** focuses on "whether the defendant's conduct was common as
to all of the class members, and whether all of the class members were harmed by
the defendant's conduct." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011)
(en banc). Predominance is satisfied where "common evidence may be used to prove
the essential elements of the [class's] claims." *Kelly v. Realpage Inc.*, 47 F.4th 202,
215 (3rd Cir. 2022) (cleaned up). Predominance "does not require . . . the elimination
of all individual circumstances," including where "establishing an injury is not as
conducive to common proof." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 489 (3d Cir.
2015) (quotation marks omitted); *see also Winoff Indus. v. Stone Container Corp.*,
305 F.3d 145, 163 (3d Cir. 2002) (finding common issues predominate even though
individual determinations will arise at trial).

Here, the predominance inquiry's "focus" is satisfied, since "defendant's
conduct was common as to all of the class members," and "all of the class members

33

were harmed by the defendant's conduct." *See Sullivan*, 667 F.3d at 298.

Defendants allegedly engaged in a single course of conduct – financing Dinant –

that, in turn, allegedly injured each class member and forms the basis of all class

members' claims.

Even with respect to *Dinant's* conduct towards the Panamá Class, the central

fact – that Dinant allegedly terrorized the entire Panamá community through a

pattern of violence intended to impact all its members – is common to the Class.

Defendants' alleged culpability and defenses will be proved largely using the same

evidence. Thus, the common questions predominate over any individualized issues.

While class members might need individualized evidence to make out their

emotional distress claim or establish their damages, these issues would not

predominate over the common ones. And, again, these individualized showings are

not fatal to certification. Moreover, these individual questions are similar for each

class member. *See Hilao v. Estate of Marcos*, 103 F.3d 767, 774 (9th Cir. 1996) ("As

to whether any compensable injury exists for a particular class member, that

question is virtually identical in each case. Did the victim experience pain and

suffering from the torture, summary execution or disappearance?").

In any event, this is a class certification for *settlement*, so the individual

issues are even less prominent than they would be if the case went to trial, because

there is no manageability concern. *Sullivan*, 667 F.3d at 302-03. Since this

settlement does not contemplate individualized damage payments to each class

member, there is no argument that proving individual damages would present

intractable management problems. *In re Budeprion XL Mktg. & Sales Litig.*, MDL No. 2107, 2012 U.S. Dist. LEXIS 91176, at *29 (E.D.Pa. July 2, 2012).

Since the many common issues regarding Defendants' (and Dinant's) alleged conduct would comprise the focus of any trial, they predominate over any individual issues.

**Superiority** focuses "on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1269 (11th Cir. 2004). Rule 23 lists four pertinent issues in this inquiry: (a) the class members' interests in individually controlling the litigation; (b) the extent and nature of any litigation already begun by class members; (c) the desirability of concentrating the litigation into the forum; and (d) likely difficulties in managing class litigation. Fed. R. Civ. P. 23(b)(3). Because a class proceeding will likely be superior where common issues predominate, generally, where predominance is satisfied, superiority will also be satisfied. *Williams v. Mohawk Indus.*, 568 F.3d 1350, 1358 (11th Cir. 2009).

Of the four factors listed in Rule 23(b)(3), three of them are largely irrelevant here. Other than the instant case, no litigation has been initiated by any other class members, and there is therefore no other litigation to concentrate into this forum. And since Plaintiffs seek settlement-only class certification, there will be no litigation to manage. *Amchem Prods.*, 521 U.S. at 620; *Sullivan v. DB Invs., Inc.*, 667 F.3d at 302-03.

As to class members' interests in individually controlling the litigation, that

interest appears to be minimal. It is likely too inefficient and costly for every class member to sue Defendants individually; if no class is certified, many victims of Defendants' alleged conduct will likely have no ability to obtain relief. For any class member who does wish to individually control their claims, their interests will be protected by their right to object or opt-out. This preserves the ability for any class members who wish to bring and control individual litigation to do so.

Certification would also relieve the substantial judicial burdens of repeated adjudication of the same issues in individual trials; indeed it would reduce those burdens to zero, given that the Settlement Class seeks certification for settlement purposes.

Here, given the centrality of numerous common issues, there can be little question that the class mechanism (and a class settlement) is superior to litigating these common issues in two thousand individual actions. The Settlement provides the Settlement Class prompt, predictable, and certain relief. By contrast, as noted above, many class members will likely obtain no relief without a settlement class. The "relative advantages of a class action" clearly favor certification where *no* "other forms of litigation might be realistically available" to many plaintiffs. *Klay*, 382 F.3d at 1269. A class action is a superior, more manageable option than individual actions by as many class members, potentially hundreds or thousands, as are able to bring their own claims, and where those who cannot would have no remedy at all.

**The class is ascertainable.** A class is ascertainable if it is defined by "objective criteria" and there is a "reliable and administratively feasible mechanism

for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163.

Here, class members can be identified through simple, objective criteria: a person is a class member if s/he was a resident of Panamá during the class period (and was therefore subject to Dinant's campaign of terror). Identifying those individuals (around 1,100 people) will not be difficult based on public records, existing community surveys, and simple family interviews. Vahlsing Decl. ¶ 10.

In sum, common issues will predominate, class treatment is superior to hundreds or thousands of individual cases, and the class is ascertainable. Rule 23(a) and Rule 23(b)(3) are likely to be satisfied, and thus certification of the Panamá Settlement Class is likely appropriate.

### D.   The Farmers' Cooperative Class satisfies Rule 23(b).

The Farmers' Cooperative Class meets the criteria for certification under Rule 23(b)(1)(B), or alternatively under Rule 23(b)(3).

#### 1.   The class may be certified under Rule 23(b)(1)(B).

The class should be certified as a Rule 23(b)(1)(B) class, which is appropriate where individual adjudications "as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). In particular, a class is certifiable as a "limited fund" class where "numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem Prods.*, 521 U.S. at 614.

This class pleads a single claim, for unjust enrichment, and for purposes of

settlement, Plaintiffs are assuming that the value of this claim is limited to slightly more than US$4 million. Vahlsing Decl. ¶ 21. The typical approach to such a claim is that its value is limited to "the resulting increase in the defendant's net assets." Restatement (Third) Restitution and Unjust Enrichment, § 49. While Plaintiffs have arguments that exceptions apply here, they are taking the default position as a reasonable approach to settlement. Based on the information currently available, Plaintiffs calculate that Defendant IFC's alleged enrichment from its US $15 million loan to Dinant is approximately US $4.18 million. *See* Vahlsing Decl. ¶ 21.[17]

Spread across the nearly 1,000 estimated members of the Farmers' Cooperative Class, the estimated enrichment figure amounts to slightly more than $4000 per class member. If the class members were to litigate their claims individually, and were to reach favorable verdicts at trial, this enrichment figure would not be likely to satisfy all of their claims – leading to a risk of individual judgments impairing others' ability to recover.

If litigated separately, whichever cooperative members arrive at judgment first would have a claim on the entire $4 million, because the entitlement to enrichment is not differentiated: for each *individual* claim, the claimant could recover up to the amount they lost, limited by Defendants' alleged total enrichment.

---

[17] Plaintiffs believe that Defendants were also enriched through other means, including loans and equity investments in the Honduran bank Ficohsa which itself profited heavily from Dinant's activities. *See* Complaint, ¶¶ 110-15, 551. Nonetheless, Plaintiffs do not currently have access to information which would quantify the amount of enrichment from these investments. *See* Vahlsing Decl. ¶ 22.

*See* Restatement (Third) Restitution and Unjust Enrichment, § 49. Thus, this is a proper "limited fund" class, since individual lawsuits would more than drain the pool available to satisfy judgments, such that the interest of later-adjudicated individual claims would be prejudiced. Class certification avoids this problem, ensuring that all class members have an equal right to recovery (as the Class Settlement provides).

### 2.  Alternatively, Rule 23(b)(3)'s requirements are met.

Alternatively, the Farmers' Cooperative Class also meets the predominance, superiority, and ascertainability requirements of Rule 23(b)(3).

**Predominance and superiority.** For this class, the common issues again predominate because Plaintiffs were harmed by an alleged common course of conduct by Defendants. And with respect to Dinant, its alleged conduct in usurping land was also common to large portions of the class. Complaint, ¶ 544-47; Vahlsing Decl. ¶¶ 17-19, 25.

The individual issues here mostly center on valuation of land and whether a particular cooperative's land was acquired unjustly. But there are essentially *no* issues that are specific to individual class members; instead, the interests to be vindicated are collective: *i.e.*, the land rights of rural cooperatives, in which each of the class members held a certain number of shares. These questions of valuation and land theft would not need to be determined 1,000 times over, but only about 18 times, for each cooperative and plot of land allegedly taken. *See* Complaint, ¶ 546; Vahlsing Decl. ¶ 18.

**The class is ascertainable.** The Farmers' Cooperative Class is defined by "objective criteria": whether a Plaintiff was a member of a certain cooperative on a given date. There is a "reliable and administratively feasible mechanism," *Byrd*, 784 F.3d at 163, for determining this: for example, it could be shown through public records, internal cooperative documents, and simple interviews with known members. Vahlsing Decl. ¶ 20. No more is required.

## IV. The proposed notice plan should be approved because it complies with Rule 23 and Due Process.

"[T]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Notice to a Rule 23(b)(3) class must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Notice must be given in a reasonable manner by appropriate means, and must clearly state: the nature of the action; the class definition; the class claims, issues, or defenses; the right to individual legal representation; the right to exclusion and the time and manner for requesting exclusion; and the binding effect of a class judgment under Rule 23(c)(3). *Id.* Due process is satisfied when notice is "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Shipley v. First Fed. Sav. & Loan Ass'n of Delaware*, 619 F. Supp. 421, 436 (D. Del. 1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

The proposed notice meets all these requirements. It includes the nature of

the action, Settlement Agreement, Ex. C-1 & C-2 at 1; the definition of the
Settlement Classes, *id*.; the class claims, issues, and defenses, *id*.; and a class
member's rights with respect to participation in the Settlement and the
consequences of exercising those rights, including the binding effect of the
settlement, *id*., C-1 at 2-7, C-2 at 2-6.

The Notice communicates the date, place, and time of the final settlement
approval hearing, the right to object to or opt out of the settlement, and the timing
and method for doing so. *Id*., C-1 at 7, C-2 at 5. The Notice also explains the
settlement's terms, including the total amount and the amounts allocated to the
Classes and other Qualifying Beneficiaries, and for recognition payments, class
administration, and attorneys' fees and costs. *Id*., C-1 at 3-4, C-2 at 2-3.

Notice will be provided to those who fall under the definitions of the
Settlement Classes who live in the Bajo Aguán, as well as those who have left but
can be reasonably identified. Settlement Agreement, Ex. C, ¶ 11(a). The notice will
be in Spanish, all class members' primary language. *Id*. ¶ 6. Due to the rural
location of the class members (where mail service may be insufficient), the likely
limited internet access of many class members, and the risk of misinformation on
social media channels, notice will be primarily distributed in hard copies at class
members' residences through a reputable Honduran Law Firm which has
experience in comparable situations and is familiar with the local context. *Id*. ¶ 8.
Radio announcements will serve as a complimentary method of distribution. *Id*. ¶
11(b). These methods have been found to be appropriate in other class actions,

specifically those in rural and international contexts. *Balderas-Guevara v. Mity Mole, Inc.*, No. 2:08-cv-862-FtM-29SPC, 2010 U.S. Dist. LEXIS 20074, at 3 (M.D. Fla. Feb. 5, 2010) (holding that paralegal personally visiting class members to provide notice is appropriate under the circumstances due to the unreliability of mail service in rural Mexico); *Rosas v. Sarbanand Farms, LLC*, No. C18-0112, 2019 U.S. Dist. LEXIS 28556, at *5 (W.D. Wash. Feb. 22, 2019) (holding radio announcements are appropriate as notice for migrant farmworkers in rural Mexico). The settlement administrator will also provide the detailed settlement agreement and other relevant documents on a password-protected website accessible to all class members upon request. Settlement Agreement, Ex. C, ¶ 11(d). Considering the complex realities and constraints of the region, this is reasonably calculated to reach class members. Vahlsing Decl. ¶¶ 46-56.

Opt-out forms and objections will be collected by the Honduran law firm upon confirmation of the requester's membership in the class. Settlement Agreement, Ex. C, ¶¶ 14, 18(b); *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1032 (N.D. Ill. 2000) (stating that some proof of class membership is commonplace and that it is a "minimal reporting requirement [that] is not burdensome and is a reasonable safeguard against manipulation of the process by non-class members."). If the Farmers' Cooperative Class is certified under Rule 23(b)(1)(B) and not Rule 23(b)(3), the class members will not have a right to opt out, but notice will still be given along with an opportunity to object.

Plaintiffs present the notice plan as Exhibit C to the Settlement Agreement,

42

which includes the proposed schedule of events, and the full content of the long-form notices as Exhibits C-1 & C-2, and additionally attach as Exhibit 2 to the Vahlsing Declaration a proposed script for the radio announcements. The contents and methods of notice meet the requirements under Rule 23 and satisfy due process. Thus, the Court should approve the proposed notice plan.

## V.  The Court should maintain the Individual Plaintiffs, class representatives and class members' pseudonymity given the continued risk to their lives.

The Individual Plaintiffs, class representatives and class members seek to continue this Court's protection of their identities, and Defendants do not oppose that request. Identifying such persons could still subject them to risk of reprisal in Honduras. *See* Vahlsing Decl. ¶¶ 57-59. Accordingly, the names, addresses, telephone numbers, email addresses, other contact information and other identifying information for all such persons should be kept strictly confidential by all parties, and shall not be filed on the public docket.

## CONCLUSION

For the foregoing reasons, the Court should grant preliminary approval of the proposed class settlement and permit Plaintiffs to notify the Classes by implementing the proposed notice plan.

Dated: December 5, 2023                Respectfully submitted,

/s/ Misty Seemans
Misty A. Seemans, DE Bar # 5975
O.P.D. (Pro Bono; cooperating attorney
with EarthRights International)
820 North French Street
Third Floor

43

Wilmington, DE 19801
Tel: (302) 255-0133
Email: misty@earthrights.org

Marco Simons
Richard Herz
Marissa Vahlsing
EARTHRIGHTS INTERNATIONAL
1612 K Street NW, Suite 401
Washington, DC, 20006
Tel: (202) 466-5188

Jonathan Kaufman
LAW OFFICE OF JONATHAN KAUFMAN
341 W. 24th St. Apt. 21C, New York, NY
10011
T: (212) 620-4171

Judith Brown Chomsky
LAW OFFICES OF JUDITH BROWN
CHOMSKY
Post Office Box 29726, Elkins Park, PA
19027
Tel: 215-782-8367

*Counsel for Plaintiffs*