# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| JUANA DOE I et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | C.A. No. 17-1494-JFB-SRF |
| INTERNATIONAL FINANCE | § | |
| CORPORATION, and IFC ASSET | § | |
| MANAGEMENT COMPANY, LLC, | § | |
| | § | |
| Defendants. | § | |

## JOINT STIPULATION OF CLASS ACTION SETTLEMENT AND RELEASE

1.      Plaintiffs under pseudonym Juan Doe XIII, individually and on behalf of all other

similarly situated current and former residents of the community of Panamá, Honduras as further

defined below (the "Panamá Class"); Juan Doe XVII, individually and on behalf of all other

similarly situated members of farmers' cooperatives in the Bajo Aguán valley of Honduras as

further defined below (the "Farmers' Cooperative Class"); as well as Juana Doe I individually

and as representative of her deceased husband, Juan Doe I; Juana Doe II individually and as

representative of her deceased husband, Juan Doe II; Juana Doe III individually and as

representative of her deceased husband, Juan Doe III; Juana Doe IV individually and as

representative of her deceased husband, Juan Doe IV; Juana Doe V individually and as

representative of her deceased husband, Juan Doe V; Juan Doe VI; Juana Doe VI; Juan Doe VII

in his individual capacity and as representative of his deceased father, Juan Doe XVIII; Juan Doe

VIII; Juan Doe IX, individually and on behalf of his minor daughter, Juana Doe VII; Juan Doe

X; Juan Doe XII; and Juan Doe XVI, individually and as representative of his deceased father,

Juan Doe XV (collectively, "Plaintiffs"), and the International Finance Corporation on its own

behalf and as successor to the IFC Asset Management Company ("Defendants"), hereby enter into this Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"). In consideration of the representations, warranties, and covenants contained herein, and intending to be legally bound hereby, the undersigned hereby agree, on behalf of Plaintiffs and Defendants, that this action and all claims therein, will be fully, finally, and forever settled, compromised, released, resolved, discharged, and dismissed with prejudice as to Defendants, with each party bearing its own costs, subject to approval by the Court, on the terms and conditions herein.

## I.    DEFINITIONS

2.    **"Administration Costs"** refers to reasonable expenses incurred by the Administrator for purposes of administering the Settlement, as well as any payments and expenses incurred in connection with taxation matters relating to the Settlement and this Settlement Agreement.

3.    **"Administrator"** refers to EarthRights International, Inc.

4.    **"AMC"** refers to the International Finance Corporation as successor to Defendant IFC Asset Management Company Co. LLC.

5.    **"Bajo Aguán"** refers to the lower part of the Aguán River Valley in Honduras, generally understood to include the area extending from the Sabá and Monga Rivers to the Northern Atlantic Coast, and is located in the north-eastern part of the Department of Colón and extends to the Department of Yoro.

6.    **"Business Day"** refers to any day on which banks are open for business in New York, New York, USA, and the Republic of Honduras.

7.    **"Class Action"** refers to this lawsuit, *Doe v. International Finance Corporation,* C.A. No. 17-1494-JFB-SRF (D. Del.).

8.    **"Class Counsel"** refers to EarthRights International, Inc. operating as a law firm, and its

2

attorneys.

9.      **"Class Representatives"** refers to Plaintiff Juan Doe XIII and Plaintiff Juan Doe XVII.

10.     **"Class Settlement"** refers to the settlement facilitated by this agreement and the Exhibits hereto.

11.     **"Complaint"** refers to the Complaint in this Class Action filed on October 24, 2017.

12.     **"Consultation and Implementation Plan"** refers to the Consultation and Implementation Plan for Qualified Community Support to be submitted to the Court for approval, attached as Exhibit B.

13.     **"Defendants"** refers to AMC and IFC.

14.     **"Dinant"** refers to Corporación Dinant S.A. de C.V., and any of its subsidiaries.

15.     **"Distribution Plan"** refers to the Distribution Plan for the Individual Plaintiffs' Escrow Account and the Social Benefit Escrow Account to be submitted to the Court for approval, attached as Exhibit A.

16.     **"Effective Date"** refers to the date on which all of the following have occurred:

   a.   The Court has approved the Class Settlement and this Settlement Agreement as required by Fed. R. Civ. P. 23(e) and has entered the Final Approval Order, including a final judgment of dismissal with prejudice as to AMC and IFC only with respect to the claims of Plaintiffs and the Settlement Classes;

   b.   Any time for appeal following the Final Approval Order has expired or, if the Final Approval Order has been appealed, it has been resolved by agreement and withdrawn by the appealing party, or it has been affirmed by the court of last resort to which an appeal of such Final Approval Order may be taken; so long as

   c.   This Settlement Agreement has not been terminated pursuant to paragraphs 114 and

115.

17.    **"Escrow Agreement"** refers to the escrow agreement substantially similar to the example agreement attached as Exhibit D hereto.

18.    **"Excluded Class Members"** refers to all members of the Settlement Classes that opt out of the Settlement Classes, as well as all members of the Settlement Classes that, as of the Notice Response Deadline, have initiated direct action(s) (excluding this Class Action) against Defendants or any other Releasee for claims otherwise constituting "Released Claims" under this agreement.

19.    **"Farmers' Cooperative Class"** refers to the settlement class defined according to the class definition in III.B.

20.    **"Final Approval Order"** refers to an order of the Court, following a fairness hearing, approving the Class Settlement and dismissing with prejudice Plaintiffs' and the Settlement Classes' claims against Defendants.

21.    **"First Amended Complaint"** refers to the operative First Amended Complaint filed in this Class Action on March 8, 2018.

22.    **"Honduran Law Firm"** shall refer to a law firm with a proven track record of working in rural Honduras, to be selected by the Administrator to assist with class notice.

23.    **"IFC"** refers to Defendant International Finance Corporation.

24.    **"Individual Plaintiffs"** refers to Plaintiffs Juana Doe I, Juana Doe II, Juana Doe III, Juana Doe IV, Juana Doe V, Juan Doe VI, Juana Doe VI, Juan Doe VII, Juan Doe VIII, Juan Doe IX, Juan Doe X, Juan Doe XII, and Juan Doe XVI.

25.    **"Individual Plaintiffs Escrow Account"** refers to an interest-bearing escrow account to be established by Plaintiffs, to receive the $745,000 for the Individual Plaintiffs and attorneys'

fees.

26.     **"Notice Costs"** refers to the reasonable costs of notice to the Settlement Classes, according to the plan set forth herein.

27.     **"Notice Escrow"** refers to an interest-bearing escrow account to be established by Plaintiffs, to provide funds for Notice Costs up to $200,000.

28.     **"Notice Plan"** refers to the Identification, Notice, and Opt-Out Plan to be submitted to the Court for approval, attached as Exhibit C.

29.     **"Notice Response Deadline"** refers to the deadline for objecting to the Settlement Agreement or the Class Settlement and for members of the Panamá Class to opt out, set at 90 days from entry of the Preliminary Approval Order.

30.     **"Panamá Class"** refers to the settlement class defined according to the class definition in III.A.

31.     **"Parties"** refers to the Plaintiffs and Defendants.

32.     **"Plaintiffs"** refers to the Individual Plaintiffs and the Class Representatives.

33.     **"Plaintiffs' Counsel"** refers to EarthRights International, Inc., operating as a law firm, and its attorneys, as well as Judith Brown Chomsky and Jonathan Kaufman of the Law Offices of Judith Brown Chomsky, and Misty Seemans as a cooperating attorney with EarthRights International, Inc.

34.     **"Preliminary Approval Order"** refers to an order of the Court preliminarily approving of the Class Settlement, a proposal for which is attached as Exhibit E.

35.     **"Qualified Community Support"** refers to the purposes to which the Social Benefit Escrow Account may be put, excluding Administration Costs and attorneys' fees, as further defined in paragraphs 90 through 92.

36.     **"Qualifying Beneficiary"** refers to the members of the Settlement Classes, the
Individual Plaintiffs, and other individuals in and/or from the Bajo Aguán region as directed by
the Administrator and Individual Plaintiffs, who may receive the benefits of Qualified
Community Support.

37.     **"Released Claims"** refers to the claims released by Releasors against Releasees pursuant
to this Settlement Agreement, as set forth more fully in paragraph 100.

38.     **"Releasees"** refers to all entities against whom the claims are released, which shall
include IFC, its past or current direct or indirect subsidiaries (including AMC), predecessors,
successor, and the other World Bank Group organizations, the International Bank for
Reconstruction and Development, the International Development Association, the Multilateral
Investment Guarantee Agency, and the International Centre for Settlement of Investment
Disputes, and all current and former employees, directors, officers, and representatives thereof.

39.     **"Releasors"** refers to the Plaintiffs, on behalf of themselves, their estates, their spouses,
and their agents in connection with the Class Action (including but not limited to consultants,
employees, members, shareholders, owners, beneficiaries, successors-in-interest, predecessors-
in-interest, heirs, administrators, assigns, corporate entities, related entities, officers, directors,
relatives, and anyone who claims or may claim by and/or through any of the foregoing and/or in
their stead).

40.     **"Social Benefit Escrow"** refers to the Settlement Amount remaining after paying
$745,000 to the Individual Plaintiffs' Escrow, which shall be $4.255 million, although this
amount may be reduced due to class members opting out of the Class Settlement.

41.     **"Settlement Agreement"** refers to this Joint Stipulation of Class Settlement and Release.

42.     **"Settlement Amount"** refers to the gross settlement amount of Five Million U.S. Dollars

(US$5,000,000) which is the total and maximum amount Defendants will be required to pay under this Settlement Agreement, except that Defendants will pay up to $200,000 in Notice Costs separate and apart from the Settlement Amount.

43.    **"Settlement Classes"** refers to the Panamá Class and the Farmers' Cooperative Class.

44.    **"Settling Parties"** refers to the Plaintiffs and AMC, as defined herein.

45.    **"Social Benefit Escrow"** refers to the Settlement Amount remaining after paying $745,000 to the Individual Plaintiffs' Escrow, which shall be $4,255,000, although this amount may be reduced in accordance with the formula in paragraph 98 in the event that class members opt out of the Class Settlement.

46.    **"Social Benefit Escrow Account"** refers to an interest-bearing account to be established by Plaintiffs, to receive the Social Benefit Escrow.

## II.    RECITATIONS

47.    Plaintiffs filed this lawsuit on October 24, 2017, against Defendant AMC. Plaintiffs alleged nine counts, which they alleged arose out of a violent campaign of land-grabbing in Honduras. Plaintiffs alleged that AMC had directly and indirectly provided financing to Dinant, a Honduran palm oil company, while Dinant expanded its armed security and illegally acquired land through a campaign of violence and intimidation. Plaintiffs alleged claims for Wrongful Death, Battery, Assault, Intentional Infliction of Emotional Distress, False Imprisonment, Negligent Infliction of Emotional Distress, Negligence, Trespass, and Unjust Enrichment. Plaintiffs alleged two putative classes, one on behalf of the residents of the village of Panamá who had allegedly suffered emotional distress as a result of Dinant's pattern of aggression against the villagers of Panamá, and another, for unjust enrichment, on behalf of members of farmers' cooperatives whose land had allegedly been taken by Dinant.

48.     On December 18, 2017, Defendant AMC moved to transfer the case to the District of Columbia. On February 16, 2018, Defendant AMC moved to dismiss.

49.     Plaintiffs filed a First Amended Complaint on March 8, 2018, naming IFC as a Defendant as well. This remains the operative complaint.

50.     Defendants filed amotion to dismiss, or to transfer venue, on April 12, 2018. AMC and IFC asserted a number of defenses to the claims, including that AMC and IFC are immune from the Class Action and that Plaintiffs have failed to state a claim for each count.

51.     On May 31, 2018, the parties filed a stipulation to stay the case pending the outcome of the Supreme Court's decision in *Jam v. International Finance Corporation*, No. 17-1011, which was set to consider whether Defendant IFC had absolute immunity from lawsuits by communities affected by its projects. The Court issued the stay on June 1, 2018.

52.     On February 27, 2019, the Supreme Court issued its opinion in *Jam*, 139 S. Ct. 759 (2019). This Court lifted the stay and set a new motion to dismiss briefing schedule on March 7, 2019.

53.     Briefing on Defendants' new motion to dismiss concluded on July 12, 2019. On February 18, 2020, prior to oral argument, the Parties stipulated that the case should be stayed in deference to ongoing settlement discussions. The Court administratively closed the case.

54.     The case remained administratively closed as settlement discussions continued into 2022. On March 15, 2022, the Court issued an order reopening the case, and on April 7, 2022, issued a scheduling order.

55.     On May 20, 2022, the Parties filed supplemental briefs relating to the motion to dismiss, with responsive briefs filed on June 10, 2022. The motion was argued on June 24, 2022.

56.     On August 23, 2022, the Parties notified the Court that they had reached a settlement in

principle, such that the case should again be administratively closed. On September 13, 2022, the Court administratively closed the case.

57.     The settlement in principle, and this Settlement Agreement, are the product of arms-length, adversarial negotiations, aided, in part, by two day-long mediation sessions mediated by Magistrate Judge Jennifer L. Hall, between Plaintiffs' Counsel and Counsel for Defendants, all of whom are highly experienced in civil litigation and settlement.

58.     The Plaintiffs in consultation with Class Counsel, believe that it is in their best interests and the best interests of the putative Settlement Classes to enter into this Settlement Agreement, to eliminate the need for them to devote further resources to the prosecution of their claims, and to secure remedies in a timely manner, without the risks of litigation.

59.     Plaintiffs and Class Counsel believe that they have strong arguments against Defendants' claimed immunity, in favor of the timeliness of their claims, and in favor of Defendants' liability. Nonetheless, Class Counsel have also determined that the Class Action could be lost entirely on the basis of immunity, and that litigating the immunity defense alone could take several more years, during which the class members would see no relief. Thus, in light of the uncertainty surrounding the immunity issue, the length of time that determining this and other issues may take, and the benefits that will accrue to the classes through this settlement, Class Counsel have concluded that settlement for the consideration and on the terms set forth in this Settlement Agreement is fair, reasonable, adequate, and in the best interest of the classes.

60.     Defendants and their counsel believe that Defendants have strong arguments warranting dismissal of Plaintiffs' claims, including that AMC and IFC are immune from this Class Action, Plaintiffs' claims are time barred, and Plaintiffs have failed to state a claim. Nevertheless, after consultation with their counsel, Defendants concluded, despite their belief that they are not liable

for Plaintiffs' claims, that it would be in their best interests to enter into this Settlement Agreement for an amount consistent with future litigation costs to resolve all claims asserted on behalf of Plaintiffs and the Settlement Classes.

61.     The Parties agree that this Settlement Agreement and the Class Settlement and any actions taken in furtherance of either the Settlement Agreement or the Class Settlement shall not be deemed or construed to be an admission or evidence of any violation of any statute, law, rule, or regulation, or of any liability or wrongdoing by AMC or IFC or of the truth of the Plaintiffs' claims or allegations.

## III.    SETTLEMENT CLASSES

62.     This Settlement Agreement encompasses two classes proposed for certification, the "Panamá Class" and the "Farmers' Cooperative Class." The Parties stipulate to the establishment of these classes for the purposes of the Settlement Agreement, conditional upon preliminary and final approval by the Court.

### A.  Panamá Class

63.     The Panamá Class is defined as follows:

> All individuals who resided in the Community of Panamá located in the Bajo Aguán from November 5, 2009, through October 24, 2017.

### B.  Farmers' Cooperative Class

64.     The Farmers' Cooperative Class is defined as follows:

> All individual persons residing in the Bajo Aguán who were members of farmers' cooperatives in Honduras, from 1992 to the present, and whose land was at any point acquired or used for economic activity by Dinant, including but not limited to the palm oil plantations of 9 de Agosto, Concepción, Isla 1, Isla 2, Marañones, Lempira, Occidental, Paso Aguán, Laureles, San Isidro, Aurora, Confianza, Camarones, Chile, Tranvio, Brisas del Aguán, Panamá, Plantel, and Tumbador; to include members of cooperatives who have since re-acquired this land after its acquisition or use by Dinant.

### C.  Appointment of Class Representatives

65.     Plaintiffs shall seek, and Defendants shall support, for purposes of this Class Settlement only, the determination that Juan Doe XIII will fairly and adequately protect the interests of the Panamá Class, and that Juan Doe XVII will fairly and adequately protect the interests of the Farmers' Cooperative Class, within the meaning of Fed. R. Civ. P. 23(a)(4) and that they should be appointed Class Representatives for purposes of the Class Settlement.

## IV.     CLASS SETTLEMENT TERMS

### A.  Parties to the Settlement

66.     The Plaintiffs enter into the Settlement Agreement with AMC, the settling Defendant.

67.     The Settling Parties stipulate that IFC, on its own behalf, shall be dismissed with prejudice as a Defendant upon final, non-appealable approval of the Class Settlement by the Court.

### B.  Settlement Amount

68.     AMC shall pay the Settlement Amount of Five Million U.S. dollars (US$5,000,000) in total (exclusive of Notice Costs). The Settlement Amount is an "all in" settlement amount that includes all recognition payments to Individual Plaintiffs, all incentive awards to Class Representatives, all contributions to the Social Benefit Escrow Account (as defined below), attorneys' fees, administration costs (exclusive of cost of notice), and any and all other fees, costs, and expenses.

### C.  Notice Costs.

69.     Notice Costs up to $200,000 U.S. dollars shall be borne by AMC, separate from and additional to the Settlement Amount, and deposited into escrow in accordance with the Escrow Agreement ("Notice Escrow Account"). Class Counsel will endeavor to find the most cost-effective means of satisfying the notice obligations, according to the Notice Plan approved by the

Court. Any Notice Costs incurred by Plaintiffs, Class Counsel, the Honduran Law Firm, or any of their agents or representatives in excess of $200,000 that may be required for such expenses, whether Court-ordered or discretionary, shall be borne exclusively by Plaintiffs. Reimbursable Notice Costs shall not include time for employees, associates, or consultants of Class Counsel. If after the notice period has expired and all reimbursable Notice Costs up to $200,000 have been dispersed from escrow, any remaining funds in the Notice Escrow shall be returned to IFC.

70.     Following preliminary approval of the Class Settlement and the Notice Plan, notice shall be effected by Plaintiffs through Class Counsel pursuant to the Notice Plan. Class Counsel may submit Notice Costs pursuant to the approved Notice Plan, attached as Exhibit C hereto, to the Escrow Agent. Any disputes over the distribution of funds for Notice Costs or allowable Notice Costs may be submitted to the Court in connection with the hearing for final approval.

### D.  Administration and Administration Costs.

71.     The Class Settlement shall be administered by EarthRights International, Inc., the Administrator.

72.     Before the Court issues the Final Approval Order, the Administrator shall be entitled to disbursements from the Social Benefit Escrow Account for reasonable Administration Costs. Administration Costs incurred prior to the Final Approval Order shall be capped at a total of $50,000.

### E.  Settlement Escrow and Structured Settlement Plan.

73.     All Settlement Amount payments shall be placed in separate escrow accounts as follows:

    a.  Plaintiffs shall establish the Individual Plaintiffs Escrow Account, subject to the terms and conditions of the Escrow Agreement. Within forty-five (45) calendar days following execution of this Settlement Agreement by all Parties, and receipt of wiring

instructions, AMC shall pay $745,000 to the Individual Plaintiffs Escrow Account.

b.  Plaintiffs shall establish the Social Benefit Escrow Account, subject to the terms and conditions of the Escrow Agreement. Within forty-five (45) calendar days following execution of this Agreement by all Parties and receipt of wiring instructions, AMC shall pay $4,255,000 to the designated Social Benefit Escrow Account.

c.  Consistent with the Escrow Agreement, prior to the Effective Date, Class Counsel may seek reimbursement of reasonable Administration Costs expended prior to the Effective Date from the Social Benefit Escrow Account, up to the amount specified in Paragraph 72.

d.  Five (5) Business Days after the Effective Date, the Settlement Amount, less any Administration Costs paid up to the capped amount specified in Paragraph 72, shall be distributed from escrow in accordance with the Distribution Plan.

e.  AMC and IFC shall have no right of reimbursement or repayment from the Settlement Amount except if the Settlement Agreement is terminated as set forth in paragraphs 99 and 114 through 116 below.

f.  With the exception of reasonable Notice Costs up to $200,000, Defendants shall not be liable for any costs, attorneys' fees, other fees, or expenses of any of Plaintiffs', Plaintiffs' attorneys, experts, advisors, agents, or representatives. Any such costs, fees, and expenses as approved by the Court, consistent with this Settlement Agreement, shall be paid out of the Individual Plaintiffs' Escrow Account and Social Benefit Escrow Account.

g. To the extent that there is any ambiguity or inconsistency concerning disbursements when this Settlement Agreement and the Escrow Agreement are read together, the terms of this Settlement Agreement shall control.

### F. Distribution of Settlement Funds

74. After paying the Settlement Amount, AMC and IFC shall have no responsibility whatsoever for the allocation or distribution of the Settlement Amount and shall not be responsible for disputes relating to the amount, allocation, or distribution of any fees or expenses, including attorneys' fees.

75. Distribution of Settlement Funds shall otherwise proceed according to the Distribution Plan approved by the Court. The proposed Distribution Plan is attached as Exhibit A.

76. As part of the Distribution Plan, Plaintiffs' Counsel may apply to the Court for approval of an award of reasonable attorneys' fees, not to exceed a total of 12.45% of the Settlement Amount. Defendants agree not to oppose Plaintiffs' Counsel's request for reasonable attorneys' fees.

77. Apart from any attorneys' fees award, Class Representative incentive awards, reasonable Administration Costs of the Class Settlement (including but not limited to costs and fees incurred in retaining the Community Advisors as discussed in Exhibit B, the Consultation and Implementation Plan), and taxes on investment income, all other funds in the Social Benefit Escrow Account shall be used exclusively for Qualified Community Support as set forth in paragraphs 90 through 92 and Exhibit B, the Consultation and Implementation Plan.

### G. Escrow Interest and Investment

78. Any accrued interest in the Individual Plaintiffs Escrow Account shall be distributed on a pro rata basis to the distributees of the Individual Plaintiffs Escrow Account, at the same time as

the distributions set forth in paragraph 2 of Exhibit A, the Distribution Plan.

79.     Any interest accruing to the Social Benefit Escrow Account shall be utilized for the purposes of Qualified Community Support.

80.     In the event the Settlement Agreement is disapproved, terminated, or otherwise fails to become effective, all accrued interest shall be refunded to IFC along with the Settlement Amount (net of any taxes paid on such interest).

81.     At all times prior to five (5) Business Days after the Effective Date, the Settlement Amount shall be invested as set forth in the Escrow Agreement, in instruments backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury Money Market Funds or deposits insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit.

82.     Five (5) Business Days after the Effective Date, the Settlement Amount shall be invested as directed in writing by the Administrator.  Any losses on the Settlement Amount shall be borne by Plaintiffs and shall not be recoverable from AMC or IFC. AMC and IFC shall have no liability, obligation, or responsibility of any kind in connection with the investment, disbursement, or other oversight of the Settlement Amount.

### H.  Responsibility for Tax Liability

83.     The settlement payments shall be gross payments that may be subject to applicable taxes, tax withholdings, or payroll deductions.

84.     Any taxes due as a result of interest or investment income earned on the Settlement Amount will be paid from the Settlement Amount. The Administrator shall be solely responsible for directing the filing of all informational and other tax returns necessary to report any taxable and/or net taxable income earned by the Settlement Amount. Further, the Administrator shall be

solely responsible for directing any tax payments, including interest and penalties due, on interest or investment income earned on the Settlement Amount. The Administrator shall direct payment from the Individual Plaintiffs' Escrow Account and the Social Benefit Fund Escrow Account of customary and reasonable tax expenses, including professional fees and expenses incurred in connection with carrying out any tax preparer's responsibilities.

85.     Defendants shall have no responsibility to make any tax filings related to the Settlement, this Settlement Agreement, or the Settlement Amount, and shall have no responsibility to pay taxes on any income earned by the Settlement Amount, or to pay taxes with respect thereto. Defendants shall have no responsibility for the payment of taxes or tax-related expenses.

86.     Plaintiffs agree to make no claim against Defendants for any payment or non-payment of taxes in connection with or regarding or relating to the Settlement Amount or the reporting of the Settlement Amount, if any, to any taxing authorities.

### I.   Administration of Qualified Community Support Programs

87.     Apart from the awards set forth in paragraph 4 of Exhibit A, the Distribution Plan, the members of the Settlement Classes shall not be directly compensated, or otherwise directly paid monies, from the Settlement Amount. Members of the Settlement Classes may directly benefit from Qualified Community Support programs funded by the Social Benefit Escrow Account.

88.     Following the Effective Date, the funds remaining in the Social Benefit Escrow Account shall be released from escrow to the Administrator, who shall distribute those funds for the purposes of Qualified Community Support to benefit Qualifying Beneficiaries.

89.     The Individual Plaintiffs shall be entitled to benefit from Qualified Community Support programs only to the same degree and extent as other Qualifying Beneficiaries and shall not direct any disproportionate benefits to themselves or their family members.

90.     Categories of Qualified Community Support are the following types of community

interventions and programs designed to benefit the communities in the Bajo Aguán:

    a.   Healthcare facilities and services

    b.   Nutrition programs and services

    c.   Education facilities and services

    d.   Transportation programs, services, and improvement projects

    e.   Programs to support small businesses developed by community members

    f.   Infrastructure improvements

    g.   Family wellness, prevention of violence, and counseling facilities and services

    h.   Programs to assist with obtaining benefits through local administrative processes

    i.   Housing facilities and services

    j.   Environmental protection programs

    k.   Care for the elderly

    l.   Legal aid programs in service of the above categories

91.     Qualified Community Support program(s) shall be selected by the Administrator from the

categories listed above following consultation with the Individual Plaintiffs, Class

Representatives, and members of the Settlement Classes. Such programs are intended to benefit

the Bajo Aguán region and communities and shall be administered with sufficient safeguards

aimed at ensuring efficiency, socially favorable outcomes and impact for the communities in the

region, equitable access for beneficiaries, and standards for integrity and environmental and

social impact.

92.     The Qualified Community Support program(s) selected by the Administrator shall not

fund:

a. Without prejudice to Qualifying Beneficiaries benefiting from Qualified Community Support programs in accordance with the list above, direct compensation or any other direct transfer of monies to any Qualifying Beneficiary

b. Criminal activity

c. Armed and/or paramilitary groups or weapons

d. Construction or development of houses of worship

e. Any project that directly involves the Honduran government or any political activity

f. Litigation against the Government of Honduras

g. Any initiative to develop land beyond those described in paragraph 90 above, secure land title or to pay off land debts or obligations of individuals

h. Any projects on the publicly available IFC Exclusion List

i. The manufacture, storage, use or release of any hazardous materials or substance that could cause harm to persons, property, or the environment

j. The involuntary resettlement of, or adverse impact on, any persons or means of livelihood

93.     Plaintiffs shall hold Defendants harmless for any claims, liabilities and damages arising from the failure to meet any such standards or any requirements of local law or from any mismanagement or misappropriation of the Settlement Amount.

94.     The Administrator shall ensure that any Qualified Community Support program(s) is(are) selected, determined, designed, constructed, implemented and operated in accordance with the specified criteria above and all applicable requirements of law.

95.     Neither Defendants nor any other Releasee shall be responsible for any design, implementation or result from any use of funds or Qualified Community Support or any impact

or claim by any person relating thereto. Neither Defendants nor any other Releasee shall be responsible to inspect or monitor the implementation of any Qualified Community Support.

### J.  Identification, Notice Plan and Opt-Out Plan

96.     Following the Preliminary Approval Order, Class Counsel shall implement the Notice Plan approved by the Court, using the Notice Form approved by the Court. The proposed Notice Plan is attached as Exhibit C.

### K.  Reduction of Settlement Amount for Opt-Outs

97.     Within twenty days after the Notice Response Deadline, Class Counsel will provide counsel for Defendants with a list of Excluded Class Members, as well as copies of requests for exclusion from the Settlement Classes.

98.     An opt-out reduction formula shall be applied to the portion of the Settlement Amount that is allocated to the Qualified Community Support. The base settlement contribution to the Qualified Community Support shall be reduced by 100% of the opt-out percentage: i.e., each 1% of persons opting out shall reduce the Qualified Community Support by 1%, and those funds shall revert to AMC.

99.     AMC reserves the right to void the Settlement Agreement if more than 20 class members, including minors by and through their natural or legal guardians, opt out of the Class Settlement, by giving notice to Plaintiffs' Counsel within ten (10) business days of receipt of the Excluded Class Members list and copies of requests for exclusion.

### L.  Release, Discharge, and Covenant Not to Sue

100.    Except for the rights, duties, and obligations set forth in this Settlement Agreement, the Releasors hereby release, acquit and forever discharge the Releasees from the Released Claims, to include any and all claims, causes of action, liabilities, suits, demands, losses, expenses, costs,

obligations, damages, whether liquidated or unliquidated, whether matured or unmatured, known

or unknown, fixed or contingent, suspected or unsuspected (even those claims which if known by

the Parties, and each of them, at the time of execution of this Settlement Agreement must have

materially affected the settlement) which now exist, might exist, or previously existed, or which

the Releasors now own or hold, or have at any time heretofore owned or held arising out of the

Class Action (including the Complaint and the First Amended Complaint), as well as arising out

of the complaint in 17-cv-00363 in the U.S. District Court for the District of Columbia, from the

beginning of time to the Effective Date.

101.    Plaintiffs further agree that they shall not file any claims, complaints, arbitrations or

proceedings against the Releasees with any regulatory or administrative agency or any court with

respect to the Released Claims, and any such claims, complaints, arbitrations or proceedings

filed prior to the execution of this Settlement Agreement shall be dismissed or withdrawn with

prejudice. Releasors acknowledge that they may discover facts different from, or in addition to,

those which they now claim or believe to be true with respect to the Released Claims. Releasors

acknowledge that such facts shall not constitute a basis to modify the Release established by the

Settlement Agreement. For the avoidance of doubt, to the extent the Plaintiffs allege that any

claims or damages arising out of the Class Action (including the Complaint and the First

Amended Complaint), as well as arising out of the complaint in 17-cv-00363 in the U.S. District

Court for the District of Columbia, are accruing or may accrue after the execution of this

Settlement Agreement up to the Effective Date, such claims and damages shall be released by

this Settlement Agreement. Damages as used herein shall include damages of all kinds including,

without limitation, compensatory, single, enhanced, and punitive damages, any and all fees,

penalties, charges, or other monetary, injunctive, or other remedies, and whether arising by

statute, equity, common law or other means.

102.    Releasors do not release any claims, conduct, or causes of action of any type that do not arise out of the allegations in the Class Action (including the Complaint and the First Amended Complaint), or the allegations in the complaint in 17-cv-00363 in the U.S. District Court for the District of Columbia. Releasors do not release any person, party or entity other than Releasees. The Release is not intended to affect in any way any rights that any Class Member has or may have against any other person, party or entity. Upon the Effective Date, Plaintiffs shall dismiss AMC and IFC with prejudice. Upon the Effective Date, the Releases described herein shall be effective.

103.    The Settlement resolves claims against Releasees only, and does not resolve, compromise, discharge, or settle any of the claims of Plaintiffs or the Settlement Classes, against any other alleged tortfeasor in the Class Action.

### M. No Admission

104.    Nothing in this Settlement Agreement, nor any proceedings undertaken in accordance with the terms set forth in the Settlement Agreement, shall be construed as an admission or concession in any action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, administrative agency, regulatory body, or any other body or authority, present or future, by Releasees.  Releasees reserve all legal rights and defenses, including, but not limited to, any defenses relating to class certification and whether any Excluded Class Member has standing to bring any claim.

## V.    SCHEDULE AND PROCEDURE

105.    Upon execution of this Settlement Agreement, the Parties shall jointly notify the Court and file a joint request that the case be reopened for the sole purpose of any proceedings

necessary to obtain the Court's approvals of the Class Settlement.

### A. Motion for Preliminary Approval

106.    As soon as is possible and in no event later than ten (10) Business Days after the execution date of this Settlement Agreement, Plaintiffs shall submit to the Court, and Defendants shall support, a motion to preliminarily approve the Settlement, and authorize dissemination of notice to the Classes, substantially in the form of **Exhibits C-1 and C-2** hereto, and shall:

   a.   File a status update requesting a continued stay of all proceedings in this Action, or, in the alternative, that this Action remain administratively closed, except for those proceedings provided for or required by this Settlement Agreement;

   b.   Request certification of the two Settlement Classes as settlement classes under Fed. R. Civ. P. Rule 23;

   c.   Request a preliminary order that the Class Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Classes, pursuant to Fed. R. Civ. P. Rule 23;

   d.   Request approval of the Notice Plan, and the Class Notice Form, substantially in the form of **Exhibits C, C-1, and C-2** hereto;

   e.   Request approval of the incentive awards to Class Representatives and the attorneys' fee award to Class Counsel; and

   f.   Seek to schedule, after the notice and opt-out period has expired, a hearing by the Court for consideration of a Final Approval Order for the Class Settlement and reimbursement of Administration Costs.

### B. Class Action Fairness Act Notices

107.    Prior to filing the Motion for Preliminary Approval, Plaintiffs shall give notice to

Defendants of any Plaintiffs, and any members of the Settlement Classes, known to reside in any U.S. State.

108.   Defendants, at their own expense, shall bear responsibility for serving notices of the proposed Class Settlement, in conformance with the Class Action Fairness Act, 28 U.S.C. § 1715(b), on the appropriate Federal and State officials.

### C.  Motion for Final Approval and Entry of Final Judgment

109.   Following the Preliminary Approval Order and the schedule set forth therein, including dissemination of notice to the members of the Settlement Classes, and the Notice Response Deadline, Plaintiffs and Class Counsel shall submit, and Defendants shall support, a motion for final approval of this Settlement by the Court.

110.   The Final Approval Hearing shall be scheduled no earlier than 90 days after the Class Action Fairness Act notices are mailed to ensure compliance with 28 U.S.C § 1715.

111.   The final approval motion shall seek a Final Approval Order:

a.   Finding the Class Settlement to be a fair, reasonable, and adequate settlement as to the Settlement Classes within the meaning of Fed. R. Civ. P. 23 and directing its consummation pursuant to its terms;

b.   Finding that notice given constitutes due, adequate, and sufficient notice and meets the requirements of due process and the Federal Rules of Civil Procedure;

c.   Finding that all members of the Settlement Classes shall be bound by this Settlement Agreement, including the release provisions and covenant not to sue set forth in this Settlement Agreement;

d.   Finding that 28 U.S.C. § 1715 was fully complied with;

e.   Incorporating the releases set forth in Paragraphs 100 through 102, and forever

barring Plaintiffs and the Settlement Classes from asserting any Released Claims against any of the Releasees;

f.  Approving the award of reasonable attorneys' fees and reimbursement of Administration Costs from the Social Benefit Escrow;

g.  Retaining exclusive jurisdiction over these proceedings, including the administration and consummation of the Class Settlement;

h.  Directing that all claims by and on behalf of Plaintiffs and the Settlement Classes be dismissed with prejudice as to Defendants only and, except as provided for herein, without costs or attorneys' fees recoverable under 15 U.S.C. § 15(a); and

i.  Determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing that dismissal of all of the Released Claims in this Class Action as to Releasees only shall be final and immediately appealable.

## VI.  OTHER PROVISIONS

### A.  Best Efforts to Effectuate Settlement

112.  Plaintiffs, Class Counsel, and Defendants agree to recommend approval of the Class Settlement to the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, to carry out the terms of this Settlement Agreement, and to secure the prompt, complete, and final dismissal with prejudice of the Released Claims against Defendants.

113.  The Parties shall use best efforts to obtain all necessary approvals to effectuate settlement and obtain preliminary and final approvals as required by state and federal law. In the event that the Court denies preliminary approval of the Class Settlement while providing leave to amend, Plaintiffs may seek to cure any defects identified by the Court to the extent that this does not

require modifying this Settlement Agreement, exclusive of Exhibits. Subject to Defendants'
approval, Plaintiffs may attempt to cure any such defects found in the Exhibits including the
Notice Plan, Distribution Plan, and Consultation and Implementation Plan. Neither Party shall
unreasonably withhold approval of any modifications to the Exhibits.

**B.   Termination of this Settlement Agreement and Return of Settlement Amount**

114.   Subject to the Parties' obligation to use reasonable efforts to obtain all appropriate and
final approvals, in the event that the Court denies preliminary approval of the Class Settlement
and any amendment is either not permitted by the Court or approved by the Parties, or the Court
denies preliminary approval on the basis of defects in the Settlement Agreement itself (exclusive
of Exhibits), any Party to the Settlement Agreement shall be permitted to rescind the Settlement
Agreement in its sole discretion within 30 days following the Court's denial of approval or
overturning on appeal.

115.   AMC shall have the exclusive option to terminate the Settlement Agreement in its sole
discretion and have the Settlement Amount refunded to IFC if:

a.   subject to notice and a reasonable opportunity to cure of at least thirty (30) calendar days,
Plaintiffs fail to use best efforts to obtain preliminary and final approval of the Class
Settlement; or

b.   the number of Excluded Class Members exceeds twenty (20), including minors through
their natural or legal guardians.

116.   If the Settlement Agreement does not become effective pursuant to paragraph 16 above,
then (i) this Settlement Agreement shall be of no force or effect; (ii) all funds paid by AMC into
the Escrow Accounts, plus interest and investment income earned (net of any taxes paid on such
interest and investment income), less any amounts expended or owed to pay reasonable Notice

25

Costs and reasonable Administration Costs, shall be returned to AMC as soon as practicable, but no later than thirty (30) calendar days following notice of termination; (iii) any release pursuant to paragraph 100 through 102 above shall be of no force or effect; and (iv) litigation of the Class Action will resume in a reasonable manner and on a reasonable timetable to be approved by the Court.  Written notice of the exercise of the right to terminate this Settlement Agreement shall be made according to the terms of paragraphs 117 and 118 below.

### C.  Notices to Parties

117.    Notices to Defendants pursuant to this Settlement Agreement shall be sent by registered United States mail, return receipt requested, and email to:

> Jeffrey T. Green
> Sidley Austin LLP
> 1501 K Street NW
> Washington, DC 20005
> jeff@greenlawchartered.com
> (240) 286-5686

With copies via email to Notifications@ifc.org for the attention of the Office of General Counsel and marisa.west@sidley.com.

118.    Notices to Plaintiffs pursuant to this Settlement Agreement shall be sent by registered United States mail, return receipt requested, and email to Class Counsel:

> Marco Simons
> EarthRights International
> 1612 K Street NW, Suite 800
> Washington, DC 20006
> marco@earthrights.org
> (202) 466-5188

With copies via email to legal@earthrights.org and marissa@earthrights.org.

### D.  Confidentiality

119.    Defendants shall not oppose the Plaintiffs proceeding with the Class Settlement under

pseudonyms in public documents and hearings and the filing of their true names with the Court under seal. To the extent that the true name of any Individual Plaintiff is disclosed to Defendants, such name(s) shall be maintained by them as confidential and not released publicly unless ordered by the Court. Defendants shall not oppose before the Court any measures requested by Plaintiffs to prevent or limit the public disclosure of the names of Plaintiffs.

120.    Plaintiffs shall not disclose the specific terms of this Settlement Agreement, directly or indirectly, orally or in writing, to any person or entity whatsoever except such information as may be minimally required for accomplishment of the purposes of this Settlement Agreement and the consummation of the Class Settlement, including notice, or for insurance underwriting, financial accounting, audit or financial statement purposes, or for the preparation of state and federal income tax returns and as otherwise required by legal compulsion.

121.    Plaintiffs shall not oppose that the Court seal the Settlement Agreement so that the specific terms remain confidential. This provision shall not inhibit or hinder Plaintiffs' efforts in connection with providing notice as required by law and pursuant to the Notice Plan approved by the Court.

122.    The Parties agree that the joint statements attached as Exhibit F, which include one statement for post-execution of the Settlement and before the Final Approval Order and one statement following entry of the Final Approval Order, shall constitute the Parties' public characterization of the Settlement Agreement.

123.    No Party shall issue any statement or communication that is inconsistent with the public statement agreed pursuant to the clause above. This provision shall not limit any Party's ability to litigate any future related actions, including in any court submissions, oral arguments, and/or trials or proceedings, except as provided in paragraph 100 through 102 herein.

124.    Nothing in this Agreement shall limit the ability of Class Counsel to communicate orally or in writing with members of the Settlement Classes regarding the provisions of this Class Settlement.

### E.  Non-disparagement

125.    Unless this Settlement Agreement is terminated, the Parties shall not disparage each other in any public, written, oral, social media, or management statements. This provision shall not limit any Party's ability to litigate any future actions, including in any court submissions, oral arguments, and/or trials or proceedings, except as provided in paragraphs 100 through 102 herein.

### F.  Resolution of Disputes

126.    The Parties shall use all reasonable efforts to amicably resolve any dispute, controversy, or claim arising out of or relating to the Settlement Agreement. In the event that disputes cannot be amicably resolved, all disputes concerning the interpretation, implementation, calculation, or payment of the Settlement Amount or other disputes regarding compliance with the Settlement Agreement will be first submitted to mediation through the District of Delaware Alternative Dispute Resolution program. If such mediation is unsuccessful, disputes will be resolved by the Court.

### G.  Privileges and Immunities

127.    The Parties acknowledge and agree that no provision of this Settlement Agreement in any way constitutes or implies a waiver, renunciation, termination, or modification by Defendants of the privileges, immunities, or exemptions, if any, granted in the Articles of Agreement establishing IFC, international conventions, or applicable law, and Defendants expressly reserve all privileges, immunities and exemptions thereunder. This reservation shall not prohibit the

Court from exercising jurisdiction over Defendants for purposes of effectuation and enforcement of this Settlement Agreement.

### H.  Binding Effect

128.   With the exception of the confidentiality and publicity restrictions in paragraphs 120 and 122 through 125 above, each and every covenant and agreement herein by the Plaintiffs shall be binding upon the Individual Plaintiffs and all members of the Panamá Class and the Farmers' Cooperative Class.

129.   Each and every covenant and agreement herein by AMC shall be binding on the IFC as successor to IFC Asset Management Co., LLC.

### I.  Entire Agreement

130.   This Settlement Agreement, together with Exhibits hereto, reflects the entirety of the fully-integrated agreement by and among the Parties with respect to the transactions contemplated by this Settlement Agreement, and supersedes all prior agreements or understandings, whether written or oral, between or among any of the Parties with respect to the subject matter hereof. The Parties agree there are and have been no express or implied promises, inducements or agreements made by any Party to the other except as specifically and expressly set forth within this Settlement Agreement and the Exhibits hereto.

### J.  Headings

131.   The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

### K.  No Party is the Drafter

132.   None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of

29

interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

### L. Intended Beneficiaries

133.    No provision of this Settlement Agreement will provide any rights to, or be enforceable by, any person or entity that is not a Party or member of the Settlement Classes, Plaintiffs' Counsel, the Administrator, or a Releasee. No other person shall have any rights under this Settlement Agreement and cannot enforce its terms.  The Parties may not assign or otherwise convey any right under or to enforce or dispute any provision of this Settlement Agreement.

### M. Representations and Warranties

134.    The signatories hereto represent and warrant that they each have the requisite authority (or in the case of natural persons, the legal capacity) to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby.

### N. Authority of Signatories

135.    The Parties' representatives signing this Settlement Agreement represent and warrant that they have the requisite authorities and consents to execute this Agreement on behalf of the Parties as agents and attorneys-in-fact, including any necessary approvals.

### O. Execution in Counterparts

136.    This Settlement Agreement may be executed in counterparts.  Signatures transmitted by electronic means shall be considered valid signatures as of the date signed.

IN WITNESS WHEREOF, the Parties hereto through their fully authorized representatives have agreed to this Settlement Agreement as of the date first herein above written.

| | |
|---|---|
| FOR INTERNATIONAL FINANCE CORPORATION AS SUCCESSOR TO IFC ASSET MANAGEMENT CO., LLC: | AS CLASS COUNSEL, AND FOR CLASS REPRESENTATIVES JUAN DOE XIII AND JUAN DOE XVII, AND INDIVIDUAL PLAINTIFFS JUANA DOE I, JUANA DOE II, JUANA DOE III, JUANA DOE IV, JUANA DOE V, JUAN DOE VI, JUANA DOE VI, JUAN DOE VII, JUAN DOE VIII, JUAN DOE IX, JUAN DOE X, JUAN DOE XII, AND JUAN DOE XVI: |

FOR INTERNATIONAL FINANCE
CORPORATION AS SUCCESSOR TO IFC
ASSET MANAGEMENT CO., LLC:

Jeffrey T. Green
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C., 20005
(202) 736-8291
jgreen@sidley.com

*As attorney-in-fact for International Finance Corporation as successor to IFC Asset Management Co., LLC*

Dated: _November 29_, 2023

AS CLASS COUNSEL, AND FOR CLASS
REPRESENTATIVES JUAN DOE XIII
AND JUAN DOE XVII, AND INDIVIDUAL
PLAINTIFFS JUANA DOE I, JUANA DOE
II, JUANA DOE III, JUANA DOE IV,
JUANA DOE V, JUAN DOE VI, JUANA
DOE VI, JUAN DOE VII, JUAN DOE VIII,
JUAN DOE IX, JUAN DOE X, JUAN DOE
XII, AND JUAN DOE XVI:

Marco Simons
EARTHRIGHTS INTERNATIONAL
1612 K Street N.W., Suite 800
Washington, D.C. 20006
(202) 466-5188
marco@earthrights.org

*As class counsel and attorney-in-fact for Plaintiffs*

Dated: _29 November_, 2023

**EXHIBIT A – [PROPOSED] DISTRIBUTION PLAN FOR THE INDIVIDUAL PLAINTIFFS' ESCROW ACCOUNT AND THE SOCIAL BENEFIT ESCROW ACCOUNT**

1.   Subject to the approval of the Court, the Settlement Amount shall be distributed as follows.

**INDIVIDUAL PLAINTIFFS' ESCROW**

2.    Following the Effective Date, a total of US$50,000.00 shall be paid out of the Individual Plaintiffs' Escrow to each of the following Individual Plaintiffs in recognition of their role in facilitating this litigation and Class Settlement, and in recognition of their personal participation in this case:

    a.   Juana Doe I individually and as representative of her deceased husband, Juan Doe I

    b.   Juana Doe II individually and as representative of her deceased husband, Juan Doe II

    c.   Juana Doe III individually and as representative of her deceased husband, Juan Doe III

    d.   Juana Doe IV individually and as representative of her deceased husband, Juan Doe IV

    e.   Juana Doe V individually and as representative of her deceased husband, Juan Doe V

    f.   Juan Doe VI

    g.   Juana Doe VI

    h.   Juan Doe VII in his individual capacity and as representative of his deceased father, Juan Doe XVIII

    i.   Juan Doe VIII

    j.   Juan Doe IX, individually and on behalf of his minor daughter, Juana Doe VII

    k.   Juan Doe X

    l.   Juan Doe XII

    m.  Juan Doe XVI, individually and as representative of his deceased father, Juan Doe
        XV

3.     Plaintiffs' Counsel shall be awarded $95,000 in attorneys' fees from the Individual

Plaintiffs' Escrow (12.75%). This amount is below the contingency fee in the Individual

Plaintiffs' retainer.

## SOCIAL BENEFIT ESCROW ACCOUNT

4.     A total of US$50,000.00 shall be paid to each of the following Class Representatives as

incentive awards, in recognition of their role, as Class Representatives, in facilitating this

litigation and Class Settlement, and in recognition of the significant risks that they have borne

due to their personal participation in this case:

    a.   Plaintiff Juan Doe XIII

    b.   Plaintiff Juan Doe XVII

5.     Subject to the Court's approval, these sums shall be paid out of the Social Benefit Escrow

following the Effective Date.

6.     Plaintiffs' counsel shall be awarded reasonable attorneys' fees of up to $520,000 from the

Social Benefit Escrow (12.22% of the Social Benefit Escrow funds). Subject to the approval of

the Court, following the Effective Date, a distribution of reasonable attorneys fees shall be made

from the Social Benefit Escrow Account to Class Counsel for all attorneys' fees and costs of

litigation, not to include reasonable Administration Costs. Interest shall not be paid on this sum.

7.     All other funds in the Social Benefit Escrow Account shall be used exclusively for

Qualified Community Support as set forth in the Settlement Agreement and the Consultation and

Implementation Plan, as well as reasonable Administration Costs of the Class Settlement.

**EXHIBIT B – [PROPOSED] CONSULTATION AND IMPLEMENTATION PLAN FOR QUALIFIED COMMUNITY SUPPORT**

1. The delivery mechanism to Qualifying Beneficiaries for the benefits of the Class Settlement is through Qualified Community Support programs funded by the Social Benefit Escrow Account.

## QUALIFYING BENEFICIARIES

2. Qualifying Beneficiaries shall include:

   a. Each member of the Panamá Class, as determined by the Administrator in consultation with the Panamá Class Representative, who has not opted out; and

   b. Each member of the Farmers' Cooperative Class, as determined by the Administrator in consultation with the Farmers' Cooperative Class Representative, who has not opted out.

3. The Class Action also includes the individual claims of Individual Plaintiffs who are not Class Representatives, which are not included by the Settlement Classes. The "all-in" Class Settlement therefore also compromises the claims of these Individual Plaintiffs, who may also benefit from Qualified Community Support, and may propose that additional community members from the Bajo Aguán may also benefit in order to achieve the Parties' goal of providing benefits to the broader community.

4. Qualifying Beneficiaries shall therefore also include:

   a. The Individual Plaintiffs; and

   b. Additional community members from the Bajo Aguán, as determined by the Administrator in consultation with the Class Representatives and Individual Plaintiffs.

5. Each Qualifying Beneficiary shall have an equal entitlement to share in the benefits of Qualified Community Support. In particular, the Individual Plaintiffs shall be entitled to benefit

from Qualified Community Support programs only to the same degree and extent as other Qualifying Beneficiaries, and shall not direct any disproportionate benefits to themselves or their family members.

6.      The Administrator shall maintain a complete list of all Qualifying Beneficiaries, which shall be furnished to the Court with the Administrator's first report, 60 days following the Effective Date. This list shall be filed under seal.

## CONSULTATION AND SELECTION OF QUALIFIED COMMUNITY SUPPORT PROGRAMS

7.      No later than 15 days following the Effective Date, the Administrator will engage the assistance of a Spanish-speaking expert with a proven track record of experience working in rural regions of Honduras whose selection will be approved by the Administrator to act as a Community Liaison in the consultation process for the selection of Qualified Community Support programs.

8.      Within 30 days of the selection and approval of the Community Liaison, that individual will assemble of team of five to seven "Community Advisors," subject to the approval of the Administrator.

9.      The Community Advisors will be five to seven individuals in or from Honduras with experience living in communities in the Bajo Aguán region who have a track record of community leadership and/or participation in civil society organizations dedicated to social improvement in the Bajo Aguán region.

10.     Within 45 days of the selection of the Community Advisors, these advisors will begin a series of consultations to determine the nature and scope of the Qualified Community Support projects.

11.     Consultations may take place telephonically, by videoconference, in person, or through a combination of these means.

12.     At a minimum, the Community Advisors will make an effort to consult with:

    a.  Each Plaintiff;

    b.  The members of the Panamá Class, through one or more meetings held in the community of Panamá if security conditions permit, such that all Panamá Class members that the Administrator has identified are invited to at least one meeting;

    c.  The members of the Farmers' Cooperative Class, through one or more meetings held in the Bajo Aguán if security conditions permit, focused on the following communities, such that all Farmers' Cooperative Class members that the Administrator has identified are invited to at least one meeting:

        i.   Municipality of Trujillo, Colon: the towns of Rigores, Ilanga, Monte Abajo, Chacalapa, Holanda Linda, and Mariscales;

        ii.  Municipality of Tocoa: the towns of Tocoa, Asentamiento Concepcion, Concepcion, Asentamiento La Lempira, Asentamiento La Aurora, La Aurora, La Confianza, Asentamiento La Confianza, Taojica, Quebrada de Arena, Asentamiento Tranvio, Asentamiento Camarones, and Asentamiento San Isidro;

        iii. Municipality of Bonito Oriental: the community of San Jose del 5;

    d.  Any additional Qualifying Beneficiaries, from communities in the Bajo Aguán.

13.     The Community Advisors and Community Liaison may also consult with relevant experts in the selection and design of Qualified Community Support programs.

14.     During these consultations, the Community Advisors will assess the baseline needs and

priorities of these individual and communities with respect to the type and nature of support of potential Qualified Community Support programs.

15.     Notice of these consultations shall be sent to all Class members identified in the Identification and Notice Plan.

16.     The Community Advisors shall conclude these consultations within 180 days of the Effective Date.

17.     Within 45 days of the conclusion of these consultations, or as soon as practicable given circumstances in the Bajo Aguán, the Community Advisors and the Community Liaison will make a proposal within the Qualified Community Support categories provided in the Settlement Agreement to the Administrator outlining Qualified Community Support programs to be funded based on the content and outcomes of the consultations ("Initial Proposal").

18.     Within 60 days of the presentation of this Initial Proposal, or as soon as practicable given circumstances in the Bajo Aguán, the Administrator and Community Liaison will, subject to their discretion and consistent with the restrictions on Qualified Community Support in the Settlement Agreement, make a decision on which programs to fund and begin their implementation.

19.     The Administrator shall make best efforts to ensure that Qualifying Beneficiaries are the primary intended recipients of the benefits of Qualified Community Support. Nonetheless, Qualified Community Support programs are intended to benefit the Bajo Aguán region and communities, and a program may still be eligible for Qualified Community Support funding notwithstanding the fact that incidental benefits may flow to individuals other than Qualifying Beneficiaries.

**IMPLEMENTATION OF QUALIFIED COMMUNITY SUPPORT PROGRAMS**

20.     The Administrator may make all expenditures necessary to implement the selected Qualified Community Support programs.

21.     The Administrator shall make a good-faith effort to fully disburse the Social Benefit Escrow Account within three years of the Effective Date. If Qualified Community Support programs include elements of ongoing expenditures, the Administrator may transfer funds to entities providing Qualified Community Support for continued disbursement. For example:

    a.  For a Qualified Community Support program in which a fund is provided directly to a medical institution for indigent patients, the medical institution may continue to spend the fund on an ongoing basis;

    b.  For a Qualified Community Support program in which funds for scholarships are provided to a school, scholarship funds may continue to be disbursed on an ongoing basis.

These examples are merely illustrative.

22.     The Administrator shall keep clear and accurate records of all Administrative Costs paid by the Social Benefit Escrow Account.

## REPORTS TO THE COURT

23.     Following the Final Approval Order, the Administrator shall make reports to the Court on the following schedule:

    a.  60 days following the Effective Date, the Administrator shall report on consultation efforts to date, and furnish the list of Qualifying Beneficiaries, to be filed under seal

    b.  240 days following the Effective Date, the Administrator shall report on the consultation process, including whether any extension for further consultation is necessary

c.  60 days following each annual anniversary of the Effective Date, the Administrator shall report on the disbursement of Qualified Community Support funds during the previous year, as well as an accounting of any Administrative Costs paid from the Social Benefit Escrow Account

d.  60 days following the disbursement of all Social Benefit Escrow Account funds, the Administrator shall report on the final disbursement of Qualified Community Support funds, as well as a final accounting of any Administrative Costs paid from the Social Benefit Escrow Account

## MODIFICATIONS AND DEADLINES

24.    For good cause, the Court may approve reasonable extensions of the deadlines herein or modify any element of this plan.

**EXHIBIT C – [PROPOSED] IDENTIFICATION, NOTICE, AND OPT-OUT PLAN**

1. Following the Preliminary Approval Order, the Administrator shall proceed with the following process to identify Class Members of each Settlement Class, provide notice to those Class Members, and provide an opportunity to opt-out of the Settlement Classes, as approved by the Court.

## IDENTIFICATION OF CLASS MEMBERS

2. Within 30 days of the Preliminary Approval Order, and in consultation with the Class Representatives, the Administrator will prepare a preliminary list of all known Class Members and the locations where those Class Members are likely to be found.

3. The Administrator will continuously update the list of Class Members as new information is gathered during the Notice Period.

4. Within 30 days after the Notice Response Deadline, the Administrator shall prepare and provide to the Parties a final list of known Class Members.

## NOTICE PROGRAM

5. Notice shall be provided to the Settlement Classes as approved by the Court, in the forms set forth in Appendix 1 and 2 to this Exhibit and as set out below.

6. As all Class Members are native Spanish speakers, prior to providing notice, the Administrator shall arrange professional translation of the notice forms into Spanish. The forms provided to Class Members shall be the Spanish versions; the English versions may be provided upon request.

7. The Administrator shall also arrange professional translation of the Settlement Agreement and Preliminary Approval Order into Spanish, to be provided to Class Members upon request.

8.  Within 15 days of the Preliminary Approval Order, the Administrator shall retain a Honduran Law Firm with a proven track record of working in rural Honduras.

9.  Within 30 days of the Preliminary Approval Order, the Honduran Law Firm shall complete a security assessment analyzing the security conditions of the known locations of Class Members and whether these conditions allow hand delivery of notice. Security conditions may impact the method of notice delivery, as discussed below.

10. Within 45 days of the Preliminary Approval Order, the Honduran Law Firm shall establish a contact number on the mobile messaging app WhatsApp, the most common messaging and voice communication network used in the region. This contact number shall be reflected on the notice forms.

11. Notice shall be provided as follows:

     a.  **Service on Settlement Class members.** The primary means of notice shall be through direct delivery by messenger. Within 45 days of the Preliminary Approval Order, the Honduran Law Firm will begin hand delivering the Spanish-language notice forms to all identified potential Class Members, where security conditions allow in accordance with the security assessment. Hand delivery will occur through a reliable messenger service selected and supervised by the Honduran Law Firm and approved by the Administrator, and will extend to all Class Members living in the affected regions as well as those who have left but whose locations can be reasonably identified.

The currently known locations of Farmers' Cooperative Class Members are as follows:

| Community | Cooperative(s) |
|---|---|
| **Left Bank Region** | |
| Panamá, Trujillo | Plantel, Paso Aguán, and Panamá |

41

| | |
|---|---|
| Rigores, Trujillo | Marañones |
| Ilanga, Trujillo | Cashews |
| Monte Abajo, Trujillo | Marañones, Island 1 and Island 2 |
| Chacalapa, Trujillo | Marañones, Isla 1, Isla 2 |
| Holanda Linda, Trujillo | Marañones, Isla 1, Isla 2 |
| Masicales, Trujillo | Isla 1, Isla 2 |
| **Tocoa region and to Saba** | |
| San José del 5 Community, Bonito Oriental | Brisas del Aguán |
| Quebrada de Arena | Tranvio, Camarones and El Chile |
| Asentamiento Tranvio (new) | Tranvio |

| | |
|---|---|
| Asentamiento San Isidro (new) | San Isidro |
| Asentamiento Camarones | Camarones |
| Asentamiento La Confianza (new) | La Chile, Tranvio, Camarones, and La Confianza |
| La Confianza (Old) | La Confianza |
| Taojica | La Confianza |
| Asentamiento La Aurora (new) | Aurora, Panamá (ECA Nueva Panamá), and Flor del Aguán |
| Colonia La Aurora | La Aurora |
| **South Sector of Tocoa** | |
| Asentamiento La Lempira (new) | La Lempira, Occidental |
| La Concepción (old) | Concepción |
| Asentamiento La Concepción (new) | Concepción, Los Laureles |
| Barrio 9 de Agosto de Isletas | 9 de Agosto |
| Colonia Los Laureles de Tocoa | Los Laureles |

| | |
|---|---|
| Barrio San Isidro de Tocoa | San Isidro |
| Barrio la Occidental | La Occidental |
| Colonia La Lempira | La Lempira |
| City of Tocoa | Members of all cooperatives (many) |
| **Migration Regions:** | |
| San Pedro Sula | Members of all cooperatives (few) |
| Choloma | |
| Tela | El Plantel |
| Yoro | Los Laureles |
| Olancho | Members of several cooperatives (few) |
| USA | Members of various cooperatives (few) |

b. **Radio Publication of Notice**. Within 30 days of the Preliminary Approval Order, the Administrator shall arrange for radio announcements to run on Radio Progreso and Radio Globo (two national Honduran radio stations with significant listenership in the Bajo Aguán), as well as on Radio Popular, a radio station specifically targeting the Bajo Aguán region. The radio announcements, in Spanish, will provide notice of the Class Settlement and prompt Class Members to call the WhatsApp contact number to be advised of their rights and options. The radio announcements will run fourteen times per week for 30 days.

c. **Class Member inquiries.** The Administrator shall arrange for the Honduran Law Firm to staff the WhatsApp contact number during business hours to answer inquiries from potential Class Members, and to provide information on the

44

procedures to opt out (as relevant) or object. Inquiries received outside of business hours shall be recorded and responded to promptly. Class Counsel shall also be available to answer any questions about the Class Settlement and its terms.

d. **Access to Settlement Agreement.** Class Members may also request to view the Settlement Agreement in full. After confirming the requester's membership in at least one of the Settlement Classes, the Honduran Law Firm will provide access to a password-protected website where the Settlement Agreement will be housed, including its Spanish translation, or will arrange hand delivery of a hard copy of the Spanish translation if security conditions allow. The website will also house the Preliminary Approval Order and its translation.

e. **Assembly in Tocoa.** If a significant number of inquiries arise, and security conditions allow, the Administrator may opt to hold an assembly in the city of Tocoa for Class Members to ask Class Counsel questions related to the Class Settlement.

f. **Proof of Notice**. Within 60 days of the Preliminary Approval Order, the Honduran Law Firm shall provide to Class Counsel proof of service of notice by hand delivery to Class Members in locations where security conditions allowed.

### OBJECTION AND OPT-OUT PROCEDURES

12. If the Farmers' Cooperative Class is certified under Federal Rule of Civil Procedure 23(b)(1)(B), Farmers' Cooperative Class members shall not be permitted to opt out.

13. For the Panamá Class, and for the Farmers' Cooperative Class if it is certified under Fed. R. Civ. P. 23(b)(2), the Notice Response Deadline, at 90 days following the Preliminary Approval Order, shall be the deadline for opting out.

14. To opt out, Settlement Class members must contact the Honduran Law Firm at the WhatsApp contact number provided on the notice form by the Notice Response Deadline to request the collection of their opt-out form. The Honduran Law Firm, through the reliable messenger system, shall confirm the requester's membership in the relevant Settlement Class upon collection of the completed and signed opt out form. The Honduran Law Firm shall ensure that all opt-out forms are collected from Settlement Class members who choose to opt-out within 7 days after the Notice Response Deadline.

15. Within 15 days after the Notice Response Deadline, the Honduran Law Firm shall provide the Administrator with a list of Settlement Class members who have chosen to opt out, as well as proof of their decision.

16. Within 20 days after the Notice Response Deadline, the Administrator shall provide to the Parties, along with the final list of identified Settlement Class members, a list of Class Members who have chosen to opt out of the Class Settlement or who have initiated direct action(s) (excluding this Class Action) against Defendants, or any other Releasee, for claims otherwise constituting "Released Claims" under this agreement.

17. Any Settlement Class member who does not opt out of the relevant Settlement Class in the manner described above shall be deemed to be part of the Class upon expiration of the Notice Response Deadline, and shall be bound by all subsequent proceedings, orders, and judgments in this case.

18. The Notice Response Deadline shall also serve as the deadline for objections to the Settlement Agreement or the Class Settlement. Settlement Class members may object in the following ways:

a. By submitting a written objection, along with any supporting documents, to the Court, on or before the Notice Response Deadline, by mailing it (postmarked by the Notice Response Deadline) to or filing it in person or electronically with the Court, and sending copies to the Administrator. The written objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection.

b. By transmitting objections to the Honduran Law Firm. If they choose to use this option, Settlement Class Members must contact the Honduran Law Firm at the WhatsApp contact number provided on the notice form by the Notice Response Deadline to request the collection of their written objection. For all such objections, the Honduran Law Firm shall use a reliable messenger service to confirm the objector's membership to the Settlement Class and collect the written objection for delivery to the Honduran Law Firm. No later than 7 days after the Notice Response Deadline, the Honduran Law Firm shall transmit all such objections to the Administrator, who shall promptly file them with the Court.

c. All objections may be submitted in English or Spanish. The Administrator shall arrange professional translation of any objections submitted in Spanish into English and file the translated versions with the Court.

19. Members of the Settlement Classes who fail to make objections in the manner specified in paragraph 18 of this Exhibit shall be deemed to have waived any and all objections and shall be foreclosed from making any objection, whether by appeal or otherwise, to the Class Settlement or this Settlement Agreement. Any member of the Settlement Class that

objects to the Settlement shall nevertheless be entitled to all benefits of the Class

Settlement if it is approved and becomes final.

## MODIFICATIONS AND DEADLINES

20. For good cause, the Court may approve reasonable extensions of the deadlines herein or

modify any element of this plan.

**APPENDIX 1**

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT,**

UNITED STATES DISTRICT COURT for the DISTRICT OF DELAWARE

*A court authorized this notice. This is not a lawsuit and you are not being sued.*
*However, read this carefully because it may affect your legal rights.*

**PLEASE READ THIS NOTICE CAREFULLY**

PURSUANT TO THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE ("COURT") ENTERED ON XXX, YOU ARE HEREBY NOTIFIED OF THE PROPOSED SETTLEMENT IN THE CASE OF *DOE I v. INTERNATIONAL FINANCE CORPORATION*:

**1. WHY DID I GET THIS NOTICE?**

This notice is to inform you that a proposed settlement ("Settlement") has been reached in the class action *Doe I, et al., v. International Finance Corporation, et al.,* in the District Court of Delaware in the United States brought on behalf of a Class. If you received this notice, our records indicate that you may fall under the definition of a Class Member in this Settlement. This Class includes:

> "All individuals who resided in the Community of Panamá located in the Bajo Aguán from November 5, 2009, through October 24, 2017."

This notice describes the lawsuit, the proposed Settlement, and your rights and options moving forward. This notice also states how to assert your rights and the deadlines by which you must do so if you choose.

**2. WHAT IS THIS LAWSUIT ABOUT?**

The people who brought the case – and all the Settlement Class Members like them – are called Plaintiffs. The entities they have sued are called Defendants. The Defendants in this case are the International Finance Corporation (IFC) and the IFC Asset Management Company, LLC (AMC). The case name is *Doe I., et al., v. International Finance Corporation, et al*.

In this lawsuit, Plaintiffs sued the Defendants, alleging that the Defendants provided loans to Corporación Dinant, a palm oil company, that allowed Dinant to expand its armed security and illegally acquire farmers' lands through violence, intimidation, and fraud. Plaintiffs also claim that Defendants were negligent and/or aided and abetted Dinant's actions by providing these loans. Among other defenses, IFC and AMC deny that they have engaged in any unlawful activity, failed to comply with the law in any respect, or have any liability to anyone under the claims made in this lawsuit, in part, because they argue they are immune from suit as an international organization.

Before the Court or a jury had an opportunity to determine whether IFC and AMC were liable for the conduct alleged by Plaintiffs, Plaintiffs and IFC, on behalf of AMC, agreed to settle this lawsuit to avoid further litigation pursuant to the terms and conditions of the Settlement.

**3. WHY IS THIS A CLASS ACTION?**

In a class action, one or more people, called "class representatives" sue for themselves and for people who have similar claims. All of these people together are the "class" or "class members." One court resolves the case for all class members, except for those who exclude themselves from the class. A class action allows the claims of all class members to be more efficiently resolved than individual lawsuits.

### 4.  WHY IS THERE A SETTLEMENT?

The Court has not yet decided if IFC and AMC are liable for the alleged conduct. Instead, all parties have agreed to the Settlement. A settlement avoids the costs, length, and uncertainty of a trial and related appeals while providing benefits to the class.

The parties and their counsel have concluded that the Settlement is advantageous, considering the expense and uncertainties of continued litigation. The parties and their counsel have determined that the Settlement is fair, reasonable, and adequate and is in the best interests of the Class Members.

### 5.  WHAT ARE MY RIGHTS AND OPTIONS?

If you fit the description of a Class Member as set forth in the answer to Question 1, you have three options. Each has its own consequences which you should understand before making your decision. Your rights regarding each option, and the procedure you must follow to select an option, are as follows:

| Option | Overview | Deadline |
|---|---|---|
| **A. Do nothing, and participate in the settlement** | By doing nothing, you remain a part of the Class and benefit from the terms of the Settlement Agreement (discussed below in response to Question 6). The proposed Settlement Agreement will bind you as a Class Member, and Class Counsel will represent you. You are a participating member of the Class **unless you exclude yourself under Option 2.** | There is no deadline for you to participate as a Class Member and you do not have to take any action. |
| **B. Exclude Yourself from the Settlement ("Opt out of the Settlement")** | If you request exclusion, you will neither receive any benefit from the Settlement, nor will you be considered to have released your claims alleged in the class action. If you request exclusion from the Settlement, you may not receive any benefits under the Settlement. You retain any right you may have to bring another lawsuit separate from the class action through an attorney that you hire and pay for yourself. | If you do not wish to participate in or receive the benefits of the Settlement, you must complete and sign the attached "Opt-Out Form" appended to this document. You must then call XXX-XXX to have your form picked |

| | | |
|---|---|---|
| | | up by [deadline date for opt out]. |
| **C. Object to the Settlement** | If you are a participating Class Member, and you do not exclude yourself from the Settlement Class (opt out), you may object to the Settlement before final approval of the Settlement by the Court. If you choose to object to the Settlement, you may do so yourself or through an attorney that you hire and pay for yourself. | In order to object to the Settlement, or any portion of it, you must write your objection (meeting the requirements discussed in response to Question 15 below), and you must then either mail it or file it in person or electronically with the Court, sending copies to the Settlement Administrator, or call XXX-XXX to have your objection picked up by [deadline]. |

## 6.  WHAT WILL I RECEIVE FROM THE SETTLEMENT IF I DO NOT REQUEST EXCLUSION?

IFC, on behalf of AMC, shall pay $5,000,000 as the total settlement amount. The total settlement amount will fund all benefits and costs to be made available under the Settlement, including: Qualified Community Support programs, the Settlement Administrator's reasonable fees and expenses, attorneys' fees, administration costs, payments to the individual plaintiffs and class representatives in this case in recognition of the time, effort, and risks they and their families each have endured in litigating this case, and any other fees or expenses incurred in implementing the terms of the Settlement as approved by the Court.

After all other deductions, the Settlement will provide at least $3,535,000 for the implementation of Qualified Community Support programs to benefit members of the Panamá Class, members of a separate class comprised of members of farmers' cooperatives, and a limited number of other individuals in and/or from the Bajo Aguán region. These Qualified Community Support programs may include programs in: health, nutrition, education, transportation, small business support, infrastructure, family wellness, housing, environmental protection, care for the elderly, and legal aid in service of these programs. The nature and scope of the projects ultimately

selected for implementation will be determined by the Settlement Administrator after a thorough consultation process with the intended beneficiaries.

### 7.  DO THE CLASS REPRESENTATIVES GET A PAYMENT?

Yes**.** Plaintiffs will seek approval from the Court for a payment of $XXX for the class representative for initiating and pursuing the lawsuit, undertaking the risk of litigating this case, and making decisions for the benefit of the Class.

### 8.  HOW WILL THE LAWYERS BE PAID?

As part of the final approval hearing, Class Counsel will apply to the Court for approval of $520,000 in attorneys' fees, representing 12.22% of the total settlement amount for their expenses incurred in connection with their work in this case. This amount constitutes full and complete compensation for all legal fees, costs, and expenses of all Class Counsel. Class members will not be required to pay Class Counsel for any other attorneys' fees, costs, or expenses out of their own pockets. Class Counsel's attorneys' fees and expenses as approved by the Court will be paid out of the total settlement amount.

The reasonable costs of administering the Settlement, including the Settlement Administrator's fees and expenses, estimated to be $XXX, will also be paid out of the total settlement amount. EarthRights International will serve as the Settlement Administrator.

### 9.  WHEN WILL I GET THE SETTLEMENT BENEFITS?

The Court will hold a hearing on XXX where it will decide whether to provide final approval for the Settlement. The Settlement Administrator will endeavor to initiate all Qualified Community Support programs and fully disburse the available funds within three years of final approval of the Settlement.

### 10.  WHAT AM I GIVING UP TO BENEFIT FROM THE SETTLEMENT AS A CLASS MEMBER?

In exchange for receiving the benefits of the Settlement, and unless you exclude yourself from the Settlement, you cannot sue IFC or AMC for or be a part of any other lawsuit about the claims this Settlement resolves. The specific claims you cannot sue for are those that form the basis of this lawsuit and are fully described in Plaintiffs' First Amended Complaint. The First Amended Complaint is available on the settlement website at the following URL: XXX.

### 11.  HOW CAN I READ THE FULL TEXT OF THE SETTLEMENT?

The full text of the Settlement, along with other relevant documents, are available to read by request at the password-protected Settlement website. To request the password, you must call Class Counsel at the number XXX. You may also request delivery of a hard copy of the full Settlement Agreement by contacting this same number. If you receive a hard copy of the Settlement Agreement, you are encouraged to destroy the hard copy within six months after receipt.

If you have any questions, please call or message Class Counsel and their agents at XXX. This phone number is equipped with Whatsapp. You will not be charged to speak to Class Counsel, who can answer your questions about the Settlement.

## 12. HOW CAN I EXCLUDE MYSELF FROM THE SETTLEMENT?

To exclude yourself from the settlement, or "opt out," you must fill out and sign the attached form, then call XXX to have your form collected. The form must contain the following information:

- The name of this proceeding (*Doe I v. International Finance Corporation*)
- Your full name, address, and phone number;
- That you are a member of the Panamá Class and would like to request exclusion; and
- Your signature

To be excluded, you must call XXX and arrange to have your form picked up by XXX.

If you ask to be excluded, you will not get any benefits under the Settlement, and you cannot object to the Settlement. You will not be legally bound by anything that happens in the lawsuit. You will retain any right you may have to sue IFC or AMC in the future for these claims with an attorney you hire and pay for yourself. You cannot both exclude yourself from the Settlement and object to the Settlement.

## 13. IF I DON'T OPT OUT, CAN I SUE IFC AND AMC FOR THE SAME THING LATER?

No. Unless you exclude yourself from the Settlement, choosing to receive no benefits from this Settlement, you give up any right to sue IFC or AMC for the claims this Settlement resolves. Remember, the deadline to exclude yourself is XXX.

## 14. IF I EXCLUDE MYSELF, CAN I GET BENEFITS FROM THIS SETTLEMENT?

No. If you exclude yourself you will not be eligible to receive any of the benefits from this Settlement.

## 15. HOW DO I TELL THE COURT I DON'T LIKE THE SETTLEMENT?

If you are a Class Member and do not want to be excluded from receiving settlement benefits, but still think the Court should not approve the Settlement as is, you can "object" to the Settlement or any part of it if you do not think it is fair, reasonable, or adequate. You can share your objection with the Court, and the Court will consider your views.

To object, you must do so in writing and either mail it or file it in person or electronically with the Court, sending copies to the Settlement Administrator (address below), or call XXX by XXX to have your objection picked up. If you have your objection collected rather than filing it

yourself, Class Counsel will file your objection with the Court and provide it to IFC and AMC's Counsel.

Your objection must include the following:

- The name of this proceeding (*Doe I v. International Finance Corporation,* Case No. 1:17-cv-01494-JFB-SRF (D. Del.));
- The objector's full name, address, and telephone number;
- An explanation of the basis upon which the objector claims to be a Class Member;
- Whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class, and all grounds for the objection, including any legal or factual support for the objection and copies of any papers, exhibits or other evidence that the objecting Class Member will present to the Court in connection with the final approval hearing;
- The name of all counsel, if any, for the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection;
- The case name and civil action number of any case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;
- Any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;
- A statement as to whether the objector intends to appear at the Final Approval Hearing on their own behalf or through counsel;
- At least four dates that the objector will be available to be deposed before the Final Approval Hearing by Class Counsel and IFC's and AMC's counsel and the location where the objector will be available;
- If the objector is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include a description of the attorney's legal background and prior experience in connection with class action litigation; the amount of fees sought by the attorney for representing the objector and the factual and legal basis for the fees being sought; a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and the attorney's hourly rate; and
- The objector's signature (an attorney's signature is not sufficient).

If you hire a lawyer to represent you in preparing a written objection or appearing at the final approval hearing, your lawyer must provide additional information as specified in the preliminary approval order (available on the Settlement website).

SETTLEMENT ADMINISTRATOR

EarthRights International
Marco Simons
1612 K Street Suite 800
Washington, D.C. 20006

marco@earthrights.org
(202) 466-5188

### 16. WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND OPTING OUT?

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the benefits provided by the Settlement or other terms of the Settlement only if you stay in the Class and participate in the Settlement. Even if you object, you are still bound by the Court's decision if it decides to overrule your objection and approve the Settlement. Excluding yourself or "opting out" is telling the court that you don't want to be included in the Settlement. If you exclude yourself, you have no basis to object to the Settlement because the Settlement no longer affects you.

### 17. WHO ARE THE LAWYERS FOR THE PARTIES?

| CLASS COUNSEL | DEFENDANTS IFC AND AMC'S COUNSEL |
|---|---|
| EarthRights International | Sidley Austin LLP |
| Marco Simons | Jeffrey T. Green |
| 1612 K Street Suite 800 | 1501 K Street NW |
| Washington, D.C. 20006 | Washington, DC 20005 |
| marco@earthrights.org | jeffrey.green@sidley.com |
| (202) 466-5188 | (202) 736-8291 |

### 18. WHEN IS THE FINAL SETTLEMENT APPROVAL HEARING?

The Court will hold a final approval hearing on XXX at XXX, at XXX in the U.S. state of Delaware, to determine whether the Settlement should be approved as fair, reasonable, and adequate. The Court will also be asked to approve the request for the class representative payment and the Class Counsel fees and expenses payment.

The hearing may be postponed without further notice to the class. **It is not necessary for you to attend this hearing. If you have submitted an objection and indicated that you intend to appear, you may appear at the hearing and be heard.**

### 19. HOW DO I GET MORE INFORMATION?

The above is a summary of the basic terms of the Settlement. For the precise terms and conditions of the Settlement, you are referred to the detailed Settlement Agreement, which is available on the Settlement website or on delivery by request. To access the full Settlement Agreement you must call XXX to either request hand delivery or for the password to access that portion of the website. If you receive a hard copy of the Settlement Agreement, you are encouraged to destroy the hard copy within six months after receipt.

**YOU MAY CONTACT CLASS COUNSEL BY CALLING XXX FOR ADDITIONAL**

**INFORMATION REGARDING THIS SETTLEMENT OR THE RELATED PROCESSES. PLEASE DO NOT TELEPHONE THE COURT OR DEFENDANTS' COUNSEL.**

**OPT-OUT FORM**

**Instructions:** IF, AND ONLY IF, you do NOT wish to participate in or receive the benefits of the Settlement, you MUST provide your name and address AND sign and date the form. Your completed form MUST be given to the messenger by <mark>[deadline]</mark>.

I am a Member of the Panamá Class, and I hereby assert my right to be excluded from the Class and settlement in *Doe I v. International Finance Corporation*:

Signature: _____

Print Name: _____

Address: _____

_____

Telephone: _____

Date: _____

IF YOU ARE SIGNING ON BEHALF OF ANOTHER INDIVIDUAL (such as a minor) PLEASE INCLUDE THE FOLLOWING INFORMATION:

Your Signature: _____

Your Name: _____

Relationship to
Person Requesting
Exclusion: _____

Address: _____

_____

Telephone: _____

Date: _____

**APPENDIX 2**

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT,**

UNITED STATES DISTRICT COURT for the DISTRICT OF DELAWARE

*A court authorized this notice. This is not a lawsuit and you are not being sued.*
*However, read this carefully because it may affect your legal rights.*

**PLEASE READ THIS NOTICE CAREFULLY**

PURSUANT TO THE ORDER OF THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF DELAWARE ("COURT") ENTERED ON ==XXX==, YOU ARE HEREBY
NOTIFIED OF THE PROPOSED SETTLEMENT IN THE CASE OF *DOE I v.*
*INTERNATIONAL FINANCE CORPORATION*:

### 1.  WHY DID I GET THIS NOTICE?

This notice is to inform you that a proposed settlement ("Settlement") has been reached in the
class action *Doe I v. International Finance Corporation* in the District Court of Delaware in the
United States brought on behalf of a Class. If you received this notice, our records indicate that
you may fall under the definition of a Class Member in this Settlement. This Class includes:

> "All individual persons residing in the Bajo Aguán who were members of farmers'
> cooperatives in Honduras, from 1992 to the present, and whose land was at any point
> acquired or used for economic activity by Dinant, including but not limited to the palm
> oil plantations of 9 de Agosto, Concepción, Isla 1, Isla 2, Marañones, Lempira,
> Occidental, Paso Aguán, Laureles, San Isidro, Aurora, Confianza, Camarones, Chile,
> Tranvio, Brisas del Aguán, Panamá, Plantel, and Tumbador; to include members of
> cooperatives who have since re-acquired this land after its acquisition or use by Dinant."

This notice describes the lawsuit, the proposed Settlement, and your rights and options
moving forward. This notice also states how to assert your rights and the deadlines by
which you must do so if you choose.

### 2.  WHAT IS THIS LAWSUIT ABOUT?

The people who brought the case – and all the Settlement Class Members like them – are called
Plaintiffs. The entities they have sued are called Defendants. The Defendants in this case are the
International Finance Corporation (IFC) and the IFC Asset Management Company, LLC (AMC).
The case name is *Doe I v. International Finance Corporation.*

In this lawsuit, Plaintiffs sued the Defendants, alleging that the Defendants provided loans to
Corporación Dinant, a palm oil company, that allowed Dinant to expand its armed security and
illegally acquire farmers' lands through violence, intimidation, and fraud. Plaintiffs also claim
that Defendants were negligent, were unjustly enriched, and/or aided and abetted Dinant's
actions by providing these loans. Among other defenses, IFC and AMC deny that they have
engaged in any unlawful activity, failed to comply with the law in any respect, or have any
liability to anyone under the claims made in this lawsuit, in part, because they argue they are
immune from suit as an international organization.

Before the Court or a jury had an opportunity to determine whether IFC and AMC were liable for the conduct alleged by Plaintiffs, Plaintiffs and IFC, on behalf of AMC, agreed to settle this lawsuit to avoid further litigation pursuant to the terms and conditions of the Settlement.

### 3.  WHY IS THIS A CLASS ACTION?

In a class action, one or more people, called "class representatives" sue for themselves and for people who have similar claims. All of these people together are the "class" or "class members." One court resolves the case for all class members. A class action allows the claims of all class members to be more efficiently resolved than individual lawsuits.

### 4.  WHY IS THERE A SETTLEMENT?

The Court has not yet decided if IFC and AMC are liable for the alleged conduct. Instead, all parties have agreed to the Settlement. A settlement avoids the costs, length, and uncertainty of a trial and related appeals while providing benefits to the class.

The parties and their counsel have concluded that this Settlement is advantageous, considering the expense and uncertainties of continued litigation. The parties and their counsel have determined that the Settlement is fair, reasonable, and adequate and is in the best interests of Class Members.

### 5.  WHAT ARE MY RIGHTS?

If you fit the description of a Class Member as set forth in the answer to Question 1, you are entitled to receive the benefits provided by the Settlement Agreement. You also have the right to "object" to the Settlement. You may object to the Settlement before final approval by the Court (see Question 14). If you choose to object to the Settlement, you may do so yourself or through an attorney that you hire and pay for yourself. In order to object to the Settlement, or any portion of it, you must write your objection, and you must then either mail or file your objection in person or electronically with the Court, sending copies to the Settlement Administrator, or call XXX-XXX to have your objection picked up by [deadline].

### 6.  WHAT ARE THE BENEFITS PROVIDED BY THE SETTLEMENT?

IFC, on behalf of AMC, shall pay $5,000,000 as the total settlement amount. The total settlement amount will fund all benefits and costs to be made available under the Settlement, including: Qualified Community Support programs, the Settlement Administrator's reasonable fees and expenses, attorneys' fees, administration costs, payments to the individual plaintiffs and class representatives in this case in recognition of the time, effort, and risks they and their families each have endured in litigating this case, and any other fees or expenses incurred in implementing the terms of the Settlement as approved by the Court.

After all other deductions, the Settlement will provide at least $3,535,000 for the implementation of Qualified Community Support programs to benefit members of the Farmers' Cooperatives Class, members of a separate class comprised of individuals from the Panamá region, and a limited number of other individuals in and/or from the Bajo Aguán region. These Qualified Community Support programs may include programs in: health, nutrition, education, transportation, small business support, infrastructure, family wellness, housing, environmental protection, care for the elderly, and legal aid in service of these programs.

**7.   DO THE CLASS REPRESENTATIVES GET A PAYMENT?**

Yes. Plaintiffs will seek approval from the Court for a payment of $XXX for the class representative for initiating and pursuing the lawsuit, undertaking the risk of litigating this case, and making decisions for the benefit of the Class.

**8.   HOW WILL THE LAWYERS BE PAID?**

As part of the final approval hearing, Class Counsel will apply to the Court for approval of $520,000 in attorneys' fees, representing 12.22% of the total settlement amount for their expenses incurred in connection with their work in this case. This amount constitutes full and complete compensation for all legal fees, costs, and expenses of all Class Counsel. Class members will not be required to pay Class Counsel for any other attorneys' fees, costs, or expenses out of their own pockets. Class Counsel's attorneys' fees and expenses as approved by the Court will be paid out of the total settlement amount.

The reasonable costs of administering the Settlement, including the Settlement Administrator's fees and expenses, estimated to be $XXX, will also be paid out of the total settlement amount. EarthRights International will serve as the Settlement Administrator.

**9.   WHEN WILL I GET THE SETTLEMENT BENEFITS?**

The Court will hold a hearing on XXX where it will decide whether to provide final approval for the Settlement. The Settlement Administrator will endeavor to initiate all Qualified Community Support programs and fully disburse the available funds within three years of final approval of the Settlement.

**10. WHAT EFFECT DOES THE SETTLEMENT HAVE ON MY CLAIMS AS A CLASS MEMBER?**

In exchange for receiving the benefits of the Settlement, you cannot sue IFC or AMC for or be a part of any other lawsuit about the claims this Settlement resolves. The specific claims you cannot sue for are those that form the basis of this lawsuit and are fully described in Plaintiffs' First Amended Complaint. The First Amended Complaint is available on the Settlement website at the following URL: XXX.

**11. HOW CAN I READ THE FULL TEXT OF THE SETTLEMENT?**

The full text of the Settlement, along with other relevant documents, are available to read by request at the password-protected Settlement website. To request the password, you must call Class Counsel at the number XXX. You may also request delivery of a hard copy of the full Settlement Agreement by contacting this same number. If you receive a hard copy of the Settlement Agreement, you are encouraged to destroy the hard copy within six months after receipt.

If you have any questions, please call or message Class Counsel and their agents at XXX. This phone number is equipped with Whatsapp. You will not be charged to speak to Class Counsel, who can answer your questions about the Settlement.

### 12. CAN I EXCLUDE MYSELF FROM THE SETTLEMENT?

No. There are no rights to "opt out" or exclude yourself from the Settlement for this Class. The proposed Settlement will bind all Class Members.

### 13. CAN I SUE IFC AND AMC FOR THE SAME THING LATER?

No. This Settlement extinguishes any right to sue IFC or AMC for the claims the Settlement resolves.

### 14. HOW DO I TELL THE COURT I DON'T LIKE THE SETTLEMENT?

If you are a Class Member and think the Court should not approve the Settlement as is, you can "object" to the Settlement or any part of it if you do not think it is fair, reasonable, or adequate. You can share your objection with the Court, and the Court will consider your views.

To object, you must do so in writing and either mail it or file it in person or electronically with the Court, sending copies to the Settlement Administrator (address below), or call XXX by XXX to have your objection picked up. If you have your objection collected rather than filing it yourself, Class Counsel will file your objection with the Court and provide it to IFC and AMC's Counsel.

Your objection must include the following:
- The name of this proceeding (*Doe I v. International Finance Corporation,* Case No. 1:17-cv-01494-JFB-SRF (D. Del.));
- The objector's full name, address, and telephone number;
- An explanation of the basis upon which the objector claims to be a Class Member;
- Whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class, and all grounds for the objection, including any legal or factual support for the objection and copies of any papers, exhibits or other evidence that the objecting Class Member will present to the Court in connection with the final approval hearing;
- The name of all counsel, if any, for the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection;
- The case name and civil action number of any case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case;
- Any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;
- A statement as to whether the objector intends to appear at the Final Approval Hearing on their own behalf or through counsel;

- At least four dates that the objector will be available to be deposed before the Final Approval Hearing by Class Counsel and IFC's and AMC's counsel and the location where the objector will be available;
- If the objector is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include a description of the attorney's legal background and prior experience in connection with class action litigation; the amount of fees sought by the attorney for representing the objector and the factual and legal basis for the fees being sought; a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and the attorney's hourly rate; and
- The objector's signature (an attorney's signature is not sufficient).

If you hire a lawyer to represent you in preparing a written objection or appearing at the final approval hearing, your lawyer must provide additional information as specified in the preliminary approval order (available on the Settlement website).

SETTLEMENT ADMINISTRATOR

EarthRights International
Marco Simons
1612 K Street Suite 800
Washington, D.C. 20006
marco@earthrights.org
(202) 466-5188

## 15. WHO ARE THE LAWYERS FOR THE PARTIES?

CLASS COUNSEL

EarthRights International
Marco Simons
1612 K Street Suite 800
Washington, D.C. 20006
marco@earthrights.org
(202) 466-5188

DEFENDANTS IFC AND AMC'S COUNSEL

Sidley Austin LLP
Jeffrey T. Green
1501 K Street NW
Washington, DC 20005
jeffrey.green@sidley.com
(202) 736-8291

## 16. WHEN IS THE FINAL SETTLEMENT APPROVAL HEARING?

The Court will hold a final approval hearing on XXX at XXX, at XXX in the U.S. state of Delaware, to determine whether the Settlement should be approved as fair, reasonable, and adequate. The Court will also be asked to approve the request for the class representative payment and the Class Counsel fees and expenses payment.

The hearing may be postponed without further notice to the class. **It is not necessary for you to attend this hearing. If you have submitted an objection and indicated that you intend to appear, you may appear at the hearing and be heard.**

### 17. HOW DO I GET MORE INFORMATION?

The above is a summary of the basic terms of the Settlement. For the precise terms and conditions of the Settlement, you are referred to the detailed Settlement Agreement, which is available on the Settlement website or on delivery by request. To access the full Settlement Agreement you must call XXX to either request hand delivery or for the password to access that portion of the website. If you receive a hard copy of the Settlement Agreement, you are encouraged to destroy the hard copy within six months after receipt.

**YOU MAY CONTACT CLASS COUNSEL BY CALLING XXX FOR ADDITIONAL INFORMATION REGARDING THIS SETTLEMENT OR THE RELATED PROCESSES. PLEASE DO NOT TELEPHONE THE COURT OR DEFENDANTS' COUNSEL.**

**EXHIBIT D**

**ESCROW AGREEMENT**

    This Escrow Agreement dated _____, is made among EarthRights International, Inc. ("Class Counsel"), the International Finance Corporation ("IFC") as successor to IFC Asset Management Company LLC ("AMC") and _[Bank]_____, as escrow agent ("Escrow Agent").

<u>Recitals</u>

    A. This Escrow Agreement governs the deposit, investment, and disbursement of the Settlement Amount and any interest thereon that, pursuant to the Settlement Agreement between Plaintiffs under pseudonym Juan Doe XIII, as Class Representative; Juan Doe XVII, as Class Representative; Juana Doe I individually and as representative of her deceased husband, Juan Doe I; Juana Doe II individually and as representative of her deceased husband, Juan Doe II; Juana Doe III individually and as representative of her deceased husband, Juan Doe III; Juana Doe IV individually and as representative of her deceased husband, Juan Doe IV; Juana Doe V individually and as representative of her deceased husband, Juan Doe V; Juan Doe VI; Juana Doe VI; Juan Doe VII individually and as representative of his deceased father, Juan Doe XVIII; Juan Doe VIII; Juan Doe IX, individually and on behalf of his minor daughter, Juana Doe VII; Juan Doe X; Juan Doe XII; and Juan Doe XVI, individually and as representative of his deceased father, Juan Doe XV (collectively, "Plaintiffs") and AMC dated _____ (the "Settlement Agreement"), attached hereto as Exhibit A, will be paid by AMC to settle the class action captioned, *Doe I, et al. v. International Finance Corporation, et al.*, C.A. No. 17-1494-JFB-SRF, pending in United States District Court for the District of Delaware (the "Court").

    B. Pursuant to the terms of the Settlement Agreement, AMC will pay the total amount of $5,000,000 in cash (the "Settlement Amount") in settlement of the claims brought against Defendants and an additional $200,000 in cash (the "Notice Costs") to satisfy the notice obligations according to the Notice Plan approved by the Court.

    C. The Notice Plan shall be executed by Class Counsel. Following final approval by the Court, the Settlement Amount shall be administered by EarthRights International as Administrator of the Class Settlement ("Administrator").

    D. The Settlement Amount and Notice Costs will be deposited into escrow, and together with any interest accrued thereon, will be used for all recognition payments to Individual Plaintiffs, incentive awards to Class Representatives, all contributions for Qualified Community Support programs, attorneys' fees, administration costs, costs of notice, payments for tax liabilities, and any and all other fees, costs, and expenses pursuant to the terms of the Settlement Agreement.

    E. Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Settlement Agreement.

<u>Agreement</u>

    1. <u>Appointment of Escrow Agent</u>. Subject to approval by the Court, the Escrow Agent is hereby appointed to receive, deposit, safeguard and disburse the Settlement Amount upon the

terms and conditions provided in this Escrow Agreement, the Settlement Agreement, their exhibits, and any other exhibits or schedules later annexed hereto and made a part hereof.

2.   The Escrow Accounts. The Escrow Agent shall establish and maintain three escrow accounts as follows:

a)   Notice Escrow Account. Within forty-five (45) calendar days following execution of the Settlement Agreement, AMC shall pay and the Escrow Agent shall receive US$200,000 into an escrow account titled the Notice Escrow Account.

b)   Individual Escrow Account. Within forty-five (45) calendar days following execution of the Settlement Agreement, AMC shall pay and the Escrow Agent shall receive US$745,000 into an escrow account titled the Individual Plaintiffs Escrow Account.

c)   Social Benefit Escrow Account. Within forty-five (45) calendar days following execution of the Settlement Agreement, AMC shall pay and the Escrow Agent shall receive US$4,255,000 into an escrow account titled the Social Benefit Escrow Account.

3.   Settlement Funds. The Settlement Amount and Notice Costs and all interest accrued thereon shall be referred to herein as the "Settlement Funds." The Settlement Funds shall be held and invested on the terms and subject to the limitations set forth herein, and shall be released by Escrow Agent only in accordance with the terms and conditions hereinafter set forth in this Escrow Agreement, the Settlement Agreement, in orders of the Court approving the disbursement of the Settlement Funds, and written instruction from Class Counsel in accordance with the aforementioned authorities.

4.   Investment of Settlement Funds. At the written direction of Class Counsel, Escrow Agent shall invest the Settlement Funds exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Money Market Fund or deposits insured by the Federal Deposit Insurance Corporation (FDIC) up to the guaranteed FDIC limit.

5.   Settlement Funds Subject to Jurisdiction of the Court. The Settlement Fund shall be held in *custodia legis* and remain subject to the jurisdiction of the Court until such time as the Settlement Funds shall be distributed, pursuant to the Settlement Agreement, this Escrow Agreement, and on further order(s) of the Court.

6.   Tax Treatment & Report. The Settlement Fund shall be treated at all times as a "Qualified Settlement Fund" within the meaning of Treasury Regulation §1.468B-1. The Administrator shall timely make such elections as necessary or advisable to fulfill the requirements of such Treasury Regulation, including the "relation-back election" under Treas. Reg. § 1.468B-1(j)(2) if necessary, to the earliest permitted date. For purposes of §468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" of the Settlement Fund shall be the Administrator. The Administrator shall timely and properly prepare, deliver to all necessary parties for signature, and file all necessary documentation for any elections required under Treas. Reg. §1.468B-1. The Administrator shall timely and properly prepare and file any informational and other tax returns necessary or advisable with respect to the Settlement Funds

2

and the distributions and payments therefrom including without limitation the returns described in Treas. Reg. §1.468B-2(k), and to the extent applicable Treas. Reg. §1.468B-2(1).

7. <u>Tax Payments of Settlement Fund</u>. All taxes with respect to the Settlement Funds, as more fully described in the Settlement Agreement, shall be treated as and considered to be a cost of administration of the Settlement Funds. Neither IFC, AMC, nor their respective counsel, shall have liability or responsibility for the payment of any taxes from the Settlement Funds and/or tax expenses from the Settlement Funds, or the filing of any tax returns or other documents with the Internal Revenue Service or any other state, local, or foreign taxing authority. The Escrow Agent shall be responsible only for income reporting to the Internal Revenue Service with respect to income earned on the Escrow Accounts. The Escrow Agent shall timely pay such taxes out of the Individual Plaintiffs Escrow Account and/or the Social Benefit Escrow Account, as appropriate, without prior order of the Court, as directed by the Administrator. The Notice Costs shall not be used to pay any taxes or tax expenses. To the extent that any taxes on the Notice Costs become due, any payment to satisfy those taxes shall be deducted from the Notice Costs. To the extent that any taxes on the Notice Costs exceed the Notice Costs, the remainder shall be deducted from the Social Benefit Escrow. The Administrator shall be responsible for the timely and proper preparation and delivery of any necessary documentation for signature by all necessary parties, and the timely filing of all tax returns and other tax reports required by law. The Administrator may engage an accounting firm or tax preparer to assist in the preparation of any tax reports or the calculation of any tax payments due, and the expense of such assistance shall be paid from the Social Benefit Escrow Account as Administration Costs.

8. <u>Disbursement Instructions</u>.

(a)     Except as provided in this Escrow Agreement, the Escrow Agent shall take no action in connection with the Settlement Funds, including in connection with the investment or disbursement of any monies in the Escrow Account, without the prior written approval of Class Counsel. The Escrow Agent shall not be liable for any losses, costs or expenses arising directly or indirectly from the Escrow Agent's reliance upon and compliance with such instructions notwithstanding that such instructions conflict or are inconsistent with a subsequent written instruction, provided that such instructions are confirmed as provided herein.

(b)     <u>Confirmation of Written Instructions.</u> Written instructions from Class Counsel shall be transmitted to the Escrow Agent by signed letter or electronic mail from Class Counsel's notice address, followed by confirmation to Class Counsel's notice telephone number, as provided in paragraph 15 below. Another method of confirming written instructions may be agreed by Class Counsel and the Escrow Agent, provided that agreement to such alternate method is confirmed by the method in this paragraph.

(c)     <u>Notice Escrow Account</u>. The Escrow Agent shall disburse funds from the Notice Escrow Account upon written instruction from Class Counsel to satisfy the Notice Plan. Payment receipts must be transmitted to the Escrow Agent within a reasonable time following the release of funds, but no later than 30 Business Days following the expiration of the notice period. Within 30 Business Days after the notice period has expired, and all bills to satisfy the Notice Plan have been paid, whichever date is later, the Escrow Agent shall revert any remaining funds to IFC.

(d)    Individual Plaintiffs Escrow Account. Within five (5) Business Days after the Effective Date, the Escrow Agent shall disburse a total of US$50,000.00 in recognition payments to the Individual Plaintiffs listed in the Settlement Agreement Exhibit A 2.c. and US$95,000.00 in attorneys fees to EarthRights International, Inc. as Individual Plaintiffs' Counsel, to such accounts specified in written instructions from Class Counsel. Any interest accrued on the Individual Plaintiffs Escrow Account shall be evenly divided and disbursed to the Individual Plaintiffs.

(e)    Social Benefit Escrow Account. Following preliminary approval of the Court, Class Counsel may, without further order of the Court or authorization by Defendants, instruct Escrow Agent to disburse funds from the Social Benefit Escrow Account necessary to pay Administration Costs, up to a maximum of $50,000.00 in accordance with Paragraph 71 of the Settlement Agreement. Within five (5) Business Days after the Effective Date, the Escrow Agent shall disburse a total of US$50,000.00 in incentive awards to the Class Representatives listed in the Settlement Agreement Exhibit A 4.a., b. and US$520,000.00 in attorneys fees to EarthRights International, Inc. as Class Counsel, to such accounts specified in written instructions from Class Counsel. Any interest accrued on the Social Benefit Escrow Account at the time of disbursement of attorneys fees and the incentive awards to the Class Representatives shall be made available for Qualified Community Support. Any further disbursements from the Social Benefit Escrow Account shall be made according to the written instructions of Class Counsel.

9.    Termination of Settlement. If the Settlement Agreement terminates in accordance with its terms, Class Counsel shall promptly notify the Escrow Agent in writing of the termination of the Settlement Agreement. Upon such notification, the Escrow Agreement shall be terminated, and the Settlement Funds, (less any Notice Costs and/or Administration Costs either paid or actually incurred in accordance with the terms of the Settlement Agreement but not yet paid, and any unpaid taxes due, as determined by the Administrator), shall be returned to IFC pursuant to the terms of Paragraph 116 of the Settlement Agreement.

10.    Duties, Liabilities, and Rights of Escrow Agent and Administrator.

(a)    The Escrow Agent may act in reliance upon written instructions delivered to it by Class Counsel, as provided herein, without being required to determine the authenticity or validity thereof or the correctness of any fact stated therein, the propriety or validity of the service thereof, or the jurisdiction of the court issuing any judgment or order, as long as such instructions are confirmed according to the method provided herein. The Escrow Agent may act in reliance upon any signature which is reasonably believed by it to be genuine and may assume that such person has been properly authorized to do so, subject to the same requirement of confirmation of written instructions.

(b)    The Escrow Agent's sole obligation shall be to keep safe all property held in escrow until it shall be directed by Class Counsel, in writing, as set forth herein, or by an order of the Court.

(c)    The Escrow Agent shall not bear any risks related to the investment of the Settlement Funds in accordance with this Escrow Agreement. The Escrow Agent shall not be liable for any action taken or omitted by it in good faith except to the extent that a court of competent

4

jurisdiction determines that the Escrow Agent's negligence, gross negligence, or willful misconduct was the primary cause of any loss to the Plaintiffs or class members.

(d)     Upon distribution of all the Settlement Funds pursuant to the terms of this Escrow Agreement and any orders of the Court, Escrow Agent shall be relieved of any and all further obligations and released from any and all liability under this Escrow Agreement, except as otherwise specifically set forth herein.

11. Escrow Agent Compensation and Fees. Promptly upon written request, the Administrator shall authorize payment from the Social Benefit Escrow Account to the Escrow Agent for reasonable compensation for its services as Escrow Agent and to reimburse the Escrow Agent for all reasonable costs and expenses in connection with the performance of its duties and obligations hereunder, including reasonable attorneys' fees incurred by the Escrow Agent. Any payment to the Escrow Agent for reasonable compensation and/or services shall be considered an Administration Cost and must be included in the calculation of the US$50,000.00 cap on Administration Costs prior to the Final Approval Order.

12. Non-Assignability of Escrow Agent. Escrow Agent's rights, duties, and obligations hereunder may not be assigned or assumed without the written consent of Class Counsel and IFC.

13. Resignation of Escrow Agent. Escrow Agent may, for good cause shown, resign and terminate its position hereunder at any time following 90 days prior written notice to the parties to the Escrow Agreement herein. On the effective date of such resignation, Escrow Agent shall deliver this Escrow Agreement together with any and all related instruments or documents and all funds in the Escrow Accounts to the successor Escrow Agent, subject to this Escrow Agreement. If a successor Escrow Agent has not been appointed prior to the expiration of 90 days following the date of the notice of such resignation, then Escrow Agent may petition the Court for the appointment of a successor Escrow Agent, or other appropriate relief. Any such resulting appointment shall be binding upon all of the parties to this Escrow Agreement.

14. Notices. Notice to the parties hereto shall be in writing and delivered by hand-delivery, facsimile, electronic mail or overnight courier service, address as follows:

If to Escrow Agent:



If to Class Counsel or the Administrator:

Marco Simons
EarthRights International
1612 K Street NW, Suite 800
Washington, DC 20006
marco@earthrights.org
(202) 466-5188 x103

With a copy to legal@earthrights.org.

      If to IFC:

      Jeffrey T. Green
      Sidley Austin LLP
      1501 K Street NW
      Washington, DC 20005
      jgreen@sidley.com
      (202) 736-8291

With a copy via email to Notifications@ifc.org for the attention of the Office of General Counsel.

      The individuals specified for notice, and their addresses, email addresses, and telephone numbers, may only be altered by written instructions from that individual or order of the Court.

    15. Patriot Act Warranties. Section 326 of the USA Patriot Act (Title III of Pub. L. 107-56), as amended, modified or supplemented from time to time (the "Patriot Act"), requires financial institutions to obtain, verify, and record information that identifies each person or legal entity that opens an account (the "Identification Information"). The parties to this Escrow Agreement agree that they will provide the Escrow Agent with such Identification Information as the Escrow Agent may request in order for the Escrow Agent to satisfy the requirements of the Patriot Act.

    16. Entire Agreement. This Escrow Agreement constitutes the entire agreement and understanding of the parties hereto. Any modification of this Escrow Agreement or any additional obligations assumed by any party hereto shall be binding only if evidenced by a writing signed by each of the parties hereto. To the extent this Escrow Agreement conflicts in any way with the Settlement Agreement, the provisions of the Settlement Agreement shall govern.

    17. Resolution of Disputes. The parties shall use all reasonable efforts to amicably resolve any dispute, controversy, or claim arising out of or relating to the Escrow Agreement. In the event that disputes cannot be amicably resolved, all disputes concerning the interpretation, implementation, or other disputes regarding compliance with the Escrow Agreement will be first submitted to mediation through the Court's Alternative Dispute Resolution program. If such mediation is unsuccessful, disputes will be resolved by the Court.

    18. Privileges and Immunities. The parties acknowledge and agree that no provision of this Escrow Agreement in any way constitutes or implies a waiver, renunciation, termination, or modification by IFC or IFC Asset Management Co. LLC of the privileges, immunities, or exemptions, if any, granted in the Articles of Agreement establishing IFC, international conventions, or applicable law, and IFC and IFC Asset Management Co. LLC expressly reserve all privileges, immunities and exemptions thereunder. This reservation shall not prohibit the Court from exercising jurisdiction over IFC and IFC Asset Management Co. LLC for purposes of effectuation and enforcement of this Escrow Agreement.

19. <u>Rights of Third Parties</u>. Nothing expressed or implied in this Escrow Agreement is intended or shall be construed to confer or give to any third party any rights or remedies by virtue of this Escrow Agreement.

20. <u>Termination of Escrow Accounts</u>. The Escrow Accounts will terminate after all funds deposited in them, together with all interest earned thereon, are disbursed in accordance with the provisions of the Settlement Agreement and this Escrow Agreement.

21. <u>Miscellaneous Provisions</u>.

(a) <u>Escrow Agreement was Mutually Drafted</u>. The Escrow Agreement is deemed to have been drafted by all parties hereto and no language herein shall be construed against any party hereto.

(b) <u>Counterparts</u>. This Escrow Agreement may be executed in one or more counterparts, each of which counterparts shall be deemed to be an original and all of which counterparts, taken together shall constitute one and the same Escrow Agreement.

(c) <u>Further Cooperation</u>. The parties hereto agree to do such further acts and things and to execute and deliver such other documents as Escrow Agent may request from time to time in connection with the administration, maintenance, enforcement or adjudication of this Escrow Agreement in order to: (a) give Escrow Agent confirmation and assurance of Escrow Agent's rights, powers, privileges, remedies, and interests under this Agreement and applicable law; (b) better enable Escrow Agent to exercise any such right, power, privilege, or remedy; or (c) otherwise effectuate the purpose and the terms and provisions of this Escrow Agreement, each in such form and substance as may be acceptable to Escrow Agent.

IN WITNESS WHEREOF, the parties hereto through their fully authorized representatives have agreed to this Escrow Agreement as of the date first above written.

[BANK], as Escrow Agent

By: _____
        [Name, Title]


CLASS COUNSEL

By: _____
        Marco Simons


INTERNATIONAL FINANCE CORPORATION & IFC ASSET MANAGEMENT CO. LLC

By: _____
        Jeffrey T. Green

**EXHIBIT E – [PROPOSED] ORDER OF PRELIMINARY APPROVAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JUANA DOE I et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | C.A. No. 17-1494-JFB-SRF |
| vs. | § | |
| | § | |
| INTERNATIONAL FINANCE | § | |
| CORPORATION, and IFC ASSET | § | |
| MANAGEMENT COMPANY, LLC, | § | |
| | § | |
| Defendants. | § | |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND DIRECTING CLASS NOTICE

Plaintiffs Juan Doe XIII (individually and on behalf of all other similarly situated current and former residents of the community of Panamá, Honduras, known as the "Panamá Class"), Juan Doe XVII (individually and on behalf of all other similarly situated members of farmers' cooperatives in the Bajo Aguán valley of Honduras, known as the "Farmers' Cooperative Class"), Juana Doe I, Juana Doe II, Juana Doe III, Juana Doe IV, Juana Doe V, Juan Doe VI, Juana Doe VI, Juan Doe VII, Juan Doe VIII, Juan Doe IX, (individually and on behalf of his minor daughter, Juana Doe VII), Juan Doe X, Juan Doe XII, and Juan Doe XVI (collectively, "Plaintiffs"), and Defendant International Finance Corporation on its own behalf and as successor to Defendant IFC Asset Management Company LLC ("Defendants"), have entered into a Settlement Agreement on [DATE], which sets forth the terms and conditions for a proposed settlement of this action and for its

1

dismissal with prejudice upon the terms and conditions set forth therein. The Settlement Agreement includes a class settlement agreement and release resolving the claims of two proposed Settlement Classes (the "Settlement").

Before the Court is the Class Representatives' unopposed motion for an order (i) preliminarily approving the Settlement under Federal Rule of Civil Procedure 23, (ii) finding that the Court will likely be able to certify the Settlement Classes after the Final Approval Hearing, and (iii) directing notice as set forth herein.

The Court is familiar with and has reviewed the Settlement Agreement, Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and supporting evidence, the arguments in support thereof, and the supporting Exhibits including the proposed forms of class notice and other exhibits thereto, and has found good cause for entering this Order. The Court hereby ORDERS as follows:

1. The Motion is GRANTED.

2. The Court hereby preliminarily approves the Settlement and the terms embodied therein as fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members, subject to further consideration at the Final Approval Hearing to be conducted as described below. The Court authorizes the proposed Class Representatives (John Doe XVII on behalf of the Farmers' Cooperative Class and John Doe XIII on behalf of the Panamá Class) to provide notice to Settlement Class Members pursuant to Fed. R. Civ. P. 23(e)(1).

3. More specifically, the Court finds that it will likely be able to approve the Settlement under Fed. R. Civ. P. 23(e)(2). The Court further finds that it will likely be able to certify the Classes under Fed. R. Civ. P. 23(a) and (b)(2) and/or (3).

4. The Court finds that Rule 23(e)(2)(A) is likely satisfied because the Class Representatives and Class Counsel have adequately represented, and will continue to adequately represent, the Classes.

5. The Court finds that Rule 23(e)(2)(B) is likely satisfied because the Settlement appears to be the product of non-collusive, arm's length negotiations between the Parties, through experienced attorneys who were well informed of the strengths and weaknesses of this action, including through motion practice, over the course of almost four years and including two full-day mediations sessions before Hon. Magistrate Judge Jennifer L. Hall.

6. The Court finds that Rule 23(e)(2)(C) is likely satisfied. The Settlement provides a settlement fund of $3,635,000 ($4.255 million minus $100,000 in awards to the class representatives and $520,000 in reasonable attorneys' fees and costs) plus up to $200,000 to pay for the costs of notifying class members. The Court preliminarily finds that the Settlement confers substantial benefits upon the Settlement Classes and the relief provided is fair, reasonable, and adequate taking into account, the factors set forth in Rule 23(e)(2)(C).

First, the costs, risks, and delay associated with continued litigation are considerable: this case is at the motion to dismiss stage in which Defendants' claim to immunity from suit is a central issue, and no matter who prevails in this Court,

there will likely be an appeal of an immunity ruling before the case can proceed. Without prejudging the issues, the Court notes that Defendants have raised legal arguments that, if accepted, would leave Plaintiffs with nothing; and there are always risks at trial. The Settlement compares favorably with the potential recovery when balanced against the risks of continued prosecution of the claims in this action.

Second, the proposed method of distributing relief to the Classes is likely to be effective. The fund will create much needed social programs primarily for the benefit of Class Members, many of whom are elderly, destitute, or both.

Third, the Court preliminarily finds Class Counsel's request for attorneys' fees and expenses to be reasonable and fair. Such fees are generally calculated as a percentage of the fund benefiting the class. The proposed fee to recovery ratio of 12.22% of the class award is reasonable and fair in light of the skill and efficiency of the attorneys involved, the complexity and duration of the litigation, the amount of time invested by Class Counsel (including in relation to the "lodestar" value of such time), and the much higher awards in similar cases. The Court additionally notes that the fee award was negotiated only after agreement on the total settlement value, leaving no concern for collusion.

7. The Court finds that Rule 23(e)(2)(D) is likely satisfied. The Court preliminarily finds that the Settlement treats the Class Members equitably relative to each other, the members of the other Class, and the Individual Plaintiffs. The

Settlement does not grant preferential treatment to Plaintiffs, their counsel, or any subgroup of the Settlement Classes.

8. The Court finds upon preliminary evaluation that the Court will likely be able to certify the following proposed Classes for purposes of Settlement. For these purposes, the Panamá Class is defined as:

> All individuals who resided in the Community of Panamá located in the Bajo Aguán valley of Honduras from November 5, 2009, through October 24, 2017.

For these purposes, the Farmers' Cooperative Class is defined as:

> All individual persons residing in the Bajo Aguán who were members of farmers' cooperatives in Honduras, from 1992 to the present, and whose land was at any point acquired or used for economic activity by Corporacion Dinant S.A. de C.V. or any of its subsidiaries (collectively, "Dinant"), including but not limited to the palm oil plantations of 9 de Agosto, Concepción, Isla 1, Isla 2, Marañones, Lempira, Occidental, Paso Aguán, Laureles, San Isidro, Aurora, Confianza, Camarones, Chile, Tranvio, Brisas del Aguán, Panamá, Plantel, and Tumbador; to include members of cooperatives who have since re-acquired this land after its acquisition or use by Dinant.

9. The Court preliminarily finds that each Class, as defined above, meets the requirements for class certification under Fed. R. Civ. P. 23. The Court preliminarily finds that both Classes satisfy Rule 23(a) because (1) the Class members are sufficiently numerous such that joinder is impracticable in that each class consists of roughly 1,000 people; (2) there are common questions of law and fact, including in particular Defendants' conduct as to all Class Members and whether Class Members were harmed due to that conduct, which predominate over the individualized evidence needed to make out common claims or establish damages; (3) the Class Representatives' claims are typical of those of the members

of their respective Classes in that each claim arises from Defendants' common conduct; and (4) the Class Representatives and Class Counsel's interests align with those of other Class Members, and they have adequately represented, and will continue to adequately represent, the interests of the Class Members. The Court also preliminarily finds that the Panamá Class meets the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3). The Court further finds that the Farmers' Cooperative Class meets the requirements of a Rule 23(b)(1)(B) limited fund non-opt out class [ALTERNATIVELY: meets the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3)].

10. The Court preliminarily appoints John Doe XVII as Class Representative for the Farmers' Cooperative Class and John Doe XIII as Class Representative for the Panamá Class.

11. The Court preliminarily finds EarthRights International (EarthRights) is experienced in prosecuting complex human rights actions and operating in the difficult environment presented in the Bajo Aguán Valley of Honduras, and appoints EarthRights as Class Counsel for the Classes and as Settlement Administrator and directs it to carry out the Notice program and all duties and responsibilities of the Settlement Administrator as specified in the Settlement and herein.

12. The Court grants the unopposed motion to continue to protect the identities of the Individual Plaintiffs, Class Representatives and Class Members. The Court finds that identifying such persons could still subject them to risk of

reprisal in Honduras. Accordingly, the names, addresses, telephone numbers, email addresses, other contact information and other identifying information for all such persons shall be kept strictly confidential by all parties, and shall not be filed on the public docket.

13. The Court approves the proposed notice program set forth as Exhibit C to the Settlement Agreement, including the form and content of the proposed forms of class notice attached as Appendix 1 and 2 to Exhibit C to the Settlement Agreement and the proposed procedures for Class Members to exclude themselves from the Class or object. The proposed notice plan includes direct notice to Class Members starting no later than 30 days from the entry of this order through hand delivery of the detailed long-form notice where security conditions allow, radio announcements fourteen times per week for 30 days on two national Honduran radio stations and one regional radio station with significant listenership, the provision of a telephone number where Class Members can ask questions and get additional information, and access upon request to a password-protected website housing the Settlement Agreement in full, notice forms, and other relevant documents, including Spanish language translations.

The Court further finds that the proposed form and content of the notices are adequate and will apprise Settlement Class Members of: the pendency of the Action; the effect of the proposed Settlement (including on the Released Claims); the anticipated motion for attorneys' fees, reimbursement of litigation expenses, and recognition awards; and their rights to participate in, opt-out of, or object to any

aspect of the proposed Settlement. It will also provide Class Members sufficient information to enable them to make informed decisions as to the Settlement, including whether to object or opt out, (if applicable). The Court finds that the notice clearly and concisely states in plain, easily understood language, inter alia: (a) the nature of this case; (b) the definition of the Classes; (c) the class claims and issues; (d) that a Class Member may appear through an attorney if the Member so desires; (e) that the Court will exclude from the Class any Member who timely and validly requests exclusion (where applicable); (f) the time and manner for requesting exclusion; and (g) the binding effect of a class judgment on Class Members under Rule 23(c)(3). The Court further finds that the plan meets the requirements of due process under the U.S. Constitution and Rule 23; and that such notice program is the best notice practicable under the circumstances given the difficulty of reaching economically disadvantaged villagers in the Bajo Aguán, and shall constitute due and sufficient notice to all persons entitled thereto. The date and time of the Final Approval Hearing shall be included in the Notice before dissemination.

14. The Court directs the Settlement Administrator and the Parties to implement the notice program as set forth in Exhibit C to the Settlement Agreement. Reasonable expenses incurred in notifying Settlement Class Members, shall be paid as set forth in the Settlement Agreement.

15. In compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, Defendants shall work with the Settlement Administrator (at their own cost)

to promptly provide written notice of the proposed Settlement to the appropriate authorities.

16. Starting no later than 30 days and completed no later than 60 days following entry of this Order (the "Notice Deadline"), the Settlement Administrator shall deliver direct notice to the Class Members, in conformance with the terms of the Settlement and substantially in the forms attached as Appendix 1 and 2 to Exhibit C to the Settlement Agreement, through hand-delivery and radio announcements as described above. The Settlement Administrator shall use reasonable efforts to locate all Class Members for hand delivery of notice where security conditions allow.

17. The Settlement Administrator shall maintain a password-protected settlement website—which shall include the Settlement Agreement in full (including translation into Spanish) as well as the notice forms attached as Appendix 1 and 2 to Exhibit C to the Settlement Agreement—and a phone number that can be freely accessed through the communication application WhatsApp that Class Members can contact for additional information. The Settlement website shall be made accessible to any Class Member upon request after the confirmation of their membership in at least one of the Classes.

Substantially contemporaneously with the Notice Deadline, the Settlement Administrator shall cause a PDF version of the Notice, the Settlement Agreement, and the Motion for Preliminary Approval and supporting documents to be posted on the Settlement website, including Spanish language translations. The

Administrator shall cause other documents ultimately filed in support of Final Approval, to be posted on the password-protected website substantially contemporaneously with the filing of those documents with the Court, as well as Spanish language translations of such documents as soon as practicable.

18. No later than 14 days before the final approval hearing, Class Counsel shall file a declaration confirming that the notice program has been implemented in accordance with the Settlement and this Order (including CAFA notice) and providing a final list of persons who submitted timely and valid requests for exclusion from the Class.

19. Any person who would otherwise be a member of the Panamá Class [ALTERNATIVELY: a Settlement Class] who wishes to be excluded/opt-out from that Class may exclude themselves by contacting the provided phone number within thirty (30) days of the notice deadline (the "Notice Response Deadline") to request the collection of their completed and signed request for exclusion. The Settlement Administrator, through a trustworthy Honduran law firm, shall confirm the requester's membership in the Class upon collection of the completed and signed opt-out form. All persons who submit valid and timely notifications of exclusion/opt-out in the manner set forth in this paragraph shall have no rights under the Settlement Agreement, shall not share in the relief provided by the Settlement, and shall not be bound by the Settlement Agreement or any Orders or final judgment of the Court.

To be effective, the request for exclusion must be timely and include: the case name and/or number; the full name, address, and telephone number, of the individual requesting to be excluded; a statement indicating that they are a Member of the Settlement Class and wish to opt-out of the Settlement; the Member's signature; and the name, address, position, and signature of the individual (if any) who is acting on behalf of the individual. Mass or class opt-outs shall be void. Any Class Member who does not opt out of the Class in the manner described in this paragraph shall be deemed to have waived his or her right to be excluded/opt-out from the Settlement Class, and shall be deemed to be part of the Class upon expiration of the opt-out deadline.

If the Court approves the Settlement, any such person who does not opt out shall forever be barred from requesting exclusion/opt-out from the Panamá Class [ALTERNATIVELY: Settlement Class] in this or any other proceeding, and shall be bound by the Settlement and the judgment, including the release of the Released Claims provided for in the Settlement Agreement and in the Final Approval Order and Judgment of Dismissal. The Settlement Administrator/Class Counsel shall provide copies of all timely and valid requests for exclusion to Defendants' counsel. The names, addresses and other identifying information of all persons who opt out shall be kept strictly confidential to protect their safety.

Because the Farmers' Cooperative Class is not an opt-out class, all members shall be barred from requesting exclusion/opt-out in this or any other proceeding, and shall be bound by the Settlement and the judgment, including the release of the

Released Claims provided for in the Settlement Agreement and in the Final Approval Order and Judgment of Dismissal. [ALTERNATIVELY: omit entirely]

20. Any Class Member that does not submit a timely and valid request for exclusion shall have the right to object to the proposed Settlement and/or to Class Counsel's motion for attorneys' fees and expenses, or John Doe XVII's and John Doe XIII's request for recognition awards.

For an objection to be considered valid, the objecting Class Member must do one of the following:

1) Within 60 days following the Notice Deadline, directly file an objection with the Court; or

2) By the Notice Response Deadline, contact the phone number provided on the notice form to request the collection of their written objection. The Administrator, through the Honduran law firm, shall confirm the objector's membership to the Class upon collection of the written objection. No later than 60 days following the Notice Deadline, Class Counsel will file any objections so collected with the Court, and provide copies to Defendants, including any related correspondence. Only a redacted version, with the objector's name, address, telephone number and other identifying information redacted, shall be filed on the public docket. Defendants shall keep all such redacted information strictly confidential.

For an objection to be considered by the Court, the objection must set forth the following: (a) the name of and/or case number for the action; (b) the objector's

full name, address, and telephone number; (c) an explanation of the basis upon which the objector claims to be a Class Member; (d) whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class, and all grounds for the objection, including any legal or factual support for the objection and copies of any papers, exhibits or other evidence that the objecting Class Member will present to the Court in connection with the final approval hearing; (e) the name of all counsel, if any, for the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection; (g) the case name and civil action number of any case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the five years preceding the date that the objector files the objection, and a copy of any orders related to or ruling upon counsel's or the firm's prior such objections that were issued by the trial and appellate courts in each listed case; (h) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (i) a statement as to whether the objector intends to appear at the Final Approval Hearing on their own behalf or through counsel; (j) at least four dates that the objector will be available to be deposed before the Final Approval Hearing by Class Counsel and Defendant's counsel and the location where the objector will be available; (k) if the objector is represented by an attorney who intends to seek fees and expenses from anyone other than the objectors he or she represents, the objection should also include a description of the attorney's legal background and

13

prior experience in connection with class action litigation; the amount of fees sought by the attorney for representing the objector and the factual and legal basis for the fees being sought; a statement regarding whether the fees being sought are calculated on the basis of a lodestar, contingency, or other method; the number of hours already spent by the attorney and an estimate of the hours to be spent in the future; and the attorney's hourly rate; and (l) the objector's signature (an attorney's signature is not sufficient).

By objecting, or otherwise requesting to be heard at the Final Approval Hearing, a person shall be deemed to have submitted to the jurisdiction of the Court with respect to the objection or request to be heard and the subject matter of the Settlement, including but not limited to enforcement of the terms of the Settlement.

21. Any Class Member who does not object in the time and manner provided for herein shall be deemed to have waived such objection, and shall not be permitted to object, at the Final Approval Hearing or otherwise, to the terms, fairness, reasonableness, adequacy, approval, or entry of the Settlement, the Final Approval Order and Judgment of Dismissal, Class Counsel's motion for attorneys' fees, costs and expenses, and/or John Doe XVII's and John Doe XIII's motions for recognition awards. Any Class Member that objects to the Settlement shall nevertheless be entitled to all benefits of the Settlement if it is approved and becomes final.

23. The Court will hold a Final Approval Hearing on _____, 2023 at _____ in courtroom _____, at the United States District Court for the District of

14

_____. At the Final Approval Hearing, the Court will, among other things: (a) finally determine whether the proposed Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Classes; (b) finally determine whether to certify the Classes for purposes of settlement; (c) finally determine whether judgment should be entered pursuant to the Settlement, dismissing this action with prejudice and releasing all released claims; (d) rule on Class Counsel's motion for attorneys' fees and expenses, John Doe XVII's motion for a recognition award for the work and risk he undertook on behalf of the Farmers' Cooperative Class; and John Doe XIII's motion for a recognition award for the work and risk he undertook on behalf of the Panamá Class; (e) consider any properly filed objections; and (f) consider any other matters necessary in connection with the final approval of the Settlement.

24. No later than 35 prior to the Final Approval Hearing, Plaintiffs and Class Counsel shall file their motion for final approval of the Settlement, motion for attorneys' fees and expenses, and John Doe XVII's and John XIII's motions for recognition awards.

25. By no later than 14 days before the Final Approval Hearing, the Parties shall file any responses to any Class Member objections and any replies in support of final settlement approval and/or in support of Class Counsel's motion for attorneys' fees and expenses, and John Doe XVII's and John Doe XIII's motions for recognition awards.

26. The Court may, in its discretion, modify the date and/or time of the Final Approval Hearing, and may order that this hearing be held remotely or telephonically. If the Court changes the date, time, and/or the format of the Final Approval Hearing, the Plaintiffs shall ensure that the Class Members are notified by announcing changes on the Settlement website, and that any Class Members who have submitted timely and valid objections are directly notified by telephone.

27. Class Members who have submitted timely and valid objections, in accordance with the requirements of this Order, may be heard at the Final Approval Hearing on the substance of their objection to the proposed Settlement, or to why judgment should be entered, or to any application for attorneys' fees, litigation expenses, or recognition awards. Such objector need not appear. If they choose to, they may do so either in person or through an attorney hired at their own expense. Any objector who wishes to be heard orally must indicate in their written objection their intention to appear at the Final Approval Hearing. Any objector who wishes to present evidence must include in their written objection(s) the identity of any witness(es) they may call to testify and copies of any exhibit(s) they intend to offer at the hearing. Counsel for any objector must enter a Notice of Appearance no later than 14 days before the Final Approval Hearing.

28. No person shall be heard or entitled to contest the approval of the Settlement or, if approved, the judgment to be entered approving the Settlement, any award of attorneys' fees, reimbursement of litigation expenses or recognition

awards, unless that person filed an objection in the time and manner set forth above.

29. If the Settlement, including any amendment made in accordance therewith or the Final Approval Order and Judgment of Dismissal, is not approved by the Court, is reversed or vacated on appeal or shall not become effective in accordance with its terms for any reason, the Settlement and any actions taken or to be taken in connection therewith (including this Order and any judgment entered herein), shall be terminated and shall become null and void and of no further force and effect except for: (a) any obligations to pay for any expense incurred in connection with notice and administration as set forth in the Settlement Agreement, and (b) any other obligations or provisions that are expressly designated in the Settlement Agreement to survive the termination of the Settlement. In the event of a termination, paragraph 116 of the Settlement Agreement shall apply, and the Parties shall return to their positions without any prejudice, as provided for in the Settlement Agreement.

30. Other than such proceedings as may be necessary to carry out the terms and conditions of the Settlement, all proceedings in this action are hereby stayed and suspended until further order of this Court.

31. The Parties are directed to take all necessary and appropriate steps to establish the means necessary to implement the Settlement according to its terms should it be finally approved.

32. The Court may, for good cause, extend any of the deadlines set forth in this Order or in the Settlement Agreement without further notice to Class Members. Without further order of the Court, the Parties may agree to make non-material modifications in implementing the Settlement that are not inconsistent with this Order, including non-material modifications to the exhibits to the Settlement Agreement.

33. The fact and terms of this Order or the Settlement, all negotiations, discussions, drafts and proceedings in connection with this Order or the Settlement, and any act performed or document signed in connection with this Order or the Settlement, shall not, in this or any other Court, administrative agency, arbitration forum, or other tribunal, constitute an admission, or evidence, or be deemed to create any inference (i) of any acts of wrongdoing or lack of wrongdoing, (ii) of any liability on the part of Defendants to Plaintiffs, the Settlement Classes, or anyone else, (iii) of any deficiency of any claim or defense that has been or could have been asserted in this Action, (iv) of any damages or absence of damages suffered by Plaintiffs, the Settlement Classes, or anyone else, or (v) that any benefits obtained by the Settlement Classes under the Settlement represent the amount that could or would have been recovered from Defendant in this Action if it were not settled at this time.

34. No Party or counsel to a Party in this Litigation shall have any liability to any Settlement Class Member for any action taken substantially in accordance with the terms of this Order.

35. The following summarizes the dates and deadlines set by this Order:

Entry of this Preliminary Approval Order ("Preliminary Approval Date")

_____

Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715:

_____ [within 10 days of filing the motion for preliminary settlement approval]

Deadline for personal notice to identified Class Members to begin:

_____ [within 30 days of the Preliminary Approval Order]

Deadline for completion of notice:

_____ [within 60 days of the Preliminary Approval Order]

Notice response deadline, for requesting exclusion from the Settlement Classes and for notifying the Settlement Administrator of an objection to the Settlement or request for an award of attorneys' fees and expenses or recognition awards:

_____ [within 90 days of the Preliminary Approval Order]

Deadline for filing objections with the Court:

_____ [within 120 days of the Preliminary Approval Order]

Plaintiffs to move for (1) final approval of the settlement; (2) certification of the Settlement Classes; and (3) attorneys' fees, reimbursement of litigation expenses, and service awards

_____ [35 days prior to the Final Approval Hearing]

Plaintiffs to file reply in support of motions for final approval of the settlement and for attorneys' fees, reimbursement of litigation expenses, and awards:

_____ [7 calendar days prior to the Final Approval Hearing]

19

Final approval hearing:

      _____[at the Court's convenience, but no less than 150 calendar days after entry of the Preliminary Approval Order]

IT IS SO ORDERED, this the \_\_\_\_ day of _____, 2023.

                                _____

                                U.S. DISTRICT COURT JUDGE

                                Honorable Sherry R. Fallon

**EXHIBIT F**

Public Statements Agreed to by the Parties

1.  Post-Execution, Pre-Final-Approval-Order Statement

"EarthRights International represents a group of anonymous plaintiffs from the Bajo Aguán region of Honduras. On behalf of those plaintiffs, EarthRights filed a putative class action lawsuit against the IFC Asset Management Corporation (AMC), a subsidiary of the International Finance Corporation (IFC) and IFC. The parties have reached an agreement to settle the matter, which is pending court approval. As part of the agreement, IFC will be dismissed outright from the suit and is only a party to the settlement on behalf of AMC. The Parties retain their respective litigation positions. Neither IFC, AMC, nor any affiliate or related parties admit to any breach, wrongdoing, or liability.

Under the settlement agreement, funds will be contributed to community support interventions which will be administered by an administrator, who is not a party to the litigation, in consultation with the plaintiffs and class members. The community support interventions are intended to benefit farmers' cooperatives and residents of Panamá village as well as other people in and from the Bajo Aguán region of Honduras.

All Parties are satisfied with the agreement and are hopeful that this matter will resolve without further litigation."

2.  Post-Final-Approval-Order Statement

"EarthRights International represents a group of anonymous plaintiffs from the Bajo Aguán region of Honduras. On behalf of those plaintiffs, EarthRights filed a putative class action lawsuit against the IFC Asset Management Corporation (AMC), a subsidiary of the International Finance Corporation (IFC). After filing the original complaint in federal court in Delaware, Plaintiffs amended the complaint to join IFC. The parties have reached an agreement to settle the matter. IFC was dismissed outright from the suit and was only a party to the settlement on behalf of AMC. The Parties retain their respective litigation positions. Neither IFC, AMC, nor any affiliate or related parties admit to any breach, wrongdoing, or liability.

Under the settlement agreement, funds will be contributed to community support interventions which will be administered by an administrator, who is not a party to the litigation, in consultation with the plaintiffs and class members. The community support interventions are intended to benefit farmers' cooperatives and residents of Panamá village as well as other people in and from the Bajo Aguán region of Honduras.

All Parties are satisfied with the result and are pleased that this matter resolved without further litigation."