# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JUANA DOE I et al.,     )
           )
    Plaintiffs,   )
           )
  v.        )
           )  Civil Action No. 17-1494-JFB-SRF
INTERNATIONAL FINANCE   )
CORPORATION, and IFC ASSET  )
MANAGEMENT COMPANY, LLC,  )
           )
    Defendants.  )

Misty A. Seemans, OFFICE OF THE PUBLIC DEFENDER, Wilmington, DE.  Marco Simons, Richard Herz, Marissa Vahlsing, Benjamin Hoffman, EARTHRIGHTS INTERNATIONAL, Washington, DC. Jonathan Kaufman, LAW OFFICE OF JONATHAN KAUFMAN, New York, NY.  Judith Brown Chomsky, LAW OFFICES OF JUDITH BROWN CHOMSKY, Elkins Park, PA.

   Attorneys for Plaintiffs.

Susan Hannigan Cohen, Travis S. Hunter, Alexandra M. Ewing, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE.  Jeffrey T. Green, GREEN LAW CHARTERED, Bethesda, MD.  Marisa S. West, SIDLEY AUSTIN LLP, Washington, DC.

   Attorneys for Defendant.

## MEMORANDUM OPINION

October 3, 2024
Wilmington, Delaware

FALLON, U.S. MAGISTRATE JUDGE:

Plaintiffs Juan Doe XIII, individually and on behalf of all other similarly situated current and former residents of the community of Panamá, Honduras (the "Panamá Class"); Juan Doe XVII, individually and on behalf of all other similarly situated members of farmers' cooperatives in the Bajo Aguán valley of Honduras (the "Farmers' Cooperative Class;" together with the Panamá Class, the "Classes"); as well as Juana Does I to VI and Juan Does VI to X, XII, and XVI (the "Individual Plaintiffs;" collectively with the Classes, "Plaintiffs") brought this action against the International Finance Corporation ("IFC"), on its own behalf and as successor to IFC Asset Management Company LLC ("AMC;" together with IFC, "Defendants"). IFC is the arm of the World Bank Group that lends to private parties, and AMC was a wholly owned subsidiary of IFC. Defendants decided to fund Corporación Dinant, a Honduran palm oil company whose security forces committed acts of violence and theft of land against local farmers. The alleged class members are victims of Dinant's violence. (D.I. 167 at ¶¶ 5-26) The court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).

The parties entered into a proposed settlement agreement on November 29, 2023. (D.I. 148 at 1) The court preliminarily approved the proposed settlement agreement and directed class notice on April 23, 2024. (D.I. 158) Presently before the court are the following motions: (1) Plaintiffs' unopposed motion for final approval of the proposed class settlement (D.I. 162); and (2) Plaintiffs' unopposed motion for an award of attorneys' fees and expenses and of recognition payments to the class representatives (D.I. 163).[1] The court held a final fairness hearing on October 1, 2024. For the following reasons, court grants final certification of the settlement class, approves the settlement agreement, and awards attorneys' fees, expenses, and incentive

---

[1] The declarations associated with the pending motions are found at D.I. 166 and D.I. 167.

awards as detailed below.

## I.    BACKGROUND

The record before the court confirms that Plaintiffs have fully complied with the court's order preliminarily approving the proposed settlement.  The Honduran law firm Bufete Justicia para los Pueblos ("BJP") implemented the proposed notice plan previously approved by the court.  (D.I. 166 at ¶¶ 3-27, Ex. 1)  Due to the challenges of providing notice in the region, including lack of reliable mail, the plan allowed for personal delivery of notice forms where security conditions allow, radio notice, a WhatsApp[2] number that class members can contact for additional information, and access by all class members upon request to a password-protected website containing the detailed settlement agreement and other relevant documents.  (*Id.*)  To date, no class members have opted out of the class or objected to any terms of the settlement. (D.I. 166 at ¶¶ 20, 22, 27)

Under the terms of the proposed final settlement agreement, AMC shall pay the $5,000,000 settlement amount in exchange for the release of any and all claims against Defendants.[3]  (D.I. 167, Ex. 1 at ¶¶ 68, 100-03)  The terms of the final settlement agreement provide that $745,000 of the total settlement amount will be paid into an Individual Plaintiffs Escrow Account for allocation among the Individual Plaintiffs.  (*Id.*, Ex. 1 at ¶ 73(a))  This amount will provide $50,000 to each of the thirteen Individual Plaintiffs and will also cover

---

[2] WhatsApp is an instant messaging and voice-over-IP service that allows users to send text, voice, and video messages, make voice and video calls, and share content via mobile phones and/or desktop computers.  *See* https://www.whatsapp.com.

[3] Defendants agreed to pay up to $200,000 to implement the class notice plan, in addition to the total settlement amount of $5 million.  (D.I. 167, Ex. 1 at ¶ 69) ("Notice Costs up to $200,000 U.S. dollars shall be borne by AMC, separate from and additional to the Settlement Amount[.]").

attorneys' fees for the Individual Plaintiffs in the amount of $95,000, representing 12.75% of the total, which is not part of the class settlement. (D.I. 162 at 5 n.2)

The balance of $4,255,000 will fund a Social Benefit Escrow Account that will cover Qualified Community Support programs to provide the Classes with social services, and it will also cover recognition awards for the class representatives, attorneys' fees, taxes on investment income, and costs associated with the administration of the settlement. (D.I. 167, Ex. 1 at ¶¶ 73(b), 87-88, 90-91) The two class representatives will each receive a $50,000 recognition award, and the attorneys' fees for the Classes total $520,000, or 12.224% of the total fund amount. (D.I. 162 at 5 n.4) As with the attorneys' fees for counsel for the Individual Plaintiffs, attorneys' fees for the Classes were negotiated after the total settlement value was negotiated. (D.I. 167 at ¶ 37)

## II.    CLASS CERTIFICATION

Under Rule 23 of the Federal Rules of Civil Procedure, the court must engage in a two-step analysis to determine whether to certify a class action for settlement purposes. First, the court must determine whether Plaintiffs have satisfied the prerequisites of numerosity, commonality, typicality, and adequacy of representation as required under Rule 23(a). If the Rule 23(a) criteria are satisfied, the court next considers whether the predominance and superiority requirements of Rule 23(b) are met.

The court conducted an analysis regarding settlement class certification under Rule 23 at the preliminary certification stage, and no material facts have changed since the preliminary certification. (D.I. 158) The Panamá Class includes "[a]ll individuals who resided in the Community of Panamá located in the Bajo Aguán from November 5, 2009, through October 24, 2017." (D.I. 167, Ex. 1 at ¶ 63) The Farmers' Cooperative Class includes "[a]ll individual

persons residing in the Bajo Aguán who were members of farmers' cooperatives in Honduras, from 1992 to the present, and whose land was at any point acquired or used for economic activity by Dinant, including but not limited to the palm oil plantations of 9 de Agosto, Concepción, Isla 1, Isla 2, Marañones, Lempira, Occidental, Paso Aguán, Laureles, San Isidro, Aurora, Confianza, Camarones, Chile, Tranvio, Brisas del Aguán, Panamá, Plantel, and Tumbador; to include members of cooperatives who have since re-acquired this land after its acquisition or use by Dinant." (*Id.*, Ex. 1 at ¶ 64)  These objective and administratively feasible criteria for class membership render the proposed class ascertainable.

## A.    Rule 23(a) Requirements

The four prerequisites under Rule 23(a) are: "(1) numerosity: the class is so numerous that joinder of all members is impracticable; (2) commonality: there are questions of law or fact that are common to the class; (3) typicality: the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation: the representative parties will fairly and adequately protect the interests of the class." *Schuler v. Medicines Co.*, 2016 WL 3457218, at *3 (D.N.J. June 24, 2016).

### 1.    Numerosity

There is no minimum number of individuals necessary for certification of a class, and a prospective class that includes more than forty members will generally satisfy the numerosity requirement. *See Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).  Here, the notice plan identified 686 members of the Panamá Class and 1447 members of the Farmers' Cooperative Class.  (D.I. 16 at ¶ 12)  Thus, the numerosity requirement is satisfied.

### 2. Commonality

"The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Stewart*, 275 F.3d at 227 (internal citations and quotation marks omitted). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," such that the "determination of [the common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement is satisfied in this case because there are common questions of law and fact pertaining to Defendants' conduct as to all Class members and whether the Class members were harmed due to that conduct. (D.I. 158 at 5; D.I. 167 at ¶¶ 16-18)

### 3. Typicality

"The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998). "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established. . . ." *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 149 (D.N.J. 2013). The typicality requirement is satisfied even if class members do not have identical claims or underlying factual circumstances, so long as the claims arise from the same practice or course of conduct or are based on the same legal theory. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311-12 (3d Cir. 1998). Here, the Class representatives' claims are typical of Class members' claims because each claim arises from Defendants' common conduct. (D.I. 167 at ¶¶ 14-16, 24-25)

####    4.    Adequacy of representation

To determine the adequacy of class representation, the court must consider the ability of both the named plaintiffs and counsel to fairly and adequately represent class interests. *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 532 (3d Cir. 2004). Here, the interests of the Class representatives and counsel align with the class members, and they have adequately represented the interest of the class members. (D.I. 158 at 6) Class Counsel is experienced in prosecuting complex human rights actions and operating in the difficult environment of the Bajo Aguán Valley of Honduras. (*Id.*) Moreover, the class representatives were injured in the same manner as other class members due to Defendants' conduct. (D.I. 167 at ¶¶ 14-15, 26) There is no indication on the present record that the Class representatives' interests conflict with the interests of other class members. *See Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *9 (W.D. Pa. June 26, 2020) (finding $10,000 incentive awards to named plaintiffs were reasonable and did not give rise to a conflict between class representatives and other class members).

### B.    Rule 23(b)(3) Requirements

After determining that the putative class satisfies the Rule 23(a) requirements, the court must decide whether the putative class may be certified under Rule 23(b)(3), which provides that

> A class action may be maintained if Rule 23(a) is satisfied and if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  These requirements are known as "predominance" and "superiority."
*In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008).

## 1.     Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to
warrant adjudication by representation, and assesses whether a class action would achieve
economies of time, effort, and expense, and promote uniformity of decision as to persons
similarly situated."  *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (internal
citations and quotation marks omitted).  This analysis is more rigorous than the commonality
requirement under Rule 23(a).  *See id.*  Nonetheless, where Plaintiffs have alleged a common
course of conduct by Defendants, the predominance requirement is generally satisfied.  *Id.* at
297-98.  The Third Circuit is "more inclined to find the predominance test met in the settlement
context."  *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 434 (3d
Cir. 2016) (quoting *Sullivan*, 667 F.3d at 304 n.29).

In this case, common questions of law and fact predominate over any questions that may
affect individual class members.  The issue of whether funding provided by IFC to Corporación
Dinant contributed to alleged violence against Plaintiffs is common to all class members and is
subject to generalized proof.  (D.I. 167 at ¶¶ 14-18, 25)  Nothing in the record before the court
suggests significant factual differences between the claims of various class members, and the
settlement agreement provides for the *pro rata* distribution of funds among class members, as
opposed to individualized payment of damages.  Therefore, the predominance requirement is
satisfied.

### 2. Superiority

The superiority analysis requires the court to "balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Prudential*, 148 F.3d at 316 (internal citations and quotation marks omitted). The court must "consider the class members' interests in individually controlling litigation, the extent and nature of any litigation, the desirability or undesirability of concentrating the litigation, and the likely difficulties in managing a class action." *In re NFL*, 821 F.3d at 434-35. Here, the superiority requirement is met because no other class member has initiated litigation over Defendants' conduct. *See In re Warfarin*, 391 F.3d at 534 (explaining that individual class members may have little interest in individually controlling separate litigations because each class member's claim is proportionally small in relation to the cost of prosecuting a lawsuit). The fact that the case is being resolved via settlement negates any concerns about the difficulty of managing a class action suit. *See Sullivan*, 667 F.3d at 302-03.

Having determined that Plaintiffs have satisfied the Rule 23 requirements to obtain class certification, the court will certify Plaintiffs' proposed class for purposes of final settlement approval.

### C. Notice Requirements

Rule 23(c)(2)(B) requires class notice to be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The notice plan previously approved by the court has been implemented by contractor BJP, with few adjustments. (D.I. 166 at ¶¶ 5-7; Ex. 1) The plan included personal delivery of notice forms where security conditions allowed, radio notice, a WhatsApp number to contact for additional information, and access by all class

members upon request to a password-protected website containing the detailed settlement agreement and other relevant documents. (*Id.* at ¶¶ 13-19, 22, 25-26)  The dissemination of notice via radio to reach class members is appropriate where, as here, it is the "best practicable" form of notice. *Rosas v. Sarbanand Farms, LLC*, 2019 WL 859225, at *2 (W.D. Wash. Feb. 22, 2019) (approving dissemination of notice via radio).  The methods and content of the notice in this case were reasonably calculated to inform the interested parties of the pendency of the action and provide them with an opportunity to object. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (holding that notice by publication in a periodical, on a website, or at a physical location is sufficient to satisfy due process even if actual individual notice is not received in all cases).  Plaintiffs have established that it was the best notice practicable under the circumstances given the difficulty of reaching economically disadvantaged villagers in the Bajo Aguán region. (D.I. 166 at ¶¶ 11, 15, 21)

## III.    FINAL APPROVAL OF THE SETTLEMENT

Having certified the proposed class action under Rule 23, the court must evaluate the fairness of the class action settlement under Rule 23(e)(2), which provides that approval of a class settlement should occur only if the settlement is "fair, reasonable, and adequate" after consideration of four factors: (A) whether the class representatives and class counsel have adequately represented the class; (B) whether the proposal was negotiated at arm's length; (C) whether the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreements between the settling parties; and (D) whether the proposal treats class members equitably relative

to each other.  Fed. R. Civ. P. 23(e)(2); *see In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009).  The Advisory Committee's Note to the 2018 Amendment identifies these four factors as the "core concerns" that should guide the court's decision regarding whether to approve the proposed settlement.

Courts in the Third Circuit also continue to apply the *Girsh* factors, which include procedural and substantive considerations similar to those in the 2018 amendments to Rule 23(e). *See In re Innocoll Holdings Public Ltd. Co. Sec. Litig.*, 2022 WL 16533571, at *4 n.1 (E.D. Pa. Oct. 28, 2022).  The nine *Girsh* factors include: (1) the complexity, expense, and likely duration of litigation; (2) the reaction of the class to the settlement; (3) the stage of proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation.  *See Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975).

"[T]he decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court," and the court's decision is given "great deference."  *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at *16 (E.D. Pa. Apr. 21, 2020).  Courts generally favor settlements to avoid lengthy litigation.  *See Somogyi v. Freedom Mortg. Corp.*, 495 F. Supp. 3d 337, 349 (D.N.J. 2020).  Here, all four factors under Rule 23(e)(2) and the corresponding *Girsh* factors weigh in favor of final approval of the settlement agreement, and the court finds that the proposed settlement is fair, reasonable, and adequate.

11

### A.     Plaintiffs and Class Counsel Adequately Represented the Class

Class Counsel has adequately represented the class in satisfaction of Rule 23(e)(2)(A).
The record before the court establishes that Class Counsel has substantial experience in litigating
complex class action lawsuits and actions seeking corporate accountability for international
human rights violations.  (D.I. 167 at ¶¶ 39-40)  Class Counsel also has experience in negotiating
community-oriented settlements and administering funds for the development of affected
communities.  (*Id.* at ¶ 41)

Class Counsel thoroughly investigated the claims, defenses, and events underlying this
action, spending over eight years litigating this case in partnership with human rights experts and
community leaders in Honduras.  The team included multiple fluent Spanish-speaking U.S.
lawyers who engaged in fact-finding investigations in dangerous areas of Honduras to collect
documents and first-hand testimony from survivors and witnesses, performed an exhaustive
review of publicly available information regarding violence in the Bajo Aguán, and assessed the
relationships between palm oil plantations, armed groups, and financial institutions.  (D.I. 167 at
¶¶ 28-29)  Class Counsel also expended significant efforts opposing Defendants' motion to
dismiss in this case.  (*See, e.g.*, D.I. 56)

After assessing the case's strengths and weaknesses, as well as the risks inherent in
litigation, Class Counsel engaged in extensive settlement negotiations and mediations,
culminating in the parties' stipulation and proposed settlement agreement.  (D.I. 167 at ¶ 36); *see
Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012) (explaining that courts "attribute
significant weight to the belief of experienced counsel that settlement is in the best interest of the
class.").  After entry of the court's order preliminarily approving the settlement, Class Counsel
consulted with experts to ensure that the terms of the proposed settlement were fair, reasonable,

and adequate for class members.  (*Id.* at ¶¶ 39-40)  These facts confirm the adequacy of Class Counsel's actual performance in representing the interests of the class.  *See Utah Ret. Sys. v. Healthcare Servs. Grp., Inc.*, 2022 WL 118104, at *7 (E.D. Pa. Jan. 12, 2022).

The Class representatives' representation of the interests of the class also satisfies Rule 23(e)(2)(A).  The proposed settlement establishes that the representatives' claims are typical of the claims of the settlement class.  *See* § II.A.3, *supra*.  Specifically, the funding provided by Defendants to Corporación Dinant contributed to the alleged violence against all Plaintiffs.  (D.I. 167 at ¶ 26)  There is no indication on the present record that Plaintiffs' interests conflict with the interests of other class members.

### B.      The Settlement Was Negotiated at Arm's Length

All evidence points to an arm's length negotiation of the settlement in satisfaction of Rule 23(e)(2)(B).  The parties engaged in two mediations with a magistrate judge and negotiated the settlement with the assistance of another human rights attorney, who also serves as a professional mediator.  (D.I. 167 at ¶¶ 36, 39)  The Advisory Committee's note to the 2018 amendment to Rule 23(e)(2) confirms that "the involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."  This factor supports final approval of the settlement.

### C.      The Settlement Provides Substantial Relief to the Class

The third factor under Rule 23(e)(2) regarding the adequacy of the relief provided for the class is related to many of the *Girsh* factors.  *See Utah Ret. Sys.*, 2022 WL 118104, at *8.  The court's analysis under Rule 23(e)(2)(C) also addresses the first, fourth, fifth, eighth, and ninth *Girsh* factors.

13

The cost and risks of continued litigation favor final approval of the settlement, which creates a $4,255,000 million fund (less attorneys' fees of 12.22%, recognition payments and administration costs), for the implementation of Community Support programs for the Classes' primary benefit, including health services, nutrition programs, scholarships, infrastructure improvements, and economic livelihood projects. (D.I. 167, Ex. 1 at ¶¶ 73, 90)  This settlement amount provides a substantial benefit to class members given the inherent risks posed by continued litigation.  *See Sullivan*, 667 F.3d at 323 (noting the importance of weighing "the realistic, rather than theoretical, potential for recovery after trial" in comparing the value of settlement versus trial).  Plaintiffs acknowledge litigation would delay relief for years, and relief at the end of litigation is not guaranteed due to Defendants' pending motion to dismiss.  (D.I. 167 at ¶ 42); *see In re Healthcare Servs. Grp., Inc. Derivative Litig.*, 2022 WL 2985634, at *5 (E.D. Pa. July 28, 2022) (describing public policy favoring settlement of class actions and other complex litigation "that otherwise could linger for years").  Thus, the proposed settlement satisfies the requirements of Rule 23(e)(2)(C)(i).

Rule 23(e)(2)(C)(ii) requires the court to analyze "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii).  The settlement will provide Class members with social services, and Class Counsel has demonstrated experience in providing community benefits such as the ones proposed here.  (D.I. 167 at ¶ 41)

Rule 23(e)(2)(C)(iii) requires consideration of the terms of any proposed award of attorneys' fees.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Class Counsel seeks 12.22% of the total settlement amount, which is within the range of reasonable attorneys' fees awarded in the Third Circuit, as discussed in more detail at § IV.A.1, *infra*. *See, e.g.*, *In re Veritas Software Corp.*

*Sec. Litig.*, 396 F. App'x 815, 818-19 (3d Cir. 2010) (affirming district court's award of class counsel's 30% fee request).

Rule 23(e)(2)(C)(iv) and Rule 23(e)(3) require the parties seeking approval of the settlement to file a statement identifying any agreement made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C)(iv) & (e)(3). Both parties represent that the Joint Stipulation of Class Action Settlement and Release, along with its exhibits, is the only agreement between the parties. (D.I. 167, Ex. 1) This requirement is therefore satisfied.

### D.     The Proposed Plan of Allocation Treats Class Members Equally

The Settlement treats the Class Members equitably relative to each other, the other Class, and the Individual Plaintiffs. The Settlement does not grant preferential treatment to Plaintiffs, their counsel, or any subgroup of the Classes, in accordance with Rule 23(e)(2)(D). (D.I. 167 at ¶¶ 31-35; Ex. 1 at Ex. A at ¶ 2) The payments to the Individual Plaintiffs and the Class representatives are made in recognition of the safety risks they took and the time they spent participating in this litigation. (*Id.*)

### E.     The Remaining *Girsh* Factors

#### 1.     Reaction of the Class to the Settlement

When there are many class members and few objectors, there is a strong presumption in favor of approving the class action settlement under the second *Girsh* factor. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001). Of the 2,133 Class members who were identified, none raised an objection or an exclusion in this case. (D.I. 166 at ¶ 20) This factor therefore weighs in favor of final approval of the settlement.

15

### 2.    Amount of Discovery

Under the third *Girsh* factor, the court must consider whether the parties' attorneys had

an "adequate appreciation of the merits of the case before negotiating" the settlement. *In re Gen.*

*Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995).  As

previously discussed, Class Counsel engaged in multiple rounds of briefing and delivered oral

arguments relating to a motion to dismiss.  (D.I. 56; D.I. 167 at ¶ 42)  Class Counsel engaged in

four years of settlement negotiations.  (D.I. 167 at ¶ 36)  These actions were sufficient to allow

Class Counsel to assess the strengths and weaknesses of the case.  *See In re NFL*, 821 F.3d at

436-37 ("In some cases, informal discovery will be enough for class counsel to assess the value

of the class' claims and negotiate a settlement that provides fair compensation."); *Schuler v.*

*Meds. Co.*, 2016 WL 3457218, at *7 (D.N.J. June 24, 2016) (finding class counsel had ample

information to evaluate the prospects for the litigation and assess the fairness of the settlement

despite the fact that no formal discovery was taken).

### 3.    Risks of Maintaining a Class Action Through Trial

The sixth *Girsh* factor is neutral.  Plaintiffs present no evidence or argument to suggest

that the settlement class could not be maintained throughout the case.  *See Ripley v. Sunoco, Inc.*,

287 F.R.D. 300, 313 (E.D. Pa. 2012) (finding the sixth *Girsh* factor was neutral where "there

[was] no apparent reason why the Court would decertify or modify [a] class at any time during

the litigation.").

### 4.    Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor is neutral, as there is no evidence on the present record that

Defendants would not be able to pay a greater judgment.  But the neutrality of this factor does

not weigh against final approval of the settlement where, as here, the other *Girsh* factors support

16

a conclusion that the settlement is fair, reasonable, and adequate. *See In re Warfarin*, 391 F.3d at 538. Plaintiffs acknowledge that continuing the action to trial might result in a significant verdict for class members, but this possibility does not outweigh the risks of years of litigation and the possibility of an adverse ruling on the motion to dismiss. (D.I. 167 at ¶ 42) Based on the foregoing analysis of the Rule 23(e)(2) factors and the *Girsh* factors, the court concludes that final approval of the settlement is proper.

## IV.    ATTORNEYS' FEES, PAYMENT OF EXPENSES, AND INCENTIVE AWARDS

Class Counsel moves for an award of: (1) attorneys' fees in the amount of 12.22% of the remaining $4,255,000 million settlement, equaling $520,000; and (2) recognition awards for the two Class representatives of $50,000 each for the time and expenses they incurred in representing the settlement class. (D.I. 163) For the following reasons, the motion is GRANTED.

### A.    Attorneys' Fees

Rule 23(h) states that the court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Although the decision to award attorneys' fees and expenses is within the court's discretion, "a thorough judicial review of fee applications is required for all class action settlements." *In re Prudential*, 148 F.3d at 333 (internal quotation marks omitted). Courts assessing attorneys' fees typically apply either the percentage-of-recovery method, which awards a certain percentage of the settlement amount, or the lodestar method, which multiplies the number of hours worked by a reasonable hourly billing rate for the services. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).

### 1.      Percentage-of-recovery analysis

In common fund cases such as this one, it is typical for Class Counsel to request a

percentage of the recovery. *In re Rite Aid*, 396 F.3d at 300 ("The percentage-of-recovery method

is generally favored in common fund cases because it allows courts to award fees from the fund

in a manner that rewards counsel for success and penalizes it for failure." (internal quotations

and citations omitted)).  To evaluate the fairness of the requested fees under this method, the

court weighs the following factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the
> presence or absence of substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel; (3) the skill and efficiency of
> the attorneys involved; (4) the complexity and duration of the litigation; (5) the
> risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs'
> counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000).  Application of these

factors is flexible, and "one factor may outweigh the rest." *In re Rite Aid*, 396 F.3d at 301.

Here, Plaintiffs have shown that the vast majority of the $5 million settlement amount

will be dedicated to providing social benefits to class members, and these benefits will address

significant and urgent needs in the community.  (D.I. 167 at ¶ 45)  The fee awards are further

supported by the fact that no class members objected to the terms of the settlement or the fees

requested by counsel.  As previously discussed at Sections II.A.4 and III.A, *supra*, the third

*Gunter* factor supports an award of fees because Class Counsel have decades of experience

litigating complex transnational human rights cases.  (*Id.* at ¶¶ 28-29)  The complexity of

conditions in the Bajo Aguán region, the extensive litigation of Defendants' motions to transfer

and dismiss, and the amount of time and effort expended by counsel in this case also support the

proposed fee awards.  (*Id.* at ¶ 30)

With respect to the final *Gunter* factor, the Third Circuit has stated that fee awards in common fund cases typically range from 19% to 45% of a settlement fund. *See In re Gen. Motors Corp.*, 55 F.3d at 822. The requested fee of 12.22% is reasonable and falls below the typical range of fee awards in other class action settlements. *See, e.g.*, *In re Veritas*, 396 F. App'x at 818-19 (affirming district court's award of class counsel's 30% fee request); *Kanefsky v. Honeywell Int'l Inc.*, 2022 WL 1320827, at *11 (D.N.J. May 3, 2022) (approving a fee award equal to 29.2% of the settlement amount).

## 2.    Lodestar cross-check

The reasonableness of the percentage-of-recovery amount is generally confirmed using the lodestar calculation method, which is performed by "multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid*, 396 F.3d at 305-06. Here, Class Counsel represents a total lodestar amount of $1.45 million based on billing rates using the Community Legal Services of Philadelphia ("CLS") rate schedule. (D.I. 167 at ¶ 30; D.I. 166 at ¶ 29) This lodestar amount is significantly greater than the requested fee of $520,000.

## B.    Incentive Awards

Class Counsel seeks an award of $50,000 for each of the two Class representatives, for a total of $100,000. The court finds the requested incentive awards to be fair and reasonable. *See Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) ("Incentive awards are 'not uncommon in class action litigation and particularly where, as here, a common fund has been created for the benefit of the entire class.'"). From the beginning of the litigation, the class representatives regularly participated in meetings and conference calls concerning the litigation.

Participation in these meetings often required the class representatives to take time off work, be away from their farming or household responsibilities, and traveling over eight hours to meet with counsel in secure locations.  (D.I. 167 at ¶¶ 31-35)  Additionally, the class representatives have been subject to ongoing security risks and emotional stress due to the long history of violence and intimidation in the region.  (*Id.*)  Finally, there were no objections to this amount.  Consequently, the court approves the incentive awards of $50,000 for each of the two Class Representatives.

## V.      CONTINUED PSEUDONYMITY OF PLAINTIFFS

The Individual Plaintiffs, Class representatives, and Class members also seek to continue protection of their identities to avoid the risk of reprisal.  (D.I. 167 at ¶¶ 57-59; D.I. 166 at ¶ 28)  This request is unopposed.  Parties seeking leave to proceed under pseudonyms in federal court must show that a substantial privacy right outweighs the customary "presumption of openness in judicial proceedings."  *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020); *see also Doe v. Neverson*, 820 F. App'x 984, 987-88 (11th Cir. 2020) (finding the district court abused its discretion in denying the plaintiff's motion to proceed under a pseudonym when the plaintiff showed a risk of significant social stigma).  The court has broad discretion on the issue after considering the totality of the circumstances, including whether the party "faces a real threat of physical harm absent anonymity."  *In re Chiquita*, 965 F.3d at 1247.

Here, Plaintiffs have established that disclosure of their names and/or identifying information would present a substantial risk of bodily harm.  The evidence shows that, "as counsel were preparing to file the original lawsuit, in late 2015, one of [counsel's] clients in Honduras was murdered" on Dinant's behalf.  (D.I. 167 at ¶ 34; *see also* D.I. 5)  Similar risks are faced by all Plaintiffs due to the climate of violence and the existence of public and private

security forces aligned with Dinant who target those who challenge Dinant's claims to the land. (D.I. 167 at ¶ 57)  The substantial threat of physical harm to Plaintiffs absent continued pseudonymity outweighs considerations of public disclosure in this instance.  Consequently, the court GRANTS the request to maintain the confidentiality of the names, addresses, telephone numbers, email addresses, and other contact and identifying information for all Individual Plaintiffs, Class representatives, and Class members.

## VI.    CONCLUSION

For the foregoing reasons, the court certifies the Rule 23 class action, approves the proposed settlement in full, awards attorneys' fees, expenses, and for incentive awards, and dismisses the action with prejudice.  An appropriate Order shall follow.